UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>V.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | C.A. No. 06-170/S |

**DEFENDANT SHANGHAI ELE MANUFACTURING CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant Shanghai ELE Manufacturing Corporation moves for an Order dismissing Plaintiff's Complaint for the reasons set forth in the attached Memorandum.

DEFENDANT
SHANGHAI ELE MANUFACTURING
CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
ALSCHULER GROSSMAN STEIN &
KAHAN LLP
Tony D. Chen, Pro Hac Vice Pending
Email: tchen@agsk.com
Marshall B. Grossman, Pro Hac Vice Pending
William J. O'Brien, Pro Hac Vice Pending
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Dated: November 21, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, identified on the Notice of Electronic filing (NEF) and paper copies will be sent via regular mail, postage prepaid to Thomas F. Holt, Esq., Larissa S. Bifano, Esq. and John J. Cotter, Esq., Kirkpatrick & Lockhart Nicholson Graham LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950 on this 21st day of November, 2006.

/s/ Jeffrey S. Brenner

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>V.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | C.A. No. 06-170/S |

**MEMORANDUM IN SUPPORT OF DEFENDANT SHANGHAI ELE MANUFACTURING CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

DEFENDANT
SHANGHAI ELE MANUFACTURING
CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
ALSCHULER GROSSMAN STEIN &
KAHAN LLP
Tony D. Chen, Pro Hac Vice Pending
Email: tchen@agsk.com
Marshall B. Grossman, Pro Hac Vice Pending
William J. O'Brien, Pro Hac Vice Pending
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Dated: November 21, 2006

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL ARGUMENTS ..... 5

A. APPLICABLE LEGAL STANDARD ..... 5

B. SHANGHAI ELE DOES NOT MAINTAIN "CONTINUOUS AND SYSTEMATIC" CONTACTS WITH RHODE ISLAND AND IS NOT SUBJECT TO GENERAL JURISDICTION ..... 7

C. SHANGHAI ELE IS NOT SUBJECT TO SPECIFIC JURISDICTION IN RHODE ISLAND IN THIS ACTION ..... 10

1. Shanghai ELE Has Not Purposefully Availed Itself of This Forum ..... 11

2. Plaintiff's Cause of Action Does Not Arise Out Of and Is Not Related to Shanghai ELE's Forum Activities ..... 18

3. Asserting Personal Jurisdiction over Shanghai ELE in Rhode Island Would Be Unreasonable and Unfair ..... 20

a. Defendant's Appearance Burden ..... 21

b. Forum State's Interest ..... 22

c. Plaintiff's Interest in Relief ..... 22

d. Judicial System's Interest ..... 23

e. States' Common Interest ..... 23

IV. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

3D Sys., Inc. v. Aarotech Labs., Inc.,
160 F.3d 1373 (Fed. Cir. 1998) ........ 11, 16

Akro Corp. v. Luker,
45 F.3d 1541 (Fed. Cir. 1995) ........ 6

Asahi Metal Indus. Co. v. Superior Court,
480 U.S. 102 (1987) ........ 11, 13, 14, 21

Barrett v. Lombardi,
239 F.3d 23 (1st Cir. 2001) ........ 10

Barry v. Mortgage Servicing Acquisition Corp.,
909 F. Supp. 65 (D.R.I. 1995) ........ 7

Boit v. Gar-Tec Products, Inc.,
967 F.2d 671 (1st Cir. 1992) ........ 15

Brian Jackson & Co. v. Eximias Pharmaceutical Corp.,
248 F. Supp. 2d 31 (D.R.I. 2003) ........ 12

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) ........ 11, 12, 18, 20

Central Tools, Inc. v. Chicago Brand Industrial, Inc.,
2004 U.S. Dist. LEXIS 27062 (D.R.I. Apr. 28, 2004) ........ 8, 9, 15

Colibri Corp. v. Curly & Smooth Handels GmbH,
2004 U.S. Dist. LEXIS 26711 (D.R.I. 2004) ........ 12, 13, 21, 22, 23

Cybersell, Inc. v. Cybersell, Inc.,
130 F.3d 414 (9th Cir. 1997) ........ 16

Dalmau Rodriguez v. Hughes Aircraft Co.,
781 F.2d 9 (1st Cir. 1986) ........ 14

Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.,
235 U.S. 641 (1915) ........ 1, 6, 19

Foster-Miller, Inc. v. Babcock & Wilcox Canada,
46 F.3d 138 (1st Cir. 1995) ........ 22

Fournier v. Best Western Treasure Island Resort,
962 F.2d 126 (1st Cir. 1992) ........ 18

Frank's Casing Crew & Rental Tools, Inc. v. Vincent,
2002 U.S. App. LEXIS 10765 at *21 (Fed. Cir. 2002) ........ 5

Geary v. Goldstein,
782 F.Supp. 725 (D.R.I. 1992) ........ 15

Hanson v. Denckla,
357 U.S. 235 (1958) ........ 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Helicopteros Nacionales de Colombia, S. A. v. Hall,
466 U.S. 408 (1984) ..... 7, 9

Hildebrand v. Steck Mfg. Co.,
279 F.3d 1351 (Fed. Cir. 2002) ..... 6

Hollyanne Corp. v. TFT, Inc.,
199 F.3d 1304 (Fed. Cir. 1999) ..... 6, 11, 18, 19

Inamed Corp. v. Kuzmak,
249 F.3d 1356 (Fed. Cir. 2001) ..... 6, 11, 18

International Shoe Co. v. Washington,
326 U.S. 310 (1945) ..... 1, 6

Jonette Jewelry Co. v. Merlite Industries, Inc.,
1998 U.S. Dist. LEXIS 9706, *10 (D. R.I. 1998) ..... 7, 9

Keeton v. Hustler Magazine, Inc.,
465 U.S. 770 (1984) ..... 11

Levinger v. Matthew Stuart & Co.,
676 F. Supp. 437 (D.R.I. 1998) ..... 10

LSI Indus. Inc. v. Hubbell Lighting, Inc.,
232 F.3d 1369 (Fed. Cir. 2000) ..... 6

Marino v. Hyatt Corp.,
793 F.2d 427 (1st Cir. 1986) ..... 18

North Am. Philips Corp. v. American Vending Sales,
35 F.3d 1576 (Fed. Cir. 1994) ..... 13

Northeastern Land Serv., Ltd. v. Schulke,
988 F. Supp. 54 (D.R.I. 1997) ..... 10, 18

Nowak v. Tak How Invs.,
94 F.3d 708 (1st Cir. 1996) ..... 11

Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,
196 F.3d 284 (1st Cir. 1999) ..... 11

Pritzker v. Yari,
42 F.3d 53 (1st Cir. 1994) ..... 10, 21, 22

Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,
148 F.3d 1355 (Fed. Cir. 1998) ..... 6

Rotect Indus., Inc. v. Mitsubishi Corp.,
215 F.3d 1246 (Fed. Cir. 2000) ..... 1, 6, 18, 19

Rush v. Savchuk,
444 U.S. 320 (1980) ..... 11

Sawtelle v. Farrell,
70 F.3d at 1391 ..... 11, 20, 23

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


Ticketmaster-New York, Inc. v. Alioto,
26 F.3d 201 (1st Cir. 1994) ........ 11, 18, 21

United Elec. Workers v. 163 Pleasant St. Corp.,
960 F.2d 1080 (1st Cir. 1992) ........ 7, 10, 20

United States v. Davis,
1997 U.S. Dist. LEXIS 22243 (D.R.I. 1997) ........ 13, 14

Viam Corp. v. Iowa Import-Export Trading Co.,
84 F.3d 424 (Fed. Cir. 1996) ........ 6

World Wide Volkswagen v. Woodson,
444 U.S. 286 (1980) ........ 12, 13, 17


**FEDERAL STATUTES**


35 U.S.C. § 271(a) ........ 18

# I. INTRODUCTION

Defendant Shanghai ELE Manufacturing Corporation's ("Shanghai ELE") minimal contacts with the State of Rhode Island are insufficient to support personal jurisdiction over Shanghai ELE. A brief review of Shanghai ELE's lack of contacts illustrates the point:

- Shanghai ELE is a Chinese company and does not have any subsidiaries in Rhode Island or any other state in the United States
- Shanghai ELE does not have an office or facility in Rhode Island or any other state in the United States
- Shanghai ELE does not own any property or have a bank account in Rhode Island or any other state in the United States
- Shanghai ELE does not have any employees, agents or representatives in Rhode Island or any other state in the United States
- Shanghai ELE does not sell, offer for sale or advertise its products directly in Rhode Island
- Shanghai ELE's products subject to this patent infringement action are all manufactured and sold in China for assembling into air conditioner units by unrelated third party manufacturers in China, and imported and sold in the United States market without any control of Shanghai ELE by third party entities completely unrelated to Shanghai ELE

Given the absence of any meaningful connection between Shanghai ELE and the State of Rhode Island, exercise of personal jurisdiction over Shanghai ELE would "offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Moreover, patent infringement cannot be based wholly upon acts done in a foreign country. Rotect Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1249 (Fed. Cir. 2000) (*citing* Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 650 (1915)). The only action by Shanghai ELE in connection with its alleged infringing LCDI devices was the manufacturing

of its LCDI devices in China and selling them to air conditioner manufacturers in China, which cannot as a matter of law be a basis for maintaining this action here in the United States.

For this reason, Plaintiff Tower Manufacturing Corporation's ("Tower Mfg.") suit against Shanghai ELE should be dismissed.

## II. FACTUAL BACKGROUND

Tower Mfg., a company headquartered in Rhode Island, alleges that Shanghai ELE's Leakage Current Detection & Interruption (LCDI) devices have infringed Tower Mfg.'s United States Patent No. 6,738,241 B1 ("the '241 Patent"), and chose to sue Shanghai ELE in Rhode Island. (*Complaint*, ¶¶ 6, 9 and 11.)

Shanghai ELE is a privately owned company headquartered in Shanghai, China, with its other manufacturing facilities located in Jiangsu and Zhejiang Provinces, China. (*Declaration of Long Zhang* (hereafter "*Zhang Decl.*"), ¶ 2.)

Shanghai ELE has no subsidiaries, branch, office or factory in Rhode Island or any other state in the United States. It does not own or lease any property, or have any bank or investment account in Rhode Island or any other state in the United States. It does not have any employees or registered agents for service of process in Rhode Island or any other state in the United States. No shareholder, director, officer or employee of Shanghai ELE has ever visited Rhode Island. (*Zhang Decl.* ¶¶ 3-5.)

Shanghai ELE has never directly offered for sale or sold any products to any distributor, retailer, or general consumer located in Rhode Island. It has never advertised its products in Rhode Island or used any advertising company or agency to advertise its products in Rhode Island. It does not have a business telephone account or telephone number (including toll free long distance number) in Rhode Island or any other state in the United States. It has never sold any of its products to, or transacted any business with, any distributor, retailer, or general consumer located in Rhode Island directly through Shanghai ELE's Internet website. (*Zhang Decl.* ¶¶ 6-9.)

While currently there are two types of Shanghai ELE's products sold in the United States markets, neither of them was imported or sold in the United States directly by Shanghai ELE. One type of product is a Ground Fault Circuit Interruption (GFCI) device which is unrelated to the instant action, and the other type of product is the LCDI device. (*Zhang Decl.* ¶¶ 10-11.)

Shanghai ELE's GFCI products were sold to Chinese exporters in China. The Chinese exporters in turn sold the GFCI products to United States importers, which products finally were sold in the United States market through United States distributors and retailers. Shanghai ELE has never sold, offered for sale, or advertised any of Shanghai ELE's GFCI products either directly or through its Internet website to any distributor, retailer or general consumer located in Rhode Island. (*Zhang Decl.* ¶¶ 12-14.)

Shanghai ELE's LCDI devices were not sold as an independent final product on the general consumer market, but rather sold to air conditioner manufacturers located in China (including South Korea's LG Electronics Inc.'s manufacturing plant located in Tianjin, China). The manufacturers then assembled their air conditioner products with the LCDI device as a component part. The air conditioners were then exported to and sold in the United States as whole units by entities completely unrelated to Shanghai ELE. The average price on the United States market of the air conditioner units with Shanghai ELE's LCDI device as a component part is about $100, wherein the value of the LCDI component is only about $4, less than 5% of the whole unit value. (*Zhang Decl.* ¶¶ 15-16.)

Shanghai ELE has never directly offered for sale or sold any Shanghai ELE's LCDI products to any manufacturer, distributor, retailer, or general consumer located in Rhode Island. Shanghai ELE has never advertised, or used any advertising company or agency to advertise, its LCDI products in Rhode Island. Nor has it ever sold directly through its Internet website any of its LCDI products to any manufacturer, distributor, retailer, or general consumer located in Rhode Island. (*Zhang Decl.* ¶¶ 17-19.)

Shanghai ELE was aware that its products may be ultimately sold in the United States and obtained approval from Underwriters Laboratories (UL) in accordance with the requirement

by the Chinese exporters or manufacturers. However, it had absolutely no control over the importation and sale of the products in the United States. Moreover, it has no control over where in the United States its products would be sold. Particularly, Shanghai ELE has no knowledge or control over whether its products would be or indeed have been sold in Rhode Island. (*Zhang Decl.* ¶¶ 20-21.)

Shanghai ELE has made many innovations in its GFCI and LCDI products and has applied for and obtained several Chinese patents, and also has several corresponding United States patent and patent applications. However, none of Shanghai ELE's products was purposefully designed and made especially for sale or use in Rhode Island or any other state in the United States. In fact, Shanghai ELE's products are sold in the in the United States, as well as in China, Japan, South Korea, Thailand, Russia, the European countries, the Middle East countries, Canada, Mexico, Australia, *etc.* (*Zhang Decl.* ¶¶ 22-23.)

Forcing Shanghai ELE to defend itself in this Court will place a very heavy and unreasonable burden upon it. Shanghai ELE has no facility or personnel located in Rhode Island. Traveling from Shanghai, China to Providence, Rhode Island will take about 20 hours. (*Zhang Decl.* ¶ 24.)

All documents and materials related to the design, invention, manufacturing and sales of Shanghai ELE's GFCI and LCDI products, including, but not limited to, design blueprints, machineries, raw materials, inventory, manufacturing and sales records, accounting records, *etc.*, are located in Shanghai ELE's headquarters in Shanghai, China or its manufacturing plants in Jiangsu and Zhejiang Provinces of China. (*Zhang Decl.* ¶ 26.)

In addition, Shanghai ELE's knowledgeable personnel and staff, including, but not limited to, inventors, researchers and designers, engineers, technicians, raw material purchasers, inventory controllers, quality and control supervisors, manufacturing and sales staffs and managers, accountants, corporate executives, *etc.*, all reside in Shanghai, China, or in Jiangsu or Zhejiang Provinces of China. Due to the restrictions on Chinese citizens' traveling to the United States presently imposed by both the United States and Chinese governments, it will be very

difficult for Shanghai ELE's witnesses to come to the United States to testify at the trial of this action. (*Zhang Decl.* ¶¶ 27-28.)

On the other hand, Tower Mfg. has presented itself as "a leading international manufacturer of wiring devices and electromechanical products with manufacturing in Shenzhen, China and Providence, Rhode Island with sales and purchasing offices in USA, Hong Kong and Taiwan." (*Declaration of Tony D. Chen* (hereafter "*Chen Decl.*"), ¶¶ 2-4, 6, Exhibit A.)

It will not be very burdensome for Tower Mfg. to litigate in China. Tower Mfg. transacts business in China on a very substantial level and scale, and its LCDI products are also sold to air conditioner manufacturers in China for assembling into whole air conditioner units which are then shipped back and sold in the United States. (*Zhang Decl.* ¶ 29.) Ninety percent of Tower Mfg.'s manufacturing is done in its China facility. (*Chen Decl.*, ¶ 4, Exhibit A.)

Moreover, as the holder of the largest market share in the United States market of all air conditioner units with LCDI protection, Tower Mfg. also knows full well who are the Chinese manufacturers and American importers, distributors and retailers of the air conditioner units that are assembled with Shanghai ELE's LCDI products, and has adequate capacity and resources to sue these entities for patent infringement in the United States. (*Zhang Decl.* ¶ 32.) Tower Mfg. is a member of several well known and powerful national trade associations, including the National Electrical Manufacturers Association (NEMA), National Fire Protection Association (NFPA), Association of Home Appliance Manufacturers (AHAM), *etc.* (*Chen Decl.*, ¶ 5, Exhibit A.)

As explained in detail below, the facts stated above fully support Shanghai ELE's instant motion.

## III. <u>LEGAL ARGUMENTS</u>

### A. APPLICABLE LEGAL STANDARD

Exercise of personal jurisdiction in a patent infringement suit is governed by Federal Circuit law. <u>Frank's Casing Crew & Rental Tools, Inc. v. Vincent</u>, 2002 U.S. App. LEXIS

10765 at *21 n.5 (Fed. Cir. 2002); Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

The Federal Circuit applies the "minimum contacts" doctrine developed by the Supreme Court in International Shoe and its progeny. Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002); Viam Corp. v. Iowa Import-Export Trading Co., 84 F.3d 424, 427 n.2 (Fed. Cir. 1996). In applying the "minimum contacts" doctrine, federal district courts shall apply the same minimum contacts analysis of the forum state. LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369,1375 n.5 (Fed. Cir. 2000); Akro Corp. v. Luker, 45 F.3d 1541, 1544-45 (Fed. Cir. 1995).

"Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." LSI Indus. Inc. v. Hubbell Lighting, Inc., *supra* 232 F.3d at 1375 (*citations omitted*); Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., *supra* 148 F.3d at 1359.

The Federal Circuit also applies a three-prong test for determining if specific jurisdiction exists: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." Hollyanne Corp. v. TFT, Inc., 199 F.3d 1304, 1307-08 (Fed. Cir. 1999).

The burden of proof is on the plaintiff to establish that the defendant has sufficient "minimum contacts" with the forum state to comport with Due Process. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

As a legal principle, patent infringement cannot be based wholly upon acts done in a foreign country. Rotect Indus., Inc. v. Mitsubishi Corp., *supra*, 215 F.3d at 1249 (*citing* Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., *supra*, 235 U.S. at 650).

### B. SHANGHAI ELE DOES NOT MAINTAIN "CONTINUOUS AND SYSTEMATIC" CONTACTS WITH RHODE ISLAND AND IS NOT SUBJECT TO GENERAL JURISDICTION

Shanghai ELE has no minimal contact with Rhode Island that could rise to the level of "continuous and systematic" contacts necessary to establish general jurisdiction.

General jurisdiction may exist when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir. 1992). The defendant's in-state activities must be both "continuous and systematic." Id. at 1088. The general jurisdiction standard is considerably more stringent than the standard for specific jurisdiction. Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 74 (D.R.I. 1995). "The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." Id. at 75.

For example, in Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 410-11 (1984), the Supreme Court refused to find general in personam jurisdiction over the defendant where its forum contacts consisted of the following: (1) a trip to the forum by defendant's chief executive to discuss selling helicopters to a joint-venture; (2) defendant's purchase of over $4,000,000 in helicopters from a forum company; (3) the fact that defendant sent its pilots, management, and maintenance personnel to the forum for training and plant familiarization; and (4) the fact that defendant received $ 5,000,000 in payments drawn on a forum bank.

As another example, the Court in Jonette Jewelry Co. v. Merlite Industries, Inc.,1998 U.S. Dist. LEXIS 9706, *10 (D. R.I. 1998), found the defendant's contacts with Rhode Island to be insufficient to confer general personal jurisdiction. In Jonette Jewelry, the defendant, a New York corporation, did not target any customers in Rhode Island – it sent catalogues only in response to a request by a potential customer. The company did not advertise in Rhode Island – it arranged with organizations to place inserts in mailings sent by their record clubs, book clubs, and other such mailers, none of which were based in Rhode Island. Additionally, all of

defendant's facilities, employees and activities were located outside of Rhode Island and the company never owned or leased property in Rhode Island. Finally, the allegedly infringing items were manufactured in Hong Kong; and most importantly, less than one percent (0.24 percent) of defendant's total sales were to customers in Rhode Island. The Jonette court emphasized that the defendant's minuscule sales as constituting isolated activities in Rhode Island.

In Central Tools, Inc. v. Chicago Brand Industrial, Inc., 2004 U.S. Dist. LEXIS 27062 (D.R.I. Apr. 28, 2004), the plaintiff corporation brought an action against the defendant corporation alleging patent infringement of a specific type of calipers. Defendant brought a motion to dismiss the complaint alleging that defendant was not subject to personal jurisdiction in Rhode Island. The Court granted defendant's motion to dismiss.

In Central Tools, Defendant was a California company with its sole place of business located in Fremont, California. Id. at *2. The company employed four people, none of whom had ever been to Rhode Island for business purposes and ten sales representatives who operated as independent contractors. Id. None of the sales representatives was located in Rhode Island and no sales representative ever called on any distributors in Rhode Island. Id. The sales representatives did have web sites to display the company's products and the distributors could purchase defendant's products from the sales representatives' web sites. Id. Those web sites, however, were passive and nothing was sent out actively to target buyers in Rhode Island. Id.

Defendant's products were sold almost exclusively to distributors for resale. In fact, less than one percent of sales were made directly to end users and none of these direct sales had been made to a customer in Rhode Island. Id. Defendant had over 400 distributors, none of whom were located in Rhode Island and only a small number of distributors sold the calipers which were the subject of the litigation. Id. One of those distributors (in Cleveland, Ohio), ordered a single caliper from defendant for $175. Id. at *3. The distributor provided defendant with instructions to ship the caliper to an individual employed by plaintiff and who was a resident of Rhode Island. Id.

As to general jurisdiction, the Court in Central Tools held that there were no facts to support a finding that defendant engaged in any activities in Rhode Island. The Court reasoned that it had no property or personnel in Rhode Island and had no direct contact with any distributor, sales representative, or customer in Rhode Island. Id. at *6. The only contact Defendant had with Rhode Island was the shipment of one caliper to an employee of Plaintiff shortly before the lawsuit was filed. According to the Central Tools Court, this one contact was insufficient as a matter of law to establish general jurisdiction. Id. at *7.

In this instant action, Shanghai ELE is a foreign corporation which has no subsidiaries, branch, office or factory, owns no property, has no bank or investment account, and has no employee or agent, in Rhode Island or any other state in the United States. None of Shanghai ELE's shareholders, directors, officers or employees has ever visited Rhode Island. Shanghai ELE has never directly offered for sale or sold or advertised any products to any distributor, retailer, or general consumer in Rhode Island, and maintains no business telephone account or telephone number, nor toll free long distance number, in Rhode Island or any other state in the United States.

Shanghai ELE has never sold any of its products to, or transacted any business with, any distributor, retailer, or general consumer located in Rhode Island directly through its Internet website. All of Shanghai ELE's LCDI devices are manufactured and sold in China for assembling into air conditioner units by unrelated third party manufacturers in China and imported and sold in the United States without any control of Shanghai ELE by third party entities that are completely unrelated to Shanghai ELE.

In fact, Shanghai ELE does not have any contact with Rhode Island that may rise to the level of what the defendants had with the forum states respectively in the Helicopteros, Jonette Jewelry and Central Tools cases, and general jurisdiction was rejected in each case. There is simply no "continuous and systematic" contact between Shanghai ELE and Rhode Island. Accordingly, there is no sufficient basis to support general jurisdiction over Shanghai ELE in Rhode Island.

## C. SHANGHAI ELE IS NOT SUBJECT TO SPECIFIC JURISDICTION IN RHODE ISLAND IN THIS ACTION

Since there is no general jurisdiction over Shanghai ELE, the Court must next look to the Federal Circuit's three-prong test to determine whether specific jurisdiction exists. Because Shanghai ELE has not directed its activities to Rhode Island, and because this case does not arise out of any Shanghai ELE's contact with Rhode Island, specific jurisdiction is equally lacking.

Specific jurisdiction applies where "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992). For a court properly to exercise specific personal jurisdiction over the defendant, the requirements of both the state's long-arm statute and the United States Constitution must be satisfied. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001); Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

The Rhode Island long-arm statute, as interpreted by the Supreme Court of Rhode Island, is coextensive with federal due process mandates and provides:

> "Every foreign corporation, every individual not a resident of this state . . . and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island . . . in every case not contrary to the provisions of the constitution or laws of the United States."

Therefore, Fourteenth Amendment due process requirements determine the exercise of personal jurisdiction in the District of Rhode Island. Levinger v. Matthew Stuart & Co., 676 F. Supp. 437, 439 (D.R.I. 1998); Northeastern Land Serv., Ltd. v. Schulke, 988 F. Supp. 54, 57 (D.R.I. 1997).

The three factor test to be applied by federal courts in determining whether asserting jurisdiction comports with due process is: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is

"reasonable and fair" in light of the "Gestalt factors". Inamed Corp. v. Kuzmak, *supra*, 249 F.3d at 1360; Hollyanne Corp. v. TFT, Inc., *supra*, 199 F.3d at 1307-08 (Fed. Cir. 1999); 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998). This test is the same as the one applied by the First Circuit. *See e.g.* Phillips Exeter Acad. V. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

### 1. **Shanghai ELE Has Not Purposefully Availed Itself of This Forum**

A defendant purposefully avails itself of a jurisdiction when it directs its actions towards the forum state, "thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Such actions indicate "an intent or purpose to serve the market in the forum State." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987).

The prong of the three-part test serves "to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d at 1391 (*quoting* Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (explaining how defendant's contacts must qualify as "invoking the benefits and protections of [the forum state's] laws"). The goal is to identify in-state activity "that would make the exercise of jurisdiction fair, just, or reasonable." Rush v. Savchuk, 444 U.S. 320, 329 (1980).

The kind of purposeful availment necessary in the First Circuit requires in-state conduct by the defendant which is both voluntary and which makes it reasonably foreseeable that the defendant might be sued in the forum. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). However, the fact that the parties voluntarily enter into a relationship will not by itself satisfy the purposeful availment prong. Phillips Exeter Acad. V. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship – say by solicitation, *see, e.g.*, Nowak v. Tak How Invs., 94 F.3d 708, 716-17 (1st Cir. 1996) - the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."). The foreseeability

component of purposeful availment requires that defendants have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, *supra*, 471 U.S. at 472 (1985).

In Colibri Corp. v. Curly & Smooth Handels GmbH, 2004 U.S. Dist. LEXIS 26711 (D.R.I. 2004), the plaintiff, citing Brian Jackson & Co. v. Eximias Pharmaceutical Corp., 248 F. Supp. 2d 31, 36 (D.R.I. 2003), argued that the defendant's activities which it directed toward Rhode Island, *i.e.*, correspondence and e-mail relating to orders for products and visits by two of defendant's employees were sufficient to support the exercise of personal jurisdiction. The Colibri Court distinguished Brian Jackson, reasoning that the "core allegations in Jackson's suit," arose, for the most part, out of activities occurring in Rhode Island, whereas the core allegations of Colibri's suit all related to activities occurring in Europe. Furthermore, in Brian Jackson, the defendant "urged [the plaintiff] to conduct business out of his office in Rhode Island, rather than travel to Pennsylvania, as a cost saving measure." Brian Jackson, *supra*, 248 F. Supp.2d at 36. The Brian Jackson Court noted that the defendant "might well have anticipated that encouraging [the plaintiff] to perform his contractual duties in Rhode Island substantially increased its ties to Rhode Island." Id. Thus, there was evidence of "a voluntary decision by the defendant to inject itself into the local economy as a market participant." Id. At 35-36. In contrast, the Colibri Court found no evidence of a similar decision by defendant.

As a corollary to the purposeful availment element, the "stream of commerce" theory has developed as a predicate for courts to exercise specific jurisdiction. Under this theory, "the forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." World Wide Volkswagen v. Woodson, 444 U.S. 286, 297-98 (1980). In World-Wide Volkswagen, jurisdiction did not lie over an alleged foreign tortfeasor whose product was transported into the forum state through the unilateral actions of a third party having no pre-existing relationship with the tortfeasor. There was thus no purposeful contact by the tortfeasor with the forum, and thus

no basis for exercising personal jurisdiction over the defendants. Id. At 298. *See also* North Am. Philips Corp. v. American Vending Sales, 35 F.3d 1576 (Fed. Cir. 1994) ("In this case, [defendants] placed a substantial quantity of infringing articles into the stream of commerce conscious that they were destined for [the forum state]. . . . Surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on that importation.").

The Supreme Court in Asahi Metal Industry Co., Ltd. v. Superior Court, *supra*, 480 U.S. at 112, has further articulated the parameters of the "stream of commerce" theory in holding that designing a product for the market in the forum state, advertising in the forum state, or establishing marketing channels for the product in the forum state may indicate an intent on the part of the defendant to serve that forum so that the exercise of specific jurisdiction is appropriate.

Here in this district, in United States v. Davis, 1997 U.S. Dist. LEXIS 22243 (D.R.I. 1997), the United States brought a CERCLA action against various chemical companies to recover costs for clean up of polluted sites. One of the chemical companies in turn filed an action for contribution against a fourth party defendant, who then moved to dismiss or in the alternative for summary judgment on the grounds that there was a lack of personal jurisdiction. The court granted the motion.

In resolving the jurisdictional dispute, the Davis Court applied the stream of commerce doctrine articulated in Asahi Metal Indus., *supra*, 480 U.S. at 113. In Davis, *supra*, 1997 U.S. Dist. LEXIS 22243, the defendant, a transporter of waste operating out of New Jersey collected and transported drums of hazardous waste at issue from one facility in New Jersey to another New Jersey facility. Id. At *22. The facility then independently decided to make arrangements for the distribution of drums to a site in Rhode Island where the pollution occurred. Id.

The Davis Court focused on the elements of foreseeability and purposeful availment in determining whether it could exercise personal jurisdiction over defendant. Id. At *23. The Court concluded that the facts of the case failed to demonstrate that defendant had voluntarily

sought to serve the Rhode Island market or that it should have foreseen that the waste at issue would wind up in Rhode Island. The Court reasoned that it was clear that defendant never knew that the waste it transported to the New Jersey facility would later be taken to Rhode Island. Id. Moreover, defendant's contract with the facility did not contemplate any business activity with Rhode Island. It was therefore hardly foreseeable to defendant that the waste would be moved from the New Jersey facility to Rhode Island. Id. Based on these facts, coupled with the fact that defendant maintained no property, agents, or accounts in Rhode Island, the Court held that there was an insufficient basis to exert personal jurisdiction over the defendant. Id. At *24.

The First Circuit has also discussed the "stream of commerce" doctrine in resolving issues of personal jurisdiction. For example, in Dalmau Rodriguez v. Hughes Aircraft Co., 781 F.2d 9 (1st Cir. 1986), Hughes Aircraft company, a Delaware corporation with offices in California, manufactured helicopters which it sold to an intermediary who had a contract to supply helicopters to the Puerto Rico police department. An alleged defect in the helicopters injured two police officers, who brought suit against Hughes. While Hughes argued lack of minimum contacts, plaintiffs argued that because Hughes knew that its helicopters were to be delivered to Puerto Rico, the stream of commerce doctrine permitted jurisdiction. The First Circuit, however, rejected this argument:

> "Assuming that Hughes knew that the destination of the helicopters was Puerto Rico, we do not think that the sale of two helicopters to a police department can be the source of a stream of commerce. This is not like opening up a particular territory for sales to the general public . . . . There is nothing in the record showing that Hughes advertised regularly in magazines circulated in Puerto Rico or aimed its advertising at Puerto Rico.
> . . . .
> We do not think that whether Hughes knew that the helicopters were being sold to Puerto Rico police department has any jurisdictional significance. The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposely engaged in forum activities so it can reasonably expect to be haled into court there . . . ."

Id. at 15.

Similarly in Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992), the Court refused to exercise jurisdiction over the wholesaler of a hot air gun that was used by a contractor, who, in the process of stripping paint, caused a fire that seriously damaged plaintiff's home. The only contact plaintiffs alleged the wholesaler had with the forum state (Maine) was its act of selling the hot air gun to a specialty tool company, which had a retail outlet in Maine, followed by the retailer selling the gun through the mail to plaintiffs via a catalogue order. Id. at *35-36. According to the Boit Court, there was no evidence in the record that the wholesaler intended to serve the market in Maine. Id. at *36.

Looking to the stream of commerce doctrine discussed in Asahai, the Boit Court found no evidence that the wholesaler designed the product for Maine, advertised in Maine, established channels for providing regular advice to customers in Maine, or marketed the product through a distributor who had agreed to serve as a sales agent in Maine. Id. The only "contact" with Maine that could possibly be attributed to the wholesaler was "mere awareness" that the gun could end up in Maine. The Court held that this could not constitute "purposeful availment." Id. *See also* Geary v. Goldstein, 782 F. Supp. 725, 730 (D.R.I. 1992) (sale of a magazine in Rhode Island by independent distributors, as opposed to direct distribution in the state by defendants themselves cannot suffice to subject defendants to jurisdiction).

In the Central Tools case discussed earlier, the Court, after rejecting general jurisdiction, noted that as to specific jurisdiction, it was clear that defendant had not engaged in any activity in Rhode Island and had not sold any of the allegedly infringing product in Rhode Island. The only fact plaintiff could point to was the shipment of one caliper by defendant to plaintiff's employee. However, the shipment of one $175 item could not alone support a finding of "more than minimum contact" within Rhode Island or purposeful availment of the privilege of doing business in Rhode Island. Id. at *8. Based on these facts, the Central Tools Court found that plaintiff had failed to establish the first two elements of its claim of specific jurisdiction and therefore the Court did not see the need to go through the exercise of weighing the Gestalt factors. Id.

In addition, it is well settled law that a passive website is insufficient to establish purposeful availment for the purpose of due process. 3D Sys., Inc. v. Aarotech Labs., Inc., *supra*, 160 F.3d at 1380 (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419-20 (9th Cir. 1997)).

In the instant action, Shanghai ELE has not directed any of its activities at residents of Rhode Island. Shanghai ELE has never directly offered for sale or sold any products to any distributor, retailer, or general consumer located in Rhode Island. It has never advertised its products in Rhode Island or used any advertising company or agency to advertise its products in Rhode Island. It has no business telephone account or telephone number (including toll free long distance number) in Rhode Island. It has never sold any of its products to, or transacted any business with, any distributor, retailer, or general consumer located in Rhode Island directly through Shanghai ELE's Internet website.

Currently there are only two types of Shanghai ELE's products (GFCI and LCDI) sold in the United States markets, and neither of them was imported or sold in the United States directly by Shanghai ELE. The GFCI device is completely unrelated to this action. The LCDI devices were not sold as an independent final product on the general consumer market, but rather sold to air conditioner manufacturers located in China. Shanghai ELE did not sell or direct the selling of its LCDI products to any manufacturer, distributor, retailer, or general consumer located in Rhode Island. Shanghai ELE has never advertised, or used any advertising company or agency to advertise, its LCDI products in Rhode Island. In addition, Shanghai ELE never sold any of its LCDI devices through its Internet website to any manufacturer, distributor, retailer, or general consumer in Rhode Island.

Shanghai ELE's LCDI devices are all sold as component parts to air conditioner manufacturers in China. Therefore, it has absolutely no control over any subsequent importation or sales of the final air conditioner products in the United States by these manufacturers or their distributors. Moreover, Shanghai ELE has no control over where in the United States such air conditioner products would be sold. In fact, Shanghai ELE has no knowledge as to whether its

products would be or indeed have been sold in Rhode Island. Shanghai ELE did not voluntarily direct its LCDI device towards Rhode Island consumers, and did not foresee where the air conditioner products with Shanghai ELE's LCDI components would be sold in the United States.

Furthermore, Shanghai ELE's products were not purposefully designed and made especially for sale or use in Rhode Island or any other state in the United States. Rather, its products were made to be sold in the United States, as well as China, Japan, South Korea, Thailand, Russia, the European countries, the Middle East countries, Canada, Mexico, Australia, *etc.*

Under these circumstances, it cannot be said that Shanghai ELE has "purposefully avail[ed] itself of the privilege of conducting activities within [Rhode Island]." World-Wide Volkswagen Corp. v. Woodson, *supra*, 444 U.S. at 297. The situation in this case is analogous to that in World-Wide Volkswagen, where the Supreme Court found that the assertion of personal jurisdiction would violate Due Process. As in World-Wide Volkswagen, the air conditioner units with Shanghai ELE's LCDI components arrive in the United States not as a result of any action by Shanghai ELE, but as a result of the activities of totally unrelated third-party air conditioner manufacturers or their distributors or customers. Shanghai ELE does not control where these manufacturers or distributors sell their air conditioner units, and thus cannot control where these air conditioner units incorporating Shanghai ELE LCDI devices are sold. The Supreme Court clearly established in World-Wide Volkswagen that such "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id. at 298.

Shanghai ELE has not directed its activities at Rhode Island. Accordingly, this Court cannot assert personal jurisdiction over Shanghai ELE.

### 2. Plaintiff's Cause of Action Does Not Arise Out Of and Is Not Related to Shanghai ELE's Forum Activities

Plaintiff's Tower Mfg.'s cause of action in this suit cannot arise from any contact Shanghai ELE has had with Rhode Island because there is none. As noted earlier, patent infringement cannot be based wholly upon defendant's alleged acts done in a foreign country. Rotect Indus., Inc. v. Mitsubishi Corp., *supra*, 215 F.3d at 1249.

This prong of the "minimum contacts" analysis of the due process inquiry "focuses on whether the defendant 'has purposefully directed his activities at resident of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.' " Inamed Corp. v. Kuzmak, *supra*, 249 F.3d at 1360 (quoting Burger King, *supra*, 471 U.S. at 471-76). Plaintiff has the burden of proof for this prong. Inamed Corp., *supra*, at 1360.

This "relatedness" requirement for specific jurisdiction centers "on the causal nexus between [the defendant's] forum-based contacts and the harm underlying [the plaintiff's] complaint." Northeastern Land Serv., 988 F. Supp. at 57-58. See also Ticketmaster-New York, Inc. v. Alioto, *supra*, 26 F.3d at 206 (1st Cir. 1994). The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties. Rather, the action must directly arise out of the specific contacts between the defendant and the forum state. *See, e.g.*, Fournier v. Best Western Treasure Island Resort, 962 F.2d 126, 127 (1st Cir. 1992) (where plaintiff had made vacation arrangements in Massachusetts but was injured out-of-state, cause of action did not "arise from" the defendant resort operator's contacts with Massachusetts within the meaning of the state long-arm statute); Marino v. Hyatt Corp., 793 F.2d 427 (1st Cir. 1986).

The proper test for 'giving rise' to a cause of action for patent infringement is whether defendant's alleged infringement activity in the forum state is a basis for the cause of action. Hollyanne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 n.4 (Fed. Cir. 1999). Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). Thus, for there to be specific personal jurisdiction over

Shanghai ELE in Rhode Island or any other state in the United States, Plaintiff would have to show that Shanghai ELE did none of those listed activities in Rhode Island or that other state in the United States. See Hollyanne Corp. at 1308. Further, infringement cannot be based wholly upon acts done in a foreign country. Rotect Indus., Inc. v. Mitsubishi Corp., *supra*, 215 F.3d at 1249 (citing Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., *supra*, 235 U.S. at 650).

In this case, the alleged infringement of Plaintiff Tower Mfg.'s '241 Patent has nothing to do with any Shanghai ELE's activity (if there is any) in Rhode Island or any other state in the United States. There are only two types of Shanghai ELE's products (GFCI and LCDI) currently being sold in the United States markets (where the GFCI products are unrelated and not subject to this lawsuit), yet neither of them was imported or sold in the United States directly by Shanghai ELE.

Shanghai ELE's LCDI devices were not sold as an independent final product on the general consumer market. Rather, the LCDI devices were sold as component parts to air conditioner manufacturers located in China. The air conditioner manufacturers then assembled their air conditioner products with the LCDI device as one of the components. The air conditioners were then imported into and sold in the United States as whole units by the air conditioner manufacturers or their distributors or customers which are entities completely unrelated to Shanghai ELE.

The sales of its LCDI devices by Shanghai ELE to the air conditioner manufacturers occurred completely within China, and none of such sales transaction between Shanghai ELE and these Chinese air conditioner manufacturers occurred within Rhode Island or any other state in the United States. None of the air conditioner units (that have LCDI protection) that are currently sold in the United State market was made, used or sold by Shanghai ELE. The average price on the United States market of the air conditioner units is about $100, wherein the value of the LCDI component is only about $4, less than 5% of the whole unit value.

It is clear that this case does not arise from any activity of Shanghai ELE that was actually directed at Rhode Island or any other state in the United States. In the absence of any

relationship between Shanghai ELE's activities and any alleged infringement in Rhode Island, specific jurisdiction in this Court does not exist.

### 3. Asserting Personal Jurisdiction over Shanghai ELE in Rhode Island Would Be Unreasonable and Unfair

Independent of Shanghai ELE's lack of contacts with Rhode Island, exercise of personal jurisdiction over Shanghai ELE would be unreasonable under the circumstances of this case.

The third prong of the personal jurisdiction analysis, the Gestalt factors, arises after the establishment of minimum contacts and centers on whether the exercise of jurisdiction is reasonable. Burger King Corp., *supra*, 471 U.S. at 476-77. Reasonable equates with "fair play and substantial justice." Id. If the court concludes that a plaintiff has satisfied neither the relatedness nor the purposeful availment segments of the test for specific jurisdiction, discussion of the Gestalt factors is not mandatory. Sawtelle v. Farrell, *supra*, 70 F.3d at 1394 ("failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"); United Elec., Radio & Mach. Workers of America, 960 F.2d 1080, 1091 (1st Cir. 1992) ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.").

Under this third prong of the specific jurisdiction analysis, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. Sawtelle v. Farrell, *supra*, 70 F.3d at 1389. The "Gestalt factors," are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id. at 1394.

The third part of the jurisdictional test is flexible and varies in accordance with the strength of the first two parts. That is, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of

unreasonableness to defeat jurisdiction." Ticketmaster-New York, Inc., *supra*, 26 F.3d at 210 (1st Cir. 1994). On the other hand, "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id. at 210. The factors are self-evident and so no detailed analysis accompanies their discussion. Brief reference, where appropriate is made to the Colibri case because it involved a defendant company located in Germany.

In this case, it would be grossly unfair to require Shanghai ELE to defend its entirely foreign activities here in Rhode Island. As the Supreme Court noted in Asahi: "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi, *supra*, 480 U.S. at 114. To drag a foreign company like Shanghai ELE that does not sell or market its products in Rhode Island into a court here, based not upon its own actions but upon those of completely unrelated third parties violates the "traditional notions of fair play and substantial justice" that are protected by, the Due Process Clause. Id. at 113.

**a. Defendant's Appearance Burden**

In terms of the burden of defending a suit in Rhode Island, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). For example, in Colibri, *supra*, the burden was deemed substantial because the defendant had no presence in the forum state and all of the witnesses related to the claims were located in Europe.

Similarly, in the instant action, the burden for Shanghai ELE to defend itself in Rhode Island is substantial, as Shanghai ELE has no presence in Rhode Island. All documents and materials related to the design, invention, manufacturing and sales of Shanghai ELE's LCDI devices are located in China. All of Shanghai ELE's knowledgeable personnel and staff, including inventors, researchers and designers, engineers, technicians, raw material purchasers,

inventory controllers, quality and control supervisors, manufacturing and sales staffs and managers, accountants, corporate executives, *etc.*, reside in China. Because of the travel restrictions imposed on Chinese citizens by the United States and Chinese governments, it will be very difficult for Shanghai ELE's witnesses to come to the Rhode Island to testify at the trial of this action.

**b. Forum State's Interest**

The First Circuit has observed that "the purpose of [this] inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995). In Colobri, *supra*, although the court found that Rhode Island had an interest in affording relief to the plaintiff, a company located in its jurisdiction, the actual dispute arose because of actions occurring in Germany and other European countries. According to the court, "[r]esolving claims of unlawful competition in foreign countries is a matter in which this court has at most a limited interest."

Here, Shanghai ELE's only involvement with the accused infringing LCDI device is the manufacturing and selling of its LCDI devices in China to air conditioner manufacturers located in China. This Court has at most a very limited interest in resolving Plaintiff Tower Mfg.'s patent infringement claim that is solely based on Shanghai ELE's entirely foreign activities.

**c. Plaintiff's Interest in Relief**

Under this factor, the aim is to ensure that Plaintiff is able to obtain "convenient and effective relief." Pritzker, *supra*, 42 F.3d at 64. To achieve this end, a court must generally "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. In Colibri, *supra*, the court noted that it was clearly more convenient for plaintiff, a Rhode Island company to litigate the action in Rhode Island. However, because plaintiff had sufficient resources and experience in conducting international business, the court

reasoned that plaintiff would not be left without a remedy if it refused to exercise jurisdiction over the foreign defendant.

Likewise, if the Court grants Shanghai ELE's motion to dismiss, Tower Mfg. is not left without a remedy. As a leading international manufacturer and the holder of the largest market share in the United States of all air conditioner units with LCDI protection, with manufacturing in Shenzhen, China and Providence, Rhode Island with sales and purchasing offices in USA, Hong Kong and Taiwan, and a member of powerful national trade associations such as National Electrical Manufacturers Association (NEMA), National Fire Protection Association (NFPA), Association of Home Appliance Manufacturers (AHAM), Tower has adequate capacity and resources to seek its remedies either in China or in the United States against the air conditioner manufacturers, importers or distributors who may be responsible for the alleged direct infringement of Tower Mfg.'s '241 Patent.

**d. Judicial System's Interest**

The key to applying this factor is ensuring "the most effective resolution of the controversy." Sawtelle v. Farrell, *supra*, 70 F.3d at 1395. In Colibri, *supra*, the court observed that it was more likely that a complete resolution of the controversy between the parties could be achieved by a trial in a German court than one in Rhode Island. Colibri, *supra*, 2004 U.S. Dist. LEXIS 26711 at *33.

As explained above, Tower Mfg. has adequate capacity and resources to seek its remedy in China directly against the manufacturers of the air conditioner units that incorporate the allegedly infringing LCDI devices.

**e. States' Common Interest**

As a fundamental social policy, it is desirable that the court which is most concerned with a controversy (*i.e.*, one where the alleged wrongdoing has occurred within its jurisdiction) should adjudicate the dispute. Id.

In this case, there is simply no controversy in Rhode Island because none of the alleged patent infringement activities (*i.e.*, making, using or selling the alleged infringing products) by Shanghai ELE has occurred within its jurisdiction.

## IV. <u>CONCLUSION</u>

Plaintiff bears the burden of showing that Shanghai ELE is subject to personal jurisdiction in this Court. Plaintiff has failed to meet that burden. Shanghai ELE does not have any "continuous and systematic" contact with Rhode Island as required to convey general jurisdiction. Shanghai ELE also has not directed its activities towards Rhode Island and thus has not purposefully availed itself of this forum. This patent infringement action by Tower Mfg. cannot be based wholly upon Shanghai ELE's acts done in a foreign country.

Because this Court cannot, consistent with the Due Process Clause, assert jurisdiction over defendant Shanghai ELE, Shanghai ELE respectfully requests that this case be dismissed in its entirety.

DEFENDANT
SHANGHAI ELE MANUFACTURING
CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:

ALSCHULER GROSSMAN STEIN &
KAHAN LLP
Tony D. Chen, *Pro Hac Vice Pending*
Email: tchen@agsk.com
Marshall B. Grossman, *Pro Hac Vice Pending*
William J. O'Brien, *Pro Hac Vice Pending*
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Dated: November 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, identified on the Notice of Electronic filing (NEF) and paper copies will be sent via regular mail, postage prepaid to Thomas F. Holt, Esq., Larissa S. Bifano, Esq. and John J. Cotter, Esq., Kirkpatrick & Lockhart Nicholson Graham LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950 on this 21st day of November, 2006.

/s/ Jeffrey S. Brenner