*Translation by Lingling Men Martin, Certified Court Interpreter #301082 - Mandarin* Lingling Martin 11/20/06 page 1 of 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | Civil Action No. CA 06 170S |

**DECLARATION OF LONG ZHANG**

I, Long Zhang, declare and state as follow:

1. I am the Chief Executive Officer of Shanghai ELE Mfg. Co. Ltd. (hereafter referred to as "Shanghai ELE"). I make this declaration upon my own personal knowledge, except where noted upon information and belief, and if called as a witness, could and would competently testify thereto.

2. Shanghai ELE is a privately owned manufacturer of household electrical products, with its headquarters located in the City of Shanghai, China, and other manufacturing facilities located in Jiangsu and Zhejiang Provinces, China.

3. Shanghai ELE has no subsidiary company, branch, office or factory within the United States (including the State of Rhode Island). Nor does Shanghai ELE own or lease any property, or have any bank or investment account, or hire any employee in the United States (including the State of Rhode Island).

4. Shanghai ELE has no registered agent for service of process in the State of Rhode Island or any other State of the United States.

5. Neither myself nor any other shareholder, director, officer or employee of Shanghai ELE has ever visited the State of Rhode Island.

6. Shanghai ELE has never directly offered for sale or sold any products to any distributor, retailer, or general consumer located in the State of Rhode Island.

7. Shanghai ELE has never advertised its products in the State of Rhode Island, nor has it used any advertising company or agency to advertise its products in the State of Rhode Island.

8. Shanghai ELE has no business telephone account or telephone number in the State of Rhode Island, and no toll free long distance business telephone account or telephone number in the United States.

9. Shanghai ELE has never sold any of its products to, or transacted any business with, any distributor, retailer, or general consumer located in the State of Rhode Island directly through Shanghai ELE's Internet website.

10. There are two types of Shanghai ELE's products that are currently sold in the United States markets, but neither of them was imported or sold in the United States directly by Shanghai ELE. One of these two types of products is a Ground Fault Circuit Interruption (GFCI) device which is unrelated to the instant action, and the other is a Leakage Current Detection Interruption (LCDI) device.

11. Shanghai ELE's GFCI products were sold to Chinese exporters in China. The Chinese exporters in turn sold the GFCI products to United States importers, which products finally were sold in the United States market through United States distributors and retailers.

12. Shanghai ELE has never directly offered for sale or sold any of Shanghai ELE's GFCI products to any distributor, retailer or general consumer located in the State of Rhode Island.

13. Shanghai ELE has never advertised its GFCI products in the State of Rhode Island, nor has it used any advertising company or agency to advertise its GFCI products in the State of Rhode Island.

14. Shanghai ELE has never sold any of its GFCI products to any distributor, retailer or general consumer located in the State of Rhode Island directly through Shanghai ELE's Internet website.

15. Shanghai ELE's LCDI devices were not sold as an independent final product on the general consumer market, but rather sold to air conditioner manufacturers located in China (including South Korea's LG Electronics Inc.'s manufacturing plant located in Tianjin, China). The manufacturers then assembled their air conditioner products with the LCDI device as a component part. The air conditioners were then exported to and sold in the United States as whole units by entities completely unrelated to Shanghai ELE.

16. I am informed and believe that the average price on the United States market of the air conditioner units with our LCDI device as a component part is about $100, wherein the value of the LCDI component is only about $4, less than 5% of the whole unit value.

17. Shanghai ELE has never directly offered for sale or sold any Shanghai ELE's LCDI products to any manufacturer, distributor, retailer, or general consumer located in the State of Rhode Island.

18. Shanghai ELE has never advertised its LCDI products in the State of Rhode Island, nor has it used any advertising company or agency to advertise its LCDI products in the State of Rhode Island.

19. Shanghai ELE has never sold any of its LCDI products to any manufacturer, distributor, retailer, or general consumer located in the State of Rhode Island directly through Shanghai ELE's Internet website.

20. While Shanghai ELE was aware that its products may be ultimately sold in the United States and obtained approval from Underwriters Laboratories (UL) in accordance

with the requirement by the Chinese exporters or manufacturers, it nonetheless had absolutely no control over the importation and sales of the products in the United States, let alone any control over where in the United States such products would be sold.

21. More particularly, Shanghai ELE has no knowledge or control over whether its products would be or indeed have been sold in the State of Rhode Island.

22. Shanghai ELE has made many innovations in its GFCI and LCDI products and has applied for and obtained several Chinese patents, and also has several corresponding United States patent and patent applications. However, none of Shanghai ELE's products was purposefully designed and made especially for sale or use in the State of Rhode Island.

23. In addition, Shanghai ELE's products were not only sold in the United States, but also in Japan, South Korea, Thailand, Russia, the European countries, the Middle East countries, Canada, Mexico, Australia, *etc.* (in addition to being sold in China), whereas all such transactions were carried out through independent third party intermediaries.

24. Forcing Shanghai ELE to defend itself in a court located in the State of Rhode Island will place a very heavy and unreasonable burden upon it. As stated above, Shanghai ELE has no facility or personnel located in the State of Rhode Island. Traveling from Shanghai, China to Providence, Rhode Island will take about 20 hours.

25. All documents and materials related to the design, invention, manufacturing and sales of Shanghai ELE's GFCI and LCDI products, including, but not limited to, design blueprints, machineries, raw materials, inventory, manufacturing and sales records, accounting records, *etc.*, are located in Shanghai ELE's headquarters in Shanghai, China or its manufacturing plants in Jiangsu and Zhejiang Provinces of China.

26. Shanghai ELE's knowledgeable personnel and staff, including, but not limited to, inventors, researchers and designers, engineers, technicians, raw material purchasers, inventory controllers, quality and control supervisors, manufacturing and sales staffs and

managers, accountants, corporate executives, *etc.*, all reside in Shanghai, China, or in Jiangsu or Zhejiang Provinces of China.

27. Due to the restrictions on Chinese citizens' traveling to the United States presently imposed by both the United States and Chinese governments, it will be very difficult for Shanghai ELE's witnesses to go to the United States to testify at the trial of this action.

28. On the other hand, it will not be very burdensome for the Plaintiff Tower Manufacturing Corporation (Tower) to litigate in China. I am informed and believe that Tower is transacting business in China in very substantial level and scale, and its LCDI products are also sold to air conditioner manufacturers in China for assembling into whole air conditioner units which are then shipped back and sold in the United States.

29. I am also informed and believe that Tower has contacted Chinese air conditioner manufacturers to try to have them stop purchasing LCDI products from Shanghai ELE but instead purchase Tower's LCDI products for assembling onto these manufacturer's air conditioner units.

30. I am further informed and believe that after instigating this lawsuit, Tower also contacted many Chinese air conditioner manufacturers and claimed that Shanghai ELE's LCDI product has infringed Tower's patent, in an effort to try to have them stop purchasing Shanghai ELE's LCDI products and instead purchase Tower's LCDI products. As a result, some Chinese air conditioner manufacturers have withheld their orders of Shanghai ELE's LCDI products.

31. I am informed and believe that since Tower has the largest (*i.e.*, approximately two-thirds) market share in the United States of all air conditioner units with LCDI protection, it knows full well who are the Chinese manufacturers and American importers, distributors and retailers of the air conditioner units that are assembled with Shanghai ELE's LCDI products, and has adequate capacity and resources to sue these entities for patent infringement.

COUNTY CLERK · COUNTY OF LOS ANGELES · CALIFORNIA

32. Shanghai ELE has never made, sold or used any LCDI products in the United States, and therefore did not infringe Tower's valid patent right. Nonetheless, Tower still chose to single out Shanghai ELE as the sole defendant and sued Shanghai ELE in Rhode Island, which is designed to exploit the difficulties of Shanghai ELE in order to obtain a favorable judgment without fully litigating the merits of the case, so that it can use it to force other manufacturers to do business only with Tower and therefore achieve its unlawful purpose of monopolizing the United States market of air conditioner units with LCDI protection.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on November , 2006.

Signature: Long Zhang

2006.11.16

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, identified on the Notice of Electronic filing (NEF) and paper copies will be sent via regular mail, postage prepaid to Thomas F. Holt, Esq., Larissa S. Bifano, Esq. and John J. Cotter, Esq., Kirkpatrick & Lockhart Nicholson Graham LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950 on this 21st day of November, 2006.

/s/ Jeffrey S. Brenner