UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>V.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | C.A. No. 06-170/S |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), Defendant moves for a protective order concerning Plaintiff's Rule 30(b)(6) Notice of Deposition dated December 14, 2006, for the reasons set forth in the attached Memorandum.

DEFENDANT
SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:

ALSCHULER GROSSMAN STEIN & KAHAN LLP
Tony D. Chen (Pro Hac Vice)
Email: tchen@agsk.com
Marshall B. Grossman (Pro Hac Vice)
William J. O'Brien (Pro Hac Vice)
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Dated: December 22, 2006

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, identified on the Notice of Electronic filing (NEF) and paper copies will be sent via regular mail, postage prepaid to Thomas F. Holt, Esq., Larissa S. Bifano, Esq. and John J. Cotter, Esq., Kirkpatrick & Lockhart Nicholson Graham LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950 on this 22nd day of December, 2006.

/s/ Jeffrey S. Brenner

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>V.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | C.A. No. 06-170/S |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

## I. INTRODUCTION

### A. The Underlying Facts and Procedural History Concerning This Lawsuit

As explained in Defendant Shanghai ELE Manufacturing Corporation's ("Shanghai ELE") Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction filed with this Court on November 21, 2006, Plaintiff Tower Manufacturing Corporation ("Tower Mfg."), a company headquartered in Rhode Island, alleges that Shanghai ELE's Leakage Current Detection & Interruption (LCDI) devices have infringed Tower Mfg.'s United States Patent No. 6,738,241 B1 ("the '241 Patent"), and chose to sue Shanghai ELE in Rhode Island. (*Complaint*, ¶¶ 6, 9 and 11.)

Shanghai ELE is a privately owned company headquartered in Shanghai, China, with its other manufacturing facilities located in Jiangsu and Zhejiang Provinces, China. (*Declaration of Long Zhang* (hereafter "*Zhang Decl.*"), ¶ 2.) The Zhang Decl. was filed with Shanghai's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction.

Shanghai ELE has no subsidiaries, branch, office or factory in Rhode Island or any other state in the United States. It does not own or lease any property, or have any bank or investment account in Rhode Island or any other state in the United States. It does not have any employees or registered agents for service of process in Rhode Island or any other state in the United States.

No shareholder, director, officer or employee of Shanghai ELE has ever visited Rhode Island. (*Zhang Decl.* ¶¶ 3-5.)

Shanghai ELE has never directly offered for sale or sold any products to any distributor, retailer, or general consumer located in Rhode Island. It has never advertised its products in Rhode Island or used any advertising company or agency to advertise its products in Rhode Island. It does not have a business telephone account or telephone number (including toll free long distance number) in Rhode Island or any other state in the United States. It has never sold any of its products to, or transacted any business with, any distributor, retailer, or general consumer located in Rhode Island directly through Shanghai ELE's Internet website. (*Zhang Decl.* ¶¶ 6-9.)

While currently there are two types of Shanghai ELE's products sold in the United States markets, neither of them was imported or sold in the United States directly by Shanghai ELE. One type of product is a Ground Fault Circuit Interruption (GFCI) device which is unrelated to the instant action, and the other type of product is the LCDI device. (*Zhang Decl.* ¶¶ 10-11.)

Shanghai ELE's GFCI products were sold to Chinese exporters in China. The Chinese exporters in turn sold the GFCI products to United States importers, which products finally were sold in the United States market through United States distributors and retailers. Shanghai ELE has never sold, offered for sale, or advertised any of Shanghai ELE's GFCI products either directly or through its Internet website to any distributor, retailer or general consumer located in Rhode Island. (*Zhang Decl.* ¶¶ 12-14.)

Shanghai ELE's LCDI devices were not sold as an independent final product on the general consumer market, but rather sold to air conditioner manufacturers located in China (including South Korea's LG Electronics Inc.'s manufacturing plant located in Tianjin, China). The manufacturers then assembled their air conditioner products with the LCDI device as a component part. The air conditioners were then exported to and sold in the United States as whole units by entities completely unrelated to Shanghai ELE. The average price on the United States market of the air conditioner units with Shanghai ELE's LCDI device as a component part

is about $100, wherein the value of the LCDI component is only about $4, less than 5% of the whole unit value. (*Zhang Decl.* ¶¶ 15-16.)

Shanghai ELE has never directly offered for sale or sold any Shanghai ELE's LCDI products to any manufacturer, distributor, retailer, or general consumer located in Rhode Island. Shanghai ELE has never advertised, or used any advertising company or agency to advertise, its LCDI products in Rhode Island. Nor has it ever sold directly through its Internet website any of its LCDI products to any manufacturer, distributor, retailer, or general consumer located in Rhode Island. (*Zhang Decl.* ¶¶ 17-19.)

Shanghai ELE was aware that its products may be ultimately sold in the United States and obtained approval from Underwriters Laboratories (UL) in accordance with the requirement by the Chinese exporters or manufacturers. However, it had absolutely no control over the importation and sale of the products in the United States. Moreover, it has no control over where in the United States its products would be sold. Particularly, Shanghai ELE has no knowledge or control over whether its products would be or indeed have been sold in Rhode Island. (*Zhang Decl.* ¶¶ 20-21.)

Shanghai ELE has made many innovations in its GFCI and LCDI products and has applied for and obtained several Chinese patents, and also has several corresponding United States patent and patent applications. However, none of Shanghai ELE's products was purposefully designed and made especially for sale or use in Rhode Island or any other state in the United States. In fact, Shanghai ELE's products are sold in the in the United States, as well as in China, Japan, South Korea, Thailand, Russia, the European countries, the Middle East countries, Canada, Mexico, Australia, *etc*. (*Zhang Decl.* ¶¶ 22-23.)

Forcing Shanghai ELE to defend itself in this Court will place a very heavy and unreasonable burden upon it. Shanghai ELE has no facility or personnel located in Rhode Island. Traveling from Shanghai, China to Providence, Rhode Island will take about 20 hours. (*Zhang Decl.* ¶ 24.)

All documents and materials related to the design, invention, manufacturing and sales of Shanghai ELE's GFCI and LCDI products, including, but not limited to, design blueprints, machineries, raw materials, inventory, manufacturing and sales records, accounting records, *etc.*, are located in Shanghai ELE's headquarters in Shanghai, China or its manufacturing plants in Jiangsu and Zhejiang Provinces of China. (*Zhang Decl.* ¶ 26.)

In addition, Shanghai ELE's knowledgeable personnel and staff, including, but not limited to, inventors, researchers and designers, engineers, technicians, raw material purchasers, inventory controllers, quality and control supervisors, manufacturing and sales staffs and managers, accountants, corporate executives, *etc.*, all reside in Shanghai, China, or in Jiangsu or Zhejiang Provinces of China. Due to the restrictions on Chinese citizens' traveling to the United States presently imposed by both the United States and Chinese governments, it will be very difficult for Shanghai ELE's witnesses to come to the United States to testify at the trial of this action. (*Zhang Decl.* ¶¶ 27-28.)

On the other hand, Tower Mfg. has presented itself as "a leading international manufacturer of wiring devices and electromechanical products with manufacturing in Shenzhen, China and Providence, Rhode Island with sales and purchasing offices in USA, Hong Kong and Taiwan." (*Declaration of Tony D. Chen* (hereafter "*Chen Decl.*"), ¶¶ 2-4, 6, Exhibit A.) The Chen Decl. was filed with Shanghai's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction.

It will not be very burdensome for Tower Mfg. to litigate in China. Tower Mfg. transacts business in China on a very substantial level and scale, and its LCDI products are also sold to air conditioner manufacturers in China for assembling into whole air conditioner units which are then shipped back and sold in the United States. (*Zhang Decl.* ¶ 29.) Ninety percent of Tower Mfg.'s manufacturing is done in its China facility. (*Chen Decl.*, ¶ 4, Exhibit A.)

Moreover, as the holder of the largest market share in the United States market of all air conditioner units with LCDI protection, Tower Mfg. also knows full well who are the Chinese manufacturers and American importers, distributors and retailers of the air conditioner units that

are assembled with Shanghai ELE's LCDI products, and has adequate capacity and resources to sue these entities for patent infringement in the United States. (*Zhang Decl.* ¶ 32.) Tower Mfg. is a member of several well known and powerful national trade associations, including the National Electrical Manufacturers Association (NEMA), National Fire Protection Association (NFPA), Association of Home Appliance Manufacturers (AHAM), *etc.* (*Chen Decl.*, ¶ 5, Exhibit A.)

### B. Facts Leading to the Filing of This Motion

On December 8, 2006, Shanghai ELE received Tower Mfg.'s First Set of Interrogatories and Requests for Production of Documents and Things which seeks information relating to Shanghai ELE's contacts in Rhode Island. Tower Mfg. has requested that Shanghai ELE furnish this information by December 22, 2006, and Shanghai ELE has responded to the discovery requests within the requested expedited timeframe.

On December 14, 2006, almost a week after Tower Mfg. propounded written discovery to Shanghai ELE, Tower Mfg. faxed a Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to Shanghai ELE for the person with the most knowledge as to Shanghai ELE's customer support center in America. A copy of the Notice of Deposition is attached as Exhibit A. As explained below, Tower Mfg.'s request for a deposition on this topic goes well beyond the scope of discovery allowed by the Federal Rules of Civil Procedure. Accordingly, Shanghai ELE has filed this Motion for a Protective Order to resolve this dispute.

## II. ARGUMENT

### A. Standard for Obtaining a Protective Order

A party moving for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure must set forth "particular" facts to establish "good cause" for the order. Anderson v. Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986). "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury.

Moore's Federal Practice, § 26.104[1], at 26-252 (3rd ed. 2005). What constitutes "good cause" generally depends on the type of protective order sought. Courts have recognized several general factors applicable to all protective orders including, the danger of abuse if a protective order is granted, the good faith of the various parties' positions, the adequacy of the protective measures provided by a protective order, and the availability of other means of proof. Id.

As explained below, the application of these factors evidences that Shanghai ELE has demonstrated "good cause" to obtain a protective order concerning the examination subject designated in the Rule 30(b)(6) deposition notice.

**B. The Discovery in Dispute Should Not be Allowed**

Rhode Island courts have announced a rule permitting limited jurisdictional fact discovery "when pertinent facts bearing on the issue of jurisdiction are in question and the relevant information remains in the exclusive control of the defendant." Smith v. Johns-Manville Corp., 489 A.2d 336, 340 (R.I. 1985) (citing Surpitski v. Hughes-Keenan Corp., 362 F.2d 254 (1st Cir. 1966)); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962, 964 (1st Cir. 1997) (a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense). See also MOORE'S FEDERAL PRACTICE ¶ 26.41, at 26-144 (3d ed. 2005) (If the court holds an evidentiary hearing to decide whether it should grant a motion to dismiss for lack of personal jurisdiction, insufficiency of process, or insufficiency of service, it has discretion to allow discovery on the factual issues pertinent to the motion). Here, Tower's request for a Rule 30(b)(6) deposition goes well beyond the scope of permissible discovery under Rhode Island caselaw and the Federal Rules of Civil Procedure.

The entitlement to jurisdictional discovery is not absolute, and Rhode Island courts have set forth certain boundaries in relation to the scope of inquiry permitted. For example, in a case similar to the instant case, Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997), the plaintiff argued that it should have been permitted to engage in jurisdictional discovery (in

the form of deposition taking) in response to defendant's motion to dismiss for lack of personal jurisdiction. Id. at 964. The Court of Appeals affirmed the District Court's decision to prohibit the discovery, noting that the rule permitting jurisdictional discovery has its limitations. The Court reasoned that a plaintiff is not necessarily entitled to take depositions, especially where it never attempted to learn of jurisdictional facts through interrogatories or demands for document production. Id.

Here, while Tower Mfg. may be entitled to a "modicum" of jurisdictional discovery in response to Shanghai ELE's motion to dismiss, it has already availed itself of that privilege by propounding Interrogatories and Requests for Production of Documents and Things. Tower Mfg.'s notice of a Rule 30(b)(6) deposition, at this juncture, is completely inappropriate for several reasons. First, Shanghai ELE does not have, own or operate a service or support center in the United States. Second, the tech support phone number on Shanghai ELE's website is a phone number in China. Third, for its GFCI products (not at issue in this case), if Shanghai ELE receives any inquires for service or support, it will refer them to the companies in the United States that sell Shanghai ELE's GFCI's. Fourth, all LCDI products (at issue in this case) were sold to other manufacturers for assembling as a component to air conditioner units of those manufacturers, therefore, Shanghai ELE has never received any inquiry from any customers in the United States about its LCDI's, because the LCDI's were not sold as a stand-alone product in the United States market. Fifth, Shanghai ELE did not sell any LCDI through its website, because the website merely reacts to provide company and product information and it does not take sales orders proactively. See Answer to Interrogatory no. 4 (attached at Exhibit B).

Moreover, Shanghai ELE attached the declaration of Mr. Long Zhang, CEO of Shanghai ELE, in support of its Motion to Dismiss which discussed, at length, Shanghai ELE's contacts with Rhode Island. Tower Mfg. should be limited to the affidavit as well as the information Shanghai ELE has provided in response to Tower Mfg.'s written discovery requests. This information provides Tower Mfg. with an ample basis from which to gauge Shanghai ELE's jurisdictional contacts. See Moore's Federal Practice, § 26.104[1], at 26-252 (3rd ed. 2005) (one

factor weighing in favor of granting a protective order is the availability of other means of proof); Smith v. Johns-Manville Corp., 489 A.2d 336, 339 (R.I. 1985) (holding that interrogatories may be used to discover facts upon which jurisdiction can be based). Consequently, Shanghai ELE's Motion for a Protective Order should be granted.

Shanghai ELE's Motion for a Protective Order should also be granted based on Tower Mfg.'s failure to demonstrate how it intends to support jurisdiction over Shanghai ELE through the Rule 30(b)(6) deposition. In addition to the general rules regarding jurisdictional discovery discussed above, the First Circuit has also held that a plaintiff must be diligent in preserving his rights to be entitled to jurisdictional discovery. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). This includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted. See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). Tower Mfg. has made no such showing in its Rule 30(b)(6) notice and therefore Shanghai ELE's Motion for a Protective Order should be granted. See United States v. Swiss American Bank, Ltd., 274 F.3d 610, 626, 637 (1st Cir. 2001) (finding plaintiff to be less than diligent, because only on appeal did it flesh out its description of the types of contacts it hoped to discover to defeat defendant's jurisdictional defense).

## III. CONCLUSION

For the reasons set forth above, Shanghai ELE's Motion for a Protective Order should be granted.

DEFENDANT
SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:

ALSCHULER GROSSMAN STEIN & KAHAN LLP
Tony D. Chen (Pro Hac Vice)
Email: tchen@agsk.com
Marshall B. Grossman (Pro Hac Vice)
William J. O'Brien (Pro Hac Vice)
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Dated: December 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, identified on the Notice of Electronic filing (NEF) and paper copies will be sent via regular mail, postage prepaid to Thomas F. Holt, Esq., Larissa S. Bifano, Esq. and John J. Cotter, Esq., Kirkpatrick & Lockhart Nicholson Graham LLP, State Street Financial Center, One Lincoln Street, Boston, MA 02111-2950 on this 22nd day of December, 2006.

/s/ Jeffrey S. Brenner