# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TOWER MANUFACTURING CORPORATION C.A. NO.06-170 S

Plaintiff

vs.

Providence, RI
JANUARY 22, 2007

SHANGHAI ELE

Defendant

BEFORE MAGISTRATE JUDGE DAVID L. MARTIN
(Defendant's Motion for a Protective Order)

APPEARANCES:

FOR THE PLAINTIFF:

BRUCE W. GLADSTONE, ESQ.
56 Exchange Terrace
Providence, RI 02903
331-5700

JOHN J. COTTER, ESQ
Kirkpatrick & Lockhart
Boston, Ma 02111
617-261-3175

FOR THE DEFENDANT:

TONY D. CHEN, ESQ.
ALSCHULER GROSSMAN LLP
1620 26TH St.
Suite 4000N
Santa Monica, CA 90404-4060
310-255-9025

LOCAL COUNSEL:

JEFFREY S. BRENNER, ESQ.
454-1000

JANUARY 22, 2007 - AFTERNOON SESSION

THE COURT: Good afternoon. This is the matter of Tower Manufacturing Corporation versus Shanghai Ele Manufacturing Corporation, defendant, Civil Action Number 06-170 S. This matter is before the Court on the plaintiff's motion for a protective order. That's document Number 22 in the clerk's file. The attorneys will identify themselves, please.

MR. COTTER: Your Honor, John Cotter. I'm actually for the plaintiff. It's defendant's motion today, by right. John Cotter from Kirkpatrick & Lockhart in Boston. With me is Larrisa Bifano, and Cameron --

MR. GLADSTONE: Cameron & Mittleman. Bruce Gladstone, your Honor.

THE COURT: Thank you, counsel.

MR. BRENNER. Jeffrey Brenner, local counsel. With me is Tony Chen who'll be arguing defendant's motion for a protective order.

THE COURT: All right. Mr. Chen.

MR. CHEN: Good afternoon, your Honor.

THE COURT: Good afternoon. All right, this is plaintiff's motion so I'll hear from the plaintiff.

MR. COTTER: Again, your Honor, it's actually the defendant's motion. It's just mistitled.

MR. CHEN: Your Honor, there was a typo in the

motion.

THE COURT: I'm sorry. You told me that and I failed to pick up on the hint, so thank you. Yes. Although the motion is mistitled, this is defendant's motion for a protective order. It's document Number 22. And, Mr. Chen, you're going to argue, correct?

MR. CHEN: Yes. Thank you. Again, my name is Tony Chen from Alschuler Grossman out of Los Angeles, California. I'm attorney for defendant Shanghai Ele Manufacturing Corporation in this action by Tower Manufacturing Corporation.

Now, your Honor, you may be aware, the underlying action for this motion is a patent infringement case filed by Tower Manufacturing against my client Shanghai Ele. The patent infringement action was focused -- is focused on a patent owned by Tower, and the subject product that Tower alleged Shanghai Ele is selling in the United States is a leakage current detection interrupter product, or shorthand as LCDI. The product is a component part used for detecting using electrical appliances such as stand-alone window air conditioner unit used for detecting the leakage in electric circuit, and when upon the detection of leakage in the circuit will automatically shut off the power to the appliances to ensure the safety of the uses of the appliances.

Now Tower contends that it owns a patent covering that kind of product and alleging that Shanghai Ele is selling the product in the United States, particularly in the state of Rhode Island. And we filed a motion to dismiss on the ground that there is no personal jurisdiction over Shanghai Ele for this action.

Now, in the motion we submitted a declaration of the chief executive officer of Shanghai Ele, and we outlined the reasons. Mainly, there's no physical presence whatsoever for Shanghai Ele in the State of Rhode Island, and for that matter, in the United States. We don't -- the Shanghai Ele does not have any offices or manufacturing facilities, bank account or branches, or anything. And more particularly, Shanghai Ele also does not sell any -- the alleging LCDI product in the State of Rhode Island.

Now plaintiff contended that it has found Shanghai Ele's LCDI product in the air conditioner units sold in the State of Rhode Island. They particularly mention a place called Benny's which I understand is a local store kind of selling off the market or secondhand market stuff. But as far as Shanghai Ele is concerned, all it's LCDI products manufactured as a component part were sold in China to the manufacturers in China who manufactures air conditioner units for companies like LG, which is particularly a South Korean company having facilities in China. And Shanghai

Ele's involvement with the sales of the LCDI component part stops there. It sold its product to the air conditioner manufacturers in China. And those Chinese air conditioner manufacturers manufacture the air conditioner units in China. And beyond that, how the product end up, the whole air conditioner unit end up in Benny's in Rhode Island, we have no idea. It could go through a multiple steps or layers of the transportation.

For example, the air conditioner manufacturers in China may have sold it through the exporters in China to importers of the United States and to distributors, and God knows how levels of distributors end up to retailers and maybe end up finally to Benny's, and Benny may even buys it as a secondhand or off the market thing from some other retailers. And for all these event, or chance of events, all the transactions beyond the Chinese manufacturer, air conditioner manufacturers, Shanghai Ele has no control and has no knowledge of. So that's the basis for our motion to dismiss for lack of personal jurisdiction.

I might add, another factor is the overall air conditioner manufacturer, our understanding is probably sold on the market in the range of say $90, $100 per piece, depending on the size or the volume, the capacity, the power. But say it's a hundred dollars, now the component part of the LCDI device which manufacturing by Shanghai Ele

is only a comment for in value, maybe $4, $5 range. So, you know, about 5% of the value of the whole unit. And Shanghai Ele has never contacted any Rhode Island customers or companies, or retailer, distributor whatsoever, never advertised in the State of Rhode Island, and never send any solicitations or promotional materials to Rhode Island customers.

Now, one of the reason plaintiff has contended or served Shanghai Ele with a 30(b)(6) deposition is that it found a page on Shanghai Ele's web site. The page has attached by plaintiff as Exhibit 8 in plaintiff's opposition to Shanghai Ele's motion for this protective order, and page indicated that, I quote, "Shanghai Ele have customers support center in America providing global service", and plaintiff contends that Shanghai Ele has a customer support center in the United States and wants to depose somebody from that so-called customer support center.

Now we filed this motion for a court, for a protective order from the court because Shanghai Ele does not have any customer service or support center in the United States.

And to go one step back, Shanghai Ele sells in addition to the LCDI product, which is the subject matter for this litigation, in the past years, so another type of product called GFCI, which is a ground fog circuit interrupter, which is like a wall socket on the wall, which has a

electrical device stalking the power supply to the wall socket in the event when there's a ground fog, when there's a leakage pitch in the ground terminal and neutral, or the power, the terminal of the wall socket. Now that product is not subject to this litigation, and plaintiff does not contend that that product infringes its patent. So it's totally a unrelated product. In the past year Shanghai Ele had sold those products through indirect channels. In other words, it sold that product to Chinese exporters, and Chinese exporters sell U.S. importers or distributors in the United States, and through that transaction then the product finally sold in United States.

Now Shanghai Ele has a line on its web site, and for the purpose that if it receives, for example, any complaint from the customer on the GFCI product, it could refer that request, or surveys of complaint, to its subsequent product - customers, and through that to have whoever sells the GFCI product in the United States to provide that kind of service. It does not maintain its own service in the United States. And the telephone number on that web page is a local Shanghai telephone number. It's not like a 1-800 number here, people can call here, call free in the United States.

So, we don't see that web page itself shows the Shanghai Ele has a physical presence here. And we explain

that in the written discovery response we served to the plaintiffs.

Now, in addition to the deposition notice, plaintiff also served Shanghai Ele with interrogatories and request for production of documents in connection with our motion to dismiss, and in our response to plaintiff's interrogatories, and which also is attached as one of the exhibits, I believe it's Exhibit I, Exhibit H and I, to plaintiff's opposition. Particularly in our response to interrogatory number 5 and number 6, we provided to plaintiff the fact that Shanghai Ele does not maintain a technical or customer support center in the United States. We explained the circumstances of Shanghai Ele has that line in its web site simply to make a appearance of it provide a global service because Shanghai Ele does have its product, but GFCI product sold not only in the United States, China, but other countries in Southeast Asia, you know, even in Africa and Japan.

And in this particular motion, what we ask the Court is to prevent this deposition from going forward. Plaintiff in its opposition has complained that we did not meet and confer with plaintiff's counsel before we filed this particular motion for a protective order. Your Honor, prior to Shanghai Ele even receiving the notice of deposition, receiving the written interrogatories and request for production, have several discussions with plaintiff's

counsel, Ms. Bifano, who is present here in the courthouse, about the topics and extent, or the scopes, of the limited discovery that Tower was contending at the time for the jurisdictional issues. Particularly, we exchanged emails with regard to the scopes of the topics that we would agree upon in those discovery, and we have always maintained that Shanghai Ele will cooperate with plaintiff in discovery. Any contact that Shanghai Ele might have with anybody in Rhode Island in terms of direct or indirect sales or customers or advertisement or anything, but we do not agree that the discovery should go beyond -- it's a fishing expedition, into anything that Shanghai Ele did within or without outside of United States, or inside or outside the State of Rhode Island. And particularly in my conversation with Ms. Bifano even before they served the notice of deposition, of the 30(b)(6) deposition, we talking about Shanghai Ele does not have any presence here, so it has no personnel here in the United States. And in the case, if plaintiff really desired to have a deposition, it might have to be conducted back in Shanghai, in China, and we particularly touch it upon the subject. And also in the declaration we submitted in support of our motion to dismiss, Mr. Zhang, the CEO of Shanghai Ele, outlined particular difficulties in attending to a court proceeding or deposition of that kind of nature here in the United

States because there is no freedom of traveling or getting a visa. There is no guarantee that anybody wants to travel to United States would necessarily obtain a visa. The people in Shanghai Ele in the past has tried to obtain visa into United States, trying to expend, to see, visit United States, and was unsuccessful, and there is no guarantee that even if we wanted to arrange should have somebody from Shanghai Ele traveling from Shanghai, China into the United States they would necessarily obtain a visa from the U.S. Embassy there, and I explained this to Ms. Bifano. That's why I suggested in the future really you want to do a deposition it probably has to be conducted in Shanghai, China.

And with all these backgrounds, all of a sudden we got served with the interrogatories from Tower with the request for production from Tower, and a few days later with the 30(b)(6) deposition notice. And I have sent written correspondences to Ms. Bifano complaining about both the scope of the written discovery and also the 30(b)(6) deposition notice.

Now, there is the cross of the correspondences. Our motion for this protective order was filed on December 22nd, shortly before the Christmas. We just want to have this logged in before the Christmas season, and I did send a letter to Ms. Bifano, two correspondences, one briefly

telling her that we object to this deposition notice, the other explaining it. The second letter went out one day before we filed this deposition notice. I have to say that I wasn't sure that whether that second letter on December 21st was necessarily emailed. Usually we send out by email, and the fax and mail, and plaintiff complained that they didn't receive that December 21st letter before we filed the motion on December 22nd, after we filed the motion, that maybe -- I don't have a record indicating that December 21st letter went out by fax because I wasn't at office in that day and I directed my secretary to -- was helping me to send out a letter. It may just went out by mail. But in any event, there is no lack of good faith on Shanghai Ele's part in cooperating with plaintiff in this limited discovery with regard to the jurisdiction issue, and there is no good faith on our part in constantly talking and conferring with plaintiff counsel with regard to our concern, our objections, to what we believe is to be the scope too broad and beyond what they're entitled in this jurisdictional discovery.

And with regard to this particular motion, I just add, as I mentioned earlier, (1) Shanghai Ele's so-called service center was really just a referral if they get anything on totally unrelated GFCI products to somebody that Donna Chin selling this product in the United States, (inaudible).

Shanghai Ele does not provide service by its own.

With regard to this particular product, the LCDI product which is the subject of this litigation, Shanghai Ele has never received anything, inquiry or telephone calls, or inquiry from the west, from anybody in the United States with regard to the LCDI. So there is nothing even in a referral in that nature. And even if it received something, it will have nothing to refer to because it sold that as a component part to a Chinese manufacturer. And what happened after that, Shanghai Ele had no control, no knowledge.

And also with regard to the web site itself, it's a passive web site. It's not a web site a customer can log on and take order, or requesting a shipment of a product or getting things like that. It's a passive web site providing information, and we believe that that kind of a passive web site itself does not establish a jurisdiction here in the United States, particularly in the State of Rhode Island. And Shanghai Ele has never taken any order from anyone through its web site. All it sells, it sold to people in China. With regard to the GFCI, it sold to Chinese exporters. With regard to the LCDI product, which is subject of this litigation, it was sold to manufacturers in China.

And one last thing I would like to add is this, now as I indicated to Ms. Bifano in our earlier conversations,

given the practical difficulties for people, for Shanghai Ele's people coming to the United States, if plaintiff really desire to learn some information through the way of deposition, which we believe is totally unnecessary, that it has to have the deposition conducted in China because we just can't have people coming over here, you know. We don't have a practical -- I can't dictate that they have -- the U.S. Embassy will have to give them a travel visa.

And last point is, your Honor, if you really read our response to the recent interrogatories and to the request for production of documents, it set out perfectly clear as to what Shanghai Ele did and not to do in the State of Rhode Island, all they did with regard to the LCDI product. There's nothing more unclear to that. It's totally unnecessary, given our response in the interrogatories, to the interrogatories, to the request for document production, that to conduct additional 30(b)(6) deposition here in the United States. There is no service center. Don't have any personnel to produce for the deposition. And plaintiff alluded to have third-party deposition under Rule 45. We can't compare anybody. We don't owe anybody to produce, either. And so I don't think that exercise will be any help to plaintiff, and they cannot get anything more than going through the normal recent production that we have provided answer to. Thank you, your Honor.

THE COURT: Mr. Chen, you indicated in your argument that it would be extremely difficult, if not impossible, for your clients in China to leave that country for purposes of attending a Rule 30(b)(6) deposition. I understood you to make that statement, is that correct?

MR. CHEN: Yes, your Honor.

THE COURT: Is video-conferencing, for purposes of a deposition, possible?

MR. CHEN: Your Honor, I suggested -- actually, this is one of topic I talked with Ms. Bifano that it might be, might be possible. I mean, I certainly think it could be done but it involves having a video-conferencing facility in China, and Shanghai Ele factory itself certainly does not have the facility. I have known in my experience that other law firms with China office, or China branches, have the video-conference facility, conducted meetings that way. I'm not sure whether deposition has been conducted that way. It involves, your Honor, as you know, court certified court reporters to put it down, and I don't know the Chinese authorities whether somebody being present there to facilitate a deposition like that. I personally have not conducted that but I think, your Honor, that's a good possibility that we could explore.

THE COURT: All right. Thank you, Mr. Chen.

MR. CHEN: Thank you, your Honor.

MR. COTTER: Good afternoon, Judge Martin. I'm John Cotter. Nice to see you again.

On the point of the logistics of a deposition, at least for facilities, we have such facilities in our offices in China. I know it's a good distance but in Beijing and Hong Kong we have those facilities, we could use them.

THE COURT: How far is that from where the defendant is located?

MR. COTTER: I'm not sure.

THE COURT: Mr. Chen, do you have any idea?

MR. CHEN: Your Honor, Shanghai is probably in the middle between Beijing and Hong Kong. Probably 2-hour flight either way.

THE COURT: All right, thank you.

MR. COTTER: All right. Your Honor, Mr. Chen spent a significant amount of time talking about the motion to dismiss, and many of his points are interesting, but I think the real focus here is whether or not this 30(b)(6) deposition should go forward on Shanghai Ele's service center. That's all we asked for. That's what we're seeking. And we had been told, as Mr. Chen said, that there were no contacts with the United States, in so many different ways, by Shanghai Ele. Then we see the web site and it says they have a customer service center in America. Then we are, you know, working on the web site further. You

see the names of -- here are the people listed as customers of Shanghai Ele, Haier, H-A-I-E-R, which is, as I understand it, a U.S. manufacturer; Fedders, which is certainly a U.S. manufacturer, and we even have some information that we're seeking to prove that a Shanghai Ele representative met with Fedders in the United States about LCDI product sales. Another one listed is GE on Shanghai Ele's web site, along with Home Depot, which has obviously U.S. operations.

Further to that point, this LCDI is a product that has primary use in the United States. That is because it's a -- and here's an example of one, the LCDI is actually inside the plughead along with a wrapping that goes around the cord, and then the cord at this end where you see these three wires attaches to the air conditioner, and the circuitry in here is what shuts down the power if there's a leak across the lines inside the cord.

In any case, the products that are sold by Shanghai Ele, many of them may be sold to Chinese air conditioner manufacturers or Korean manufacturers. That may well be true.

It's also true, as we understand it, those air conditioners with the LCDI's on them, have use, if not solely, certainly primarily in the United States. That is because adding this circuitry and the extra copper wrapping, or whatever kind of metallic wrapping is put around the line

in neutral cords in the cord, adds additional cost to the product. Just 5% in the words of Mr. Chen. Well, just 5% on a unit that's being sold in Home Depot is substantial. And the requirement for an LCDI circuit, or something like it, is set out by UL. Those are United States standards. Those are not standards that apply in China. Those are not standards that apply in Korea. Those are standards that apply in the United States.

Now there's some movement toward Canada having a similar requirement. I'm not aware if that's in play yet. It certainly wasn't in play at the time that Tower Manufacturing came across this Ele product. It was not in play at the time that Benny's, which is not, as I understand it, a secondhand seller of air conditioners. It is a local retailer of brand new equipment that buys directly from air conditioner manufacturers. So these products are made specifically for the United States market, and I don't think Shanghai Ele can deny that.

We've heard several times in discussions with Mr. Chen, in emails from Mr. Chen, that there are no contacts. We heard it here in the argument today. But when we go and look at the web site we see different information. When we talk to people on the street we hear different information. And that is why we are seeking discovery here to see what is, in fact, true. If what Mr. Chen says is all true, then

there are no direct contacts with Rhode Island. We'll still seek to prove that it's appropriate to have this litigation go forward here in Rhode Island because of the fact that the products are directed to this market even if they are infringing in this market, even if they are only sold outside of the country, but we do not concede that point that they are only sold outside of the country.

As a matter of fact, with respect to sales that have made it to this country, we have evidence that there are over 4700 units with what we believe to be infringing plugs all made by Shanghai Ele sold by Benny's alone in this state, and we also have evidence of sales through Lowe's, that we actually have purchased one through Lowe's in this state, with a Shanghai Ele infringing plug on it, and we have evidence that Home Depot has been selling in this state, too.

As far as the actual motion for a protective order, it's Shanghai Ele's burden to show that this discovery should not be taken, and I think that it's relevant information whether there is or is not a service center in the United States and what, in fact, that service center does no matter where it's located is relevant to the issue of contacts with the United States and with Rhode Island. They need to show good cause for that. It's broad in terms of what is relevant and what is not. In this case, I think

there is no doubt that the discovery will be pertinent to the issue, and again, it may prove what Mr. Chen says, it may prove what the web site says, it may prove something else, we're entitled to find that out.

As we said in our brief, it's not a fishing expedition. We have targeted information that we are seeking and that's all we're seeking. We did not ask Mr. Chen, at this point, anyway, for a deposition for all potential 30(b)(6) topics that we could ask for. We asked for one particular one and that's what we're seeking to get.

As far as the interrogatories and document requests that we served, we have asked for information about this. Again, we have received information from Mr. Chen's client that there are no contacts with the U.S., but we're not so sure that it's as simple as that.

In addition, there are contacts with Rhode Island in terms of the service center that may relate, potentially that may relate to GFCI's, or potentially any other products that Shanghai Ele sells, which could go to general jurisdiction in this state.

So I guess we're left with the question, do we have to believe what Shanghai Ele says now or do we believe what it said on its web site about its service center and its contacts with the state. And I request, your Honor, that we have the right to take that deposition perhaps by the

mechanism your Honor suggests, and find out what the truth is, and let a witness testify under oath about that.

THE COURT: With regard to your identification of the person that you're asking the defendant to produce, you're asking for officer, director, employee, managing agent, or other representative to testify as to full extent of Shanghai Ele's knowledge with respect to the examination subject listed on Schedule A, and that topic is Shanghai Ele manufacturing corporation's customer support center in America as claimed on Shanghai Ele's web site. Mr. Chen has represented, and the defendant has stated in the answers to interrogatories, specifically the answer to interrogatory number 4, that Shanghai Ele does not have, own or operate any service or support center in Rhode Island, or any other states of the United States. When Mr. Chen perhaps asked the question, how do we designate someone to testify about something which we say doesn't exist? You want someone to testify regarding our service support center in the United States, and we don't have a service support center. I understand there is a contrary statement on the web site but there's also subsequent answer to interrogatory saying we don't have such a support center. Are you asking for a person knowledgeable about the information that went into the web site? How does Mr. Chen, how does his client, determine who to designate when they have stated, his client

has stated in answers to interrogatories, that "we don't have a service support center in the United States."

MR. COTTER: Your Honor, that's a good question, and I'm not sure I know the answer. All I know is that Shanghai Ele has claimed it has this customer support center in America. The person we want to testify is the person who can testify about that, whether that exists, whether it doesn't exist, what else exists that they meant by those terms. Maybe it's completely false and they'll testify that, no, the web site is completely false. I don't know. Maybe they'll testify that there's a service center in some other location in the Far East or elsewhere that supports the United States. Okay. I'll want to hear about that, and what support it's provided to the United States, if any. I'm interested, and I think it's a legitimate interest, in finding out what exactly the support center has done, or not done, and what it is or what it isn't. Right now they say "We don't have one in the United States." Unfortunately, I don't think that's good enough. I think we need to know what support's been provided and for what purposes it's been provided with respect to United States products. And there is no doubt that Shanghai Ele, as Mr. Chen admitted, has had GFCI products in this country. And as I've showed you, your Honor, we believe we have very strong evidence that it's got LCDI products in America. I'm entitled to know what kind of

support has been provided for either in terms of whatever type of personal jurisdiction we're able to prove.

THE COURT: Anything else you want to add, Mr. Cotter?

MR. COTTER: No, not unless you have questions, your Honor.

THE COURT: All right, thank you. Mr. Cotter, did I understand you correctly that your law firm has an office in Beijing?

MR. COTTER: In Beijing and in Hong Kong. Taipei, also, if that were closer, but I think there are probably political issues even if it is closer.

MS. BIFANO: Your Honor, we've also contacted a law firm in Shanghai and they said that they would always help us. (Inaudible)

MR. CHEN: Your Honor, may I address a few points mentioned by Mr. Cotter?

THE COURT: Briefly, Mr. Chen.

MR. CHEN: Yes. Your Honor, with regard to having the product that may be primarily sold for United States market, Shanghai Ele provided a component with air conditioner manufacturer as their customer. They do what a customer asks. In this competitive world, you have to stay in business to do what your customer asks you to do. So if the customer says you have to do this to satisfy this

specification, you do that. You don't have any other choice. You don't want to lose a customer.

And with regard to -- plaintiff said they have additional evidence that the product is sold in Lowe's, in Home Depot, in others. I may be incorrect to say Benny's is a secondhand place, but it may be a place selling outdated product, maybe like last year's model. Plaintiff has so far not produced anything to show that the product is found in Home Depot, in Lowe's, in others. If plaintiff really wants to find out where those products came from, they can easily have discovery on Home Depot, on Lowe's, to find out who supplied them with air conditioners. And that embodying the so-called infringing product. And plaintiff has not done that, either. I think consider all these other troubles, plaintiff -- we will have to go through with this deposition, that's more expeditious than the alternative way of doing it, more efficient way.

And also, with regard to the -- your Honor identified their question -- I mean their topics served with the deposition notice is for "Shanghai Ele's customer support center in America as claimed shanghai Ele's web site," but Mr. Cotter just gave you a whole lot more than what they want to ask, and I afraid that there may be another issue if we conduct a video deposition and I'm sitting in China with my client, they're sitting here, you know, we get into

argument as to proper scope of the discovery, of the deposition. If we tell them, as we told them in our answer to the interrogatory, no, we don't have a U.S. customer support center as stated on the web page, it might be a mistake or whatever, and they're not satisfied, they're asking us whether you have this and whether you have that, if we were selling to a customer with some secret channels, and we can get into endless dispute and come back here, have to halt the deposition, come back here to argue about proper scope. Your Honor, I just believe that plaintiff has much better other ways and we have provided plenty answer in our written discovery. Thank you, your Honor.

THE COURT: With regard to the latter point made by Mr. Chen, the Court does have concerns in that area that Mr. Cotter, when I asked him about what it was, or who the defendant was to designate to respond to the 30(b)(6) notice given the information that has subsequently been provided by the defendant, Mr. Cotter seemed to expand beyond the topic listed in Schedule A when you made reference, Mr. Cotter, to you wanted to know how much service support has been provided to various customers, and from the Court's standpoint, if it is as the defendant is representing, that they do not have a customer support center in America and that, in fact, what happens if there's a request for customer support that they simply refer the person seeking

that support back to one of their customers in the United States, or somebody who is selling it in the United States, it does not seem to the Court obvious that the defendant in China is going to have the information you're seeking.

MR. COTTER: I understand that, your Honor. If that's the answer of Shanghai Ele, that is all requests for support in the United States go to, let's say, General Electric or Haier, or whoever, that's one thing. If they say all requests go to our contract or other affiliate that does support, I'd like to discover into that whatever Shanghai Ele knows about it, just as whatever Shanghai Ele knows about, let's say, the referrals to GE.

THE COURT: All right. I have read the memorandum and reviewed the cases that have been cited, and the Court is satisfied that there has been a sufficient showing by the plaintiff to authorize a limited 30(b)(6) deposition. I reach that conclusion based on the fact that the defendant's web site has the statement "have customer support center in America providing global service." I am aware both from Mr. Chen's argument this afternoon, and also from the defendant's response to the plaintiff's interrogatories, specifically the answer to number 4, interrogatory number 4, that the defendant, in effect, says the statement on the web site is not accurate. The statement on the web site, which appears to state that

there's a customer support center of the defendant's in the United States, the defendant says it's not accurate. And I might observe just as a parenthetical here that as I look at the entire web site and the wording on it, it appears to the Court that the person who drafted that wording that English is probably not their primary language. But putting that aside, the statement does appear. And I'm persuaded by the plaintiff's argument that the plaintiff should have at least a limited opportunity to glean additional information about how that statement came to be on the web site, you know, what does it mean. And it may mean exactly what the defendant through its answer to interrogatories has indicated, and as counsel for the defendant has set forth, but I'm satisfied that the plaintiff's entitled to that limited opportunity. I do stress it's limited. The Court has concern what

Mr. Chen has concerns about that if the Court authorizes this deposition the plaintiff may be asking the person that is produced by the defendant to produce other information that's not going to be available to them, and so I'm granting the motion limited to the topic identified in Schedule A. And the defendant's response may well be what's already been presented, and the additional information that the plaintiff seeks, or Mr. Cotter indicated he may be seeking as to how many inquiries were made to the service

support center regarding, and what was done with each inquiry, all that may not be available or known to the person who the defendant designates. Although, Mr. Chen, I would state to you the defendant should try to identify the person who is going to be the most knowledgeable regarding this topic. You can indicate to your client that the Court finds at the statement that appears in the web site is that your client says on its web site, and I use the present tense because I happened to look at it just before I came on the bench, that your client has a customer support center in America, and you indicate that your client says that's not the case. The Court expects the defendant will designate someone who is going to be able to respond, to explain how is it that you state on the web site you have a customer support center and yet you state in your answers to interrogatories that you do not have a customer support center. You understand, Mr. Chen?

MR. CHEN: I understand that, your Honor.

THE COURT: Now, the Court is very conscious of the fact that there are great geographical distances involved in this case and that it could be a significant hardship, and well may be an impossibility to have the defendant appear anywhere in the United States. And as my comments to counsel indicated, I'm going to indicate the motion is being granted subject to it being able to be

conducted by video-conferencing so that the defendant does not have to leave China. [And I will further indicate that an effort should be made to see if it can be conducted as close to the city where the defendant is located as is feasible in terms of the requirements of video-conferencing and the requirements for a deposition]

Also, consideration must be given to the time this deposition is going to be conducted. I suspect that there's probably a 12-hour time difference between us and the people in China, and the Court does not want the defendants having to be deposed at 4 o'clock in the morning, or 2 o'clock in the morning. I'll leave it to counsel to work out what is a convenient time. It occurred to me that assuming I'm correct in the 12-hour assumption difference, that if the deposition started at 7 a.m. our time, that would be 7 p.m. their time. I really don't think this deposition is going to take very long at all, but if it went 2-hours would get us to 9 p.m. The Court does not want the defendants being deposed late in the night. It also doesn't want counsel to have to be up at 3 a.m. So I'll leave it to counsel to work out the time. But I'm indicating that the Court is aware of the problems with the time difference, and that counsel are instructed to make sure it's reasonably convenient for both sides, both those who are doing the deposition and those who are being deposed.

All right. The Court is granting -- well, I'm denying the defendant's motion for a protective order. I'm authorizing the plaintiff Tower Manufacturing to take the requested Rule 30(b)(6) deposition on the topic identified in Schedule A, that topic: [On the condition that the deposition be conducted via video-conferencing at a mutually convenient time, and at a location which is as close as possible to the city where the defendant is located, consistent with the requirements for the video-conferencing, and for the conduct of a valid deposition.]

Mr. Cotter, is my ruling clear to you?

MR. COTTER: Yes, your Honor.

THE COURT: Mr. Chen, is it clear to you?

MR. CHEN: Yes, your Honor, it is. Your Honor, there's 16-hours difference between here and China -- not between here, between Los Angeles time, the particular standard time in China, so there will be, let's see -- I got it backwards, 13 or --

(Inaudible)

MR. CHEN: 13 here. Right. So there's only a few hours that both sides will be in their normal business operating hours. Your Honor, would you consider limiting the deposition to like say 3 to 4 hours? I think that will be plenty of time for the plaintiff to ask the questions regarding to your Honor designating Schedule A.

MR. COTTER: I'm fine with that, your Honor. Just the one caveat is translation will slow it down but we're looking at this with the English language translation, you know, an hour and a half. So, you know, double it plus --

THE COURT: Three hours? Mr. Chen, I'll put a maximum of 3-hours on it.

MR. CHEN: Thank you, your Honor. And, your Honor, just one deposition only?

THE COURT: At this point, I don't see why we'd have more than one. Mr. Cotter?

MR. CHEN: Thank you, your Honor.

MR. COTTER: If Mr. Chen has more than one person to somehow handle let's say one-half of the subject matter and the other half, whatever those halves might be, there might be more than one person, but as long as there's at least somebody to talk about that subject matter, one is enough.

THE COURT: All right. Mr. Cotter, I'm going to direct that you can prepare the order denying the motion for protective order and granting the plaintiff the authorization to conduct this deposition in accordance with the strictures that I just laid out, and the added condition that it's not to exceed 3-hours in length.

MR. COTTER: Thank you, your Honor. And I'll

confer with Mr. Chen on the form of that before we submit it.

THE COURT: Anything further before I step down?

MR. CHEN: No, your Honor. Thank you.

THE COURT: The Court will stand in recess.

(Recess)

C E R T I F I C A T I O N

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Joseph A. Fontes

JOSEPH A. FONTES, COURT REPORTER

January 29, 2007

DATE