UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TOWER MANUFACTURING CORPORATION,
Plaintiff,
v.
SHANGHAI ELE MANUFACTURING CORPORATION,
Defendant.

C.A. No. 06-170/S

# DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendant hereby objects to Plaintiff's Motion for Sanctions for the reasons set forth in the attached Memorandum.

Defendant,
SHANGHAI ELE MANUFACTURING CORPORATION,
By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
Tony D. Chen (Pro Hac Vice)
Email: tony.chen@bingham.com
Bingham McCutchen LLP
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Victor H. Polk, Jr. (Pro Hac Vice Pending)
Lawrence T. Stanley, Jr. (Pro Hac Vice Pending)
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

Dated: June 25, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, John J. Cotter, Esq., at jcotter@klgates.com, and Larissa S. Bifano, Esq., at lbifano@klgates.com, identified on the Notice of Electronic filing (NEF), on this 25th day of June, 2007.

/s/ Jeffrey S. Brenner

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>v.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | CIVIL ACTION<br>NO. 06-00170-S-DLM |

**MEMORANDUM OF LAW IN RESPONSE**
**TO TOWER'S MOTION FOR SANCTIONS**

In a transparent effort to have this Court make factual findings which are not supported by the record and would be inconsistent with the established facts, plaintiff Tower Manufacturing Corporation ("Tower") has filed a misleading and inaccurate diatribe styled as a Motion for Sanctions. Whether motivated by an honest frustration with the discovery process in this case or a cynical attempt to manufacture unsupportable factual findings to aid its jurisdictional assertions, there is no justification for the kind of invective attack contained in Tower's motion. While certainly hard fought, an honest and fair review of what has occurred here shows no basis in law or fact for sanctions.

Reduced to their essentials, Tower complains about three broad categories of discovery-related conduct: (1) defendant Shanghai ELE Manufacturing Corporation's ("Shanghai ELE") conduct relating to the deposition of Shanghai ELE's 30(b)(6) witness; (2) Shanghai ELE's responses to Tower's First Set of Interrogatories and First Request for Production of Documents; and (3) Shanghai ELE's "involvement" in third-party discovery. As discussed herein, Shanghai ELE's conduct has been entirely proper and in good faith. Any allegations that Shanghai ELE is "stonewalling" discovery or "ignoring" the Court's Orders are completely unfounded.

Tower would have the Court believe that Shanghai ELE is obstructing discovery. To the contrary, Shanghai ELE agreed to jurisdictional discovery when it could have objected to it at the onset. Since Shanghai ELE filed its Motion to Dismiss for lack of jurisdiction on November 21, 2006, Tower has propounded multiple written discovery demands and taken a 30(b)(6) deposition. Shanghai ELE has cooperated in good faith in the process by responding to Tower's extensive rewritten discovery demands with initial and supplemental responses, and also has gone through the trouble of obtaining a travel visa to Hong Kong, a foreign territory for Shanghai ELE, and traveling to Hong Kong for the deposition.

There has been no lack of good faith on Shanghai ELE's part in cooperating with Tower in the limited discovery permitted with regard to the jurisdiction issue. For the reasons discussed herein, Tower's Motion for Sanctions should be denied.

## PROCEDURAL BACKGROUND

On April 11, 2006, Tower filed a Complaint against Shanghai ELE alleging that Shanghai ELE has been and is directly infringing, actively inducing infringement, and/or contributorily infringing U.S. Patent No. 6,738, 241 B1 (the "'241 Patent") by making, having made, used, importing, offering to sell, and/or selling in the United States directly or indirectly leakage current detection interrupters ("LCDIs") allegedly covered by the claims of the '241 Patent.

On November 21, 2006, Shanghai ELE filed a Motion to Dismiss Tower's Complaint for lack of personal jurisdiction. As discussed at length in Shanghai ELE's Memorandum in Support of the Motion to Dismiss, Shanghai ELE's minimal contacts with the State of Rhode Island are insufficient to support personal jurisdiction over Shanghai ELE.

In light of the Rhode Island courts' practice of permitting limited jurisdictional discovery where a motion to dismiss on jurisdictional grounds is pending, such as at issue in this action, Shanghai ELE agreed to stay the time in which Tower was required to respond to Shanghai ELE's Motion to Dismiss so that Tower could conduct such limited discovery.

On December 8, 2006, Shanghai ELE received Tower's First Set of Interrogatories and Requests for Production of Documents. The discovery requests sought information relating to Shanghai ELE's contacts in Rhode Island. Tower unilaterally requested that Shanghai ELE respond in an expedited fashion by furnishing responses by December 22, 2006. Shanghai ELE responded to the discovery requests within the requested expedited timeframe.

On December 14, 2006, almost a week after Tower propounded written discovery to Shanghai ELE, Tower faxed a Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. See Ex. A attached hereto. The Notice of Deposition was limited to a single topic, namely Shanghai ELE's customer support center in America, as indicated on Shanghai ELE's website. The Notice of Deposition further stated that the deposition was to occur in Boston, Massachusetts at Tower's counsel's office. In the cover letter enclosing the Notice of Deposition, Tower stated that it would be "willing to discuss a mutually convenient U.S. location and date for the deposition." See Ex. B attached hereto (emphasis added). Believing this deposition notice to go well beyond the scope of discovery allowed by the Federal Rules of Civil Procedure, Shanghai ELE filed a Motion for Protective Order on December 22, 2006.

On January 8, 2007, while Shanghai ELE's Motion for Protective Order was pending, Tower filed a Motion to Compel discovery, specifically seeking further responses from Shanghai ELE in response to Tower's First Set of Interrogatories and First Request for Production of Documents.

On January 22, 2007, the Court held a hearing on Shanghai ELE's Motion for a Protective Order. Notably, once Tower's counsel was given an opportunity to speak, in response to the Court's suggestion that the deposition occur in China, Tower's counsel quickly offered to conduct the deposition in China and informed the Court of his law firm's two facilities in China. See Jan. 22 Hearing Tr. 15:1-6 (Docket No. 38).

On February 5, 2007, the Court entered an Order, which was drafted by Tower, denying Shanghai ELE's Motion for a Protective Order and authorizing Tower to conduct a deposition of

Shanghai ELE's witness "at a mutually convenient time and place in the People's Republic of China, in a location as close as practicable to Shanghai." See February 5, 2007 Order (Docket No. 40) (the "February 5 Order").

After the hearing, and after the Court entered the Order drafted by Tower, "Tower determined that Chinese law does not permit deposition of Chinese citizens in Beijing or other places on the mainland of China." See Tower's Motion to Compel (Docket No. 44) at 2. On February 20, 2007, Tower filed another Motion to Compel, this time seeking to have the 30(b)(6) deposition be taken in Hong Kong. Although Tower titled its motion a "Motion to Compel Compliance with the Court's February 5, 2007 Order," the Motion really sought to modify the Court's Order.

On March 16, 2007, the Court issued two Orders concerning Tower's Motions to Compel. First, the Court granted in part and denied in part Tower's Motion to Compel further discovery responses. See March 16 Order Granting In Part Plaintiff's Motion to Compel Discovery (Docket No. 49) (the "March 16 Discovery Order"). Second, the Court granted Tower's Motion to Compel Compliance with the February 5 Order, in which the Court instructed that Shanghai ELE was to have its Rule 30(b)(6) representative(s) apply for permission to travel to Hong Kong for the purpose of being deposed in that city. See March 16, 2007 Order Granting Motion to Compel Compliance (Docket No. 50) (the "March 16 Compliance Order").

On June 1, 2007, Tower deposed Shanghai ELE's 30(b)(6) representative Mr. Barkley Bao ("Bao") in Hong Kong.

## ARGUMENT

Rule 37 of the Federal Rules of Civil Procedure provides, in relevant part: "If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . . the court in which the action is pending may make such orders in regard to the failure as are just[.]" The rule's language requires two things as a condition precedent to engaging the rule's sanction machinery: (1) a court order must be in effect, and (2) before the

enumerated sanctions can be imposed, the court order must then be violated. See R.W. International Corp., v. Welch Foods, Inc., 937 F.2d 11, 14 (1st Cir. 1991). Here, sanctions are not proper because Shanghai ELE has not violated any of the Court's Orders. As discussed herein, Shanghai ELE has acted in good faith in responding to Tower's discovery requests, and where it has objected or limited its responses, Shanghai ELE has acted reasonably and been just in asserting its objections. Tower's overzealous application of the law on Rule 37 sanctions is improper.

## I. SHANGHAI ELE'S CONDUCT RELATING TO THE 30(B)(6) DEPOSITION WAS PROPER

### A. Shanghai ELE Did Not Fail To Comply With The February 5 Order By "Refusing" To Appear In Hong Kong For The Deposition

In the first of many mischaracterizations set forth in Tower's Motion for Sanctions, Tower alleges that Shanghai ELE failed to comply with the February 5 Order by "refus[ing] to appear in Hong Kong for the deposition." See Mem. at 2. The February 5 Order, which was drafted by Tower's counsel, was in response to Shanghai ELE's Motion for Protective Order. Tower originally unilaterally noticed a 30(b)(6) deposition in Boston, Massachusetts, which would have required Shanghai ELE's witness to travel halfway around the world, from China to Boston for the deposition. Shanghai ELE moved for a protective order because it believed that the deposition was unnecessary given the alternative avenues of discovery available to Tower and because it would place too great a burden on Shanghai ELE to travel to the United States for a deposition. The Court denied Shanghai ELE's Motion for Protective Order to the extent that Shanghai ELE argued that a 30(b)(6) deposition was unnecessary. However, the Court agreed with Shanghai ELE that the deposition would not take place in Boston, and the Court authorized Tower to conduct a deposition of Shanghai ELE's witness "at a mutually convenient time and place in the People's Republic of China, in a location as close as practicable to Shanghai."

At the hearing on ELE's Motion for Protective Order, Tower's counsel told the Court that its firm had an office in Beijing, and the deposition could take place in Beijing. What Tower's

counsel failed to realize and mention was that there were serious legal limitations on foreign attorneys attempting to take depositions in China. When Tower's counsel later found that out, it insisted that the deposition be taken in Hong Kong. While the Court later agreed that the deposition could proceed in Hong Kong, given that Tower's counsel drafted the February 5 Order, and that the February 5 Order provided that the deposition was to occur in the People's Republic of China as close as practicable to Shanghai, even if defendant refused to travel to Hong Kong -- which it did not -- any refusal to obtain the necessary travel permits and visas could not be considered a failure to comply with the February 5 Order, because the Court did not order the deposition to occur in Hong Kong and did not contemplate Shanghai ELE having to apply for a travel visa to attend the deposition. Thus, this alleged failure to comply with the February 5 Order by refusing to appear in Hong Kong is unfounded, misstates the record, and is not sanctionable.

**B. Shanghai ELE Did Not Fail To Comply With The March 16 Compliance Order In Applying For A Travel Permit To Hong Kong**

Contrary to Tower's assertions, Shanghai ELE did not violate the March 16 Compliance Order in applying for a permit to travel to Hong Kong for the deposition. Tower's allegation that Shanghai ELE "waited a month before applying for a permit to travel to Hong Kong" (Mem. at 2) ignores the realities and multiple steps it takes to apply for such a permit. The Chinese Government does not allow its residents to freely travel to Hong Kong. Rather, the Chinese Government requires that the traveler apply for a travel visa and prove that the traveler has sufficient ties to China, so that the government is confident that the traveler will return to China. See Bao Aff. ¶ 5.

Shanghai ELE received a copy of the March 16 Compliance Order on Monday, March 19, 2007.[1] See Bao Aff. ¶ 3. Bao had never applied for a travel visa to Hong Kong before and

[1] Given the twelve hour time difference between Providence and Shanghai, the March 16 Compliance Order was issued on Saturday, March 17, 2007 in Shanghai. See Bao Aff. ¶ 3.

therefore had no experience on how to obtain it. Initially, he was informed that he needed to go back to his hometown province of Anhui to apply for a "personal" travel visa. In light of his busy work schedule, the earliest he could go back to Anhui was on March 24, 2007. See Bao Aff. ¶ 6. On Saturday, March 24, 2007, Bao traveled to Anhui. On Monday, March 26, 2007, he contacted the provincial government authority but was informed that it would take at least two to three months for the process to complete, and even that lengthy time frame was not guaranteed for a definite result (i.e., that he would get a travel visa to Hong Kong). However, he learned that he could go through certain intermediary organizations who specialize in helping prospective travelers with obtaining "business" travel visas to Hong Kong by ensuring that all of the necessary paper work is completed correctly. Since they operate in big costal cities where the government authorities are more familiar with issuing different types of travels visas to Hong Kong, the process may take less time. See Bao Aff. ¶ 7.

On March 27, 2007, Bao returned to Shanghai and promptly contacted one of the intermediary organizations, Shanghai China Travel International Co., Ltd. ("Shanghai CTI"). Shanghai CTI informed him that he would need certified or notarized copies of the following documents in order to submit his application for a "business" travel visa to Hong Kong: (1) National Personal Identification Card; (2) Shanghai Residency Permit; (3) Bank statement; (4) Proof of property ownership; (5) Proof of employment; (6) Business Permit of Shanghai ELE; (7) Shanghai ELE's organization chart showing his title; (8) Shanghai ELE's labor-protection insurance certificate; and (9) Marriage certificate (if married). See Bao Aff. ¶ 8.

Bao immediately went into action to obtain the requested documents. Bao was able to obtain most documents during the last week of March and the first week of April. However, it took much longer to obtain a Shanghai Residency Permit. See Bao Aff. ¶ 9. Because Bao was not originally from Shanghai and only resides in Shanghai to work for Shanghai ELE, he had a temporary Shanghai Residency Permit, as required by the municipal government of Shanghai, which was good for 6 months but renewable every 6 months. When Bao went to the municipal government agency to obtain a certified copy of his Shanghai Residency Permit on March 28,

2007, he was informed that since he had been residing in Shanghai for over two years, he could no longer use a temporary residency permit but would be issued a regular residency permit, which would take two weeks. See Bao Aff. ¶ 10.

On April 12, 2007, Bao obtained his Shanghai Residency Permit and went to Shanghai CTI with the other documents. Shanghai CTI helped Bao complete the necessary paperwork for his application for a travel visa to Hong Kong. On the next day, Friday, April 13, 2007, Bao went to Shanghai CTI again and picked up the complete application package. See Bao Aff. ¶ 11. On Monday, April 16, 2007, Bao formally submitted his application for a travel visa to Hong Kong. Bao was informed that it might take about three to four weeks to get the travel visa, as the week of May 1, 2007 is the Chinese national "May 1st" holiday week and all businesses would be closed. See Bao Aff. ¶ 12. On Monday, May 7, 2007, the first business day after the Chinese "May 1st" holiday week, Bao received a travel visa permitting him to travel to Hong Kong for the deposition. See Bao Aff. ¶ 14.

Although it was nearly a month between the date of the Court's March 16 Compliance Order and the date Bao submitted his application for a travel visa, Bao was at all times expeditiously taking the steps necessary for submitting his application for a travel visa to Hong Kong. See Bao Aff. ¶ 13. Indeed, counsel for both parties exchanged several emails regarding the arrangement of the deposition in Hong Kong, and notably, Tower never once complained about the delay or expressed that it intended to seek sanctions concerning any delay with respect to following the procedures required to seek a travel visa. Accordingly, any argument that Shanghai ELE unjustly delayed in seeking a travel visa ignores the realities of the process of seeking such a visa and plainly cannot be considered sanctionable conduct.

### C. Shanghai ELE Did Not Obstruct The Taking Of The 30(b)(6) Deposition

Tower argues that Shanghai ELE improperly obstructed its taking of the deposition of Shanghai ELE's 30(b)(6) witness, because Shanghai ELE's counsel interrupted the deposition and improperly instructed the witness not to answer. Tower also argues that Shanghai ELE's



A/72047382.5/3313764-3300207036

complaints concerning translation problems prevented Tower from obtaining the information it sought. These arguments are legally and factually flawed.

Before discussing the merits of these assertions, it should be noted that Shanghai ELE went out of its way to accommodate Tower's counsel, who is based in Boston, Massachusetts, in the taking of the deposition. While it would have been perfectly within Shanghai ELE's rights to have the deposition taken during normal business hours in Hong Kong, counsel for Tower wanted to take the deposition by video conference from Boston. To accommodate Tower's counsel, while cognizant of the twelve hour time difference, Shanghai ELE agreed to begin the deposition at 8:00 AM local time in Hong Kong, 8:00 PM local time in Boston. See Affidavit of Tony Chen ("Chen Aff.") ¶ 22 (attached hereto).

Furthermore, prior to the deposition, counsel for Shanghai ELE tried to make sure that everyone was on the same page as to how the translation would occur. Although not insurmountable, translation issues add a level of complexity, and it is more efficient for the attorneys to address the issues before the deposition starts. Unfortunately, as discussed below, this process did not go well from the beginning and resulted in a large amount of time being consumed in dealing with interpretation issues. See Chen Aff. ¶ 23.

### 1. Counsel for Shanghai ELE Properly Instructed The Witness Not to Answer Questions in Compliance with Rule 30(d)(1)

Tower's argument that counsel for Shanghai ELE obstructed the Rule 30(b)(6) deposition by improperly instructing Bao not to answer certain questions is misplaced. Indeed, counsel for Shanghai ELE complied with the procedure set forth in Fed. R. Civ. P. 30(d)(1). Pursuant to Rule 30(d)(1), "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1) (emphasis added); See also Continental Casualty Co. v. City of Jacksonville, 2007 WL 678016, *4 (M.D. Fla. Feb. 5, 2007) ("During the deposition, counsel for [Defendant] objected to these questions as 'outside the scope' of discovery and at times, instructed the witness … not to answer pursuant to Fed. R. Civ. P. 30(d)(1) ...

[Defendant's] counsel was authorized by Rule 30(d)(1) when she instructed [the witness] not to answer because counsel was merely attempting to enforce prior Orders of this Court."); S.E.C. v. Oakford Corp., 141 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) (finding instruction not to answer in order to enforce limitation previously imposed by court was proper).

Here, counsel for Shanghai ELE instructed Bao not to answer questions which exceeded the scope of the multiple Orders already entered in this case, which expressly defined the scope of the 30(b)(6) deposition. Indeed, the Court's February 5 Order and statements made during the January 22 Hearing made clear that the Court allowed the deposition to proceed on the condition that it have an extremely narrow focus. Specifically, the February 5 Order stated that the scope of the deposition shall be limited to Tower's Exhibit A attached to Tower's Rule 30(b)(6) Notice (i.e., "Shanghai ELE's … customer support center in America, as claimed on Shanghai ELE's website").[2]

Statements made during the January 22 Hearing support that narrowed focus. For example, in the January 22 Hearing, counsel for Tower stated that it sought a deposition over a very narrow topic: "We have targeted information that we are seeking and that's all we're seeking. We did not ask [Shanghai ELE] at this point for a deposition for all potential 30(b)(6) topics that we could ask for. We asked for one particular one and that's what we're seeking to get." See Jan. 22 Hearing Tr. 19:6-10. Furthermore, the Court expressed concerns that Tower may try to exceed the scope of the deposition notice, and therefore the Court emphasized that the deposition had a very limited scope:

> [T]he Court is satisfied that there has been a sufficient showing by the plaintiff to authorize a limited 30(b)(6) deposition … the plaintiff should have at least the limited opportunity to glean additional information about how that statement [on the website] came to be on the website … I do stress it's limited. The Court has concern what Mr. Chen has concerns about that if the Court authorizes this

---

[2] The scope of the deposition was subsequently amended to also include Shanghai ELE's predecessor and affiliated or related companies. See March 16 Discovery Order.

> deposition the plaintiff may be asking the person that is produced by the defendant to produce other information that's not going to be available to them, and so I'm granting the motion limited to the topic identified in Schedule A.

Jan. 22 Hearing Tr. 25:15-26:22 (emphasis added).

Despite the Court's express warning that the deposition was to be limited in scope, Tower attempted to circumvent the Court's Orders by asking questions that Tower's counsel labeled as "background questions" (Ex. M to Chen Aff. (filed under seal) at 23:3-6; 43:5), including questions concerning where Bao performs his duties as marketing manager, the scope of Bao's job duties, and Shanghai ELE's sales activities. See Ex. M to Chen Aff. at 11:21-20:2; 21:15; 23:3-6; 43:5. As proof that the questions were not simply background questions, but rather were outside the scope authorized by the Court, one need look no further than Tower's own Motion for Sanctions. In its Motion for Sanctions, Tower asks that the Court sanction Shanghai ELE by making factual findings, including inter alia, that: "Mr. Bao performed his duties as Shanghai ELE's marketing manager in locations other than Shanghai, China, including the United States"; "Mr. Bao discussed the sales of the LCDIs with other people in the industry, including all companies listed on its website"; and "Mr. Bao and his employees are responsible for marketing Shanghai ELE's LCDI products to the United States." See Mem. at 10.

If these questions were truly "background" questions, one must ask why Tower requests the Court to sanction Shanghai ELE by making these factual findings. The fact is, these were not background questions. These were questions clearly designed to target information that Tower seeks concerning its jurisdictional discovery issues and were plainly outside the narrow scope of deposition authorized by the Court. Because Shanghai ELE's counsel's instructions not to answer were premised on the previous Orders of the Court, the instructions were entirely proper and therefore not sanctionable.

To the extent that Tower alleges that upon instructing the witness not to answer, Tower should have immediately moved for a protective order, such an argument would be misplaced. As previously discussed, the deposition was taking place on Friday at 8:00 AM local time in Hong Kong, Thursday 8:00 PM local time in Boston. Indeed, during the January 22 Hearing, the

Court expressed its awareness of, and problems posed by, the time difference. See January 22 Hearing Tr. 28:7-25. Thus, even if Shanghai ELE desired to halt the deposition and seek a protective order, it simply was not possible, and far from desirable for either party, given the complexities in arranging the deposition in Hong Kong in the first place.

### 2. Counsel For Shanghai ELE Properly Raised Issues Concerning Questionable Translations During The 30(b)(6) Deposition

Tower also alleges that the alleged translation problems raised by Shanghai ELE during the deposition prevented Tower from obtaining the information it sought. To the extent Shanghai ELE's counsel interrupted the deposition with concerns regarding interpretation problems, this conduct is not sanctionable. Rather, the interruptions were entirely proper to ensure that the deposition transcript in English was clear as to the scope of the question that the witness was answering in Chinese.

For example, at the very beginning of the deposition, the interpreter did not interpret everything said in English in the proceeding. See Ex. M to Chen Aff. at 4:21. Furthermore, in the first paragraph of the interpretation, the Interpreter interpreted the English word "witness" into a Chinese word that means "notary public". See Ex. M to Chen Aff. at 5:12-17. When this error was raised, Tower's Hong Kong counsel, Mr. Stephen Lo, agreed. See Ex. M to Chen Aff. at 6:13-21. Indeed, Mr. Lo, repeatedly acknowledged Shanghai ELE's counsel's concerns regarding interpretation problems. See, e.g., Ex. M to Chen Aff. at 6:17-20, 18:2-14, 50:17-51:17, 80:17-83:14. There were numerous instances that consumed a substantial amount of time required for clearing any mistake or confusion from the interpretation. See Chen Aff. ¶ 25.

The most prevalent among the translation issues was with respect to the proper translation of the term "affiliated." The Court permitted Tower to question the witness concerning "predecessor and affiliated or related companies" of Shanghai ELE. As the deposition transcript makes clear, the parties engaged in a long discussion on the proper translation of the term "affiliated" into Chinese -- a word in English that has various meanings in and of itself. Indeed, during the March 15, 2007 Hearing on Tower's Motions to Compel, even



A/72047382.5/3313764-3300207036

the Court acknowledged that Chinese companies may not be organized the same way as American companies and that "it may be very difficult for [Shanghai ELE] to understand what [an affiliated company] is." March 15 Hearing Tr. 7:22-8:4 (Docket No. 54).

Not surprisingly, counsel in Hong Kong, the interpreter, and witness had trouble deciding on the proper Chinese word that encompasses the proper scope of the word "affiliated" in the English language dictionary. Incredibly, when the witness asked for clarification on the word "affiliated", Tower's counsel simply repeated the word "affiliated" and suggested to the witness that he should know what the word means, without providing any clarification to the witness or trying to break down the question into subparts by asking the witness individual questions concerning each possible category of entities that may be considered affiliated companies, such as subsidiaries or companies with overlapping officers or overlapping directors. See, e.g., Ex. M to Chen Aff., at 51:24-52:3; 56:4-12.

Ultimately, the problems that arose due to translations problems were not the fault of Shanghai ELE or its counsel. Indeed, importantly, it was Tower who chose the translator. Accordingly, the translation concerns that Shanghai ELE raised during the deposition are not sanctionable.

Furthermore, as further evidence of Shanghai ELE's good faith efforts during the deposition, it must be noted that although the deposition was limited to three hours by the February 5 Order and therefore was scheduled to concluded at 11:00 AM local time in Hong Kong, Shanghai ELE agreed to allow the deposition to continue past the scheduled cut-off time until the deposition was concluded at 12:56 PM. See Chen Aff. ¶ 27. This accommodation cannot seriously be considered "stonewalling" and is not sanctionable.

In light of the entirely proper conduct discussed above, Tower's reliance on Calzatuficio S.C.A.R.P.A. S.P.A. v. Fabiano Shore Co., Inc., 201 F.R.D. 33 (D. Mass. 2001) for the proposition that Shanghai ELE's discovery-related conduct is sanctionable is misplaced. Contrary to Tower's arguments, Calzatuficio supports that Shanghai ELE's conduct comes nowhere near the level of discovery-related abuse that justifies sanctions. In Calzatuficio, the

30(b)(6) deponent admitted that he had not prepared for the deposition by reviewing corporate documents to testify on behalf of the company and even argued that he had no duty to prepare. Id. at 36-37. Furthermore, the court found that the litany of inappropriate conduct cited by the plaintiff that defendant's counsel undertook during the deposition was supported by the deposition transcript, including that counsel conferred with the witness during questioning, left the room with the deponent while a question was pending, conferred with deponents while questions were pending, instructed deponents not to finish answers, suggested to the deponents how they should answer questions, rephrased opposing counsel's questions, and made ad hominem attacks against opposing counsel. Id. 39. Even with this clearly improper conduct, the Court merely awarded the plaintiff an opportunity to re-depose the 30(b)(6) witness and reserved the issues as to whether defendants must pay for the deposition and whether counsel's conduct itself was sanctionable. Id. at 41. Here, Shanghai ELE's conduct -- which was not in anyway improper -- does not rise to the level of inappropriateness at issue in Calzatuficio. Therefore, the excessive sanctions that Tower seek should not be awarded.

## II. SHANGHAI ELE'S HAS PROVIDED SUFFICIENT DISCOVERY RESPONSES

### A. The Court Did Not "Substantially Grant" Tower's Motion to Compel Further Discovery Responses

In yet another mischaracterization, Tower asserts that the Court "substantially granted" Tower's Motion to Compel further discovery responses. Quite the opposite, the Court denied in part Tower's motion and painstakingly rewrote nearly all remaining interrogatories and requests for production to limit their scope. Indeed, in the March 16 Discovery Order, the Court sustained Shanghai ELE's objection to Tower's over-expansive definition of "You" and "Defendant", but permitted Tower to question Shanghai ELE's witness at the 30(b)(6) deposition concerning "Defendant's predecessor's and affiliated or related companies." Furthermore, even where the Court granted Tower's motion, the Court significantly modified Tower's interrogatories. See March 16 Discovery Order (modifying Interrogatory Nos. 1, 2, 3, 4 and Request for Production Nos. 3, 4, 9, 10, 11, 12). The Court outright granted Tower's request



A/72047382.5/3313764-3300207036

with respect to only Interrogatory No. 3 and Request for Production No. 5, and the Court outright denied Tower's request with respect to Interrogatory No. 7 and held that to extent the ruling did not grant the motion, the motion was deemed denied. Accordingly, any assertion by Tower that the Court's March 16 Discovery Order "substantially granted" Tower's Motion to Compel is not supported by the undisputed procedural history of this case.

### B. Shanghai ELE Timely Complied With The March 16 Discovery Order

In another misleading allegation, Tower alleges that Shanghai ELE failed to serve its supplemental discovery responses timely as ordered by the March 16 Discovery Order. This allegation is false. After the March 16 Discovery Order, Shanghai ELE supplemented its responses by April 13, 2007, and mailed them to Tower via First Class Mail before they were due on April 16, 2007, as required by the March 16 Discovery Order. See Chen Aff. ¶ 2. On April 20, 2007, Tower notified counsel for Shanghai ELE that it had not received Shanghai ELE's supplemental discovery responses. See Ex. A to Chen Aff. Shanghai ELE promptly responded by email attaching PDF copies of the discovery responses that Shanghai ELE believed were mailed on April 13, 2007. See Ex. B to Chen Aff. While Shanghai ELE takes counsel at their word that they did not receive the copies mailed on April 13, 2007, Shanghai ELE does not know what happened and promptly provided the PDF copies when notified of the problem.[3] See Chen Aff. ¶ 3.

Likewise, Tower's complaints that Shanghai ELE failed to comply with Tower's arbitrary deadline of May 16, 2007 to further supplement the responses is also unfounded. As Shanghai ELE specifically stated to Tower, it believes that it has fully complied with Tower's discovery responses, including the supplementations required by the March 16 Discovery Order.

[3] Incredibly, Tower is apparently complaining about an alleged four day delay with respect to Shanghai ELE's supplemental responses. Although Shanghai ELE did not need the extra four days to comply with the March 16 Discovery Order, it assumes that if Shanghai ELE actually needed those four extra days, counsel for Tower would have assented to such a request. See Chen Aff. ¶ 4.

Thus, the arbitrary deadline that Tower placed upon Shanghai ELE has no legal significance. However, in the spirit of cooperation in the discovery process, Shanghai ELE offered to again review its records to see whether there is additional information that may further address Tower's questions.

Noticeably, Tower fails to mention that it threatened Shanghai ELE with a motion for sanctions prior to the 30(b)(6) deposition, based upon these alleged failures to supplement Shanghai ELE's discovery responses. From Tower's Motion for Sanctions, one might presume that the Motion for Sanctions was the result of the Rule 30(b)(6) deposition of Shanghai ELE. That is not the case. On May 22 and 23, 2007, counsel for Shanghai ELE exchanged a series of email correspondence with Tower's counsel concerning his travel schedule to Hong Kong the next day in preparation for Bao's deposition on May 31, 2007. On May 23, Tower's counsel wished Shanghai ELE's counsel a "safe trip to Hong Kong", and on the early morning of May 24, Tower's counsel sent an email thanking Shanghai ELE's counsel for his detailed suggestion on the logistics of how the deposition would be conducted with an interpreter. See Ex. G to Chen. Aff. The next day on May 25, 2007, despite Shanghai ELE's good faith efforts to address any and all of Tower's concerns with Shanghai ELE's discovery responses, Tower's counsel sent an email at 10:53 AM EST to Shanghai ELE's counsel informing Shanghai ELE that Tower intended to file a motion for sanctions against Shanghai ELE at 1:30 PM EST. See Ex. H to Chen Aff. Of course, Tower's counsel was aware that counsel for Shanghai ELE was in Hong Kong on May 25, 2007, and her email was sent at 10:53 PM local time in Hong Kong, and demanded a response by 1:30 AM local time in Hong Kong. See Chen Aff. ¶ 17.

Shanghai ELE's local counsel in this matter promptly responded to Tower's counsel's email and expressed his concerns as to why Tower insisted that its motion must be filed by 1:30 PM EST. See Ex. I to Chen Aff. Tower subsequently agreed to delay filing its motion until Tuesday, May 29, 2007. On Tuesday, May 29, 2007 at approximately 3:33 AM local time in Hong Kong, 3:23 PM local time in Boston, Shanghai ELE's counsel responded by email to Tower's draft motion for sanctions and explained in detail why Tower's motion was without

merit. See Ex. L to Chen Aff. Tower did not file its motion for sanctions on May 29, 2007. See Chen Aff. ¶ 21.

In further good faith efforts to address Tower's concerns regarding Shanghai ELE's discovery responses and Bao's deposition, and in hopes of avoiding any Court intervention, the parties continued to negotiate how Shanghai ELE could address Tower's concerns with Shanghai ELE's document production. On June 5, 2007, Shanghai ELE offered to produce additional documents in response to Tower's discovery requests, even though Shanghai ELE maintained, and still maintains, that it has fully complied with Tower's document requests. See Chen Aff. ¶ 28. Tower refused that offer unless Shanghai ELE agreed to pay Tower's expenses in connection with its prior motions to compel and agreed to pay for another deposition of Bao, including Tower's expenses to conduct the deposition. See Chen Aff. ¶ 28. Shanghai ELE refused Tower's demand for payment of its fees in connection with its motion practice. See Chen Aff. ¶ 28.

Despite Tower's demand for payment of its costs and fees, Shanghai ELE nonetheless is in the process of preparing the production of the documents that it offered to produce in exchange for Tower's withdrawal of the present motion, even though Shanghai ELE still maintains that it is not required to produce such documents. Such additional documents will be produced during the week of June 25, 2007. See Chen Aff. ¶ 29. The dispute that has arisen between counsel concerning Shanghai ELE's discovery responses is unseemly. Shanghai ELE has done everything possible, even to its prejudice, in an attempt to avoid judicial intervention for this issue. Accordingly, sanctions against Shanghai ELE relating to its discovery responses are entirely inappropriate.

## III. SHANGHAI ELE HAS NOT INTERFERED WITH ANY THIRD PARTY DISCOVERY

Tower asserts that Shanghai ELE unreasonably caused Tower to incur the expense of third party discovery in this action and suggests that Shanghai ELE's asserted non-compliance

with orders of this Court caused that expense. However, the facts do not support those assertions.

First, the third party discovery sought by Tower was served in February before the Court's March 16 Orders. See Chen Aff. ¶ 6. Certainly, those subpoenas were not the result of any subsequent activity.

Second, Shanghai ELE did nothing to impede Tower's third party discovery. See Chen Aff. ¶ 7. In fact, counsel for Shanghai ELE were not even notified about Tower's subpoena served to third parties such as Home Depot and Benny's Store in early January 2007. See Ex. C to Chen Aff. When Shanghai ELE became aware of Tower's third-party subpoenas, it did not try in any way to stop that discovery. Most of the third parties responded to the discovery without any contact with Shanghai ELE, its counsel, or anyone else on behalf of Shanghai ELE. See Chen Aff. ¶ 8. Shanghai ELE's counsel only sent a letter to notify certain third parties to introduce himself and Shanghai ELE's position, and copies of such letters were copied to Tower's counsel. See Ex. D to Chen Aff. In a few instances, counsel for Shanghai ELE was contacted by counsel for recipients of Tower subpoenas, which is not unusual. See Chen Aff. ¶ 9. Even then, Shanghai ELE cooperated with the third parties responding to the subpoenas and did not suggest to any third party that it object to the subpoena or fail to produce documents in response to Tower's subpoenas. See Chen Aff. ¶ 9. For example, when U.L. received a subpoena from Tower, it asked Shanghai ELE to contact U.L., and Shanghai ELE in turn asked its counsel to contact U.L. regarding the subpoena. See Ex. E to Chen Aff. In this process, Shanghai ELE's counsel worked with both U.L.'s counsel and Tower's counsel to come up with a solution of designating the confidential level of the U.L. documents that was satisfactory to all parties. See Ex. F to Chen Aff.

Tower specifically asserts that Shanghai ELE improperly involved itself in Tower's attempts to obtain discovery from Friedrich Air Conditioning Co. In late February 2007, counsel for Shanghai ELE was contacted by counsel for Friedrich regarding the subpoena issued by Tower. See Chen Aff. ¶ 13. Friedrich's counsel contacted Shanghai ELE's counsel again on or

about March 29, 2007, advising Shanghai ELE's counsel that Tower had filed a motion to compel, as Friedrich had objected to Tower's subpoena for being, among other things, overbroad and burdensome. See Chen Aff. ¶ 13. He asked whether Shanghai ELE was producing any of the documents being sought by Tower. Counsel for Shanghai ELE informed him that it was in the process of producing its sales documents related to its sales to Friedrich. On April 13, 2007, Shanghai ELE did in fact produce its sales documents related to sales to Friedrich. See Chen Aff. ¶ 13.

Shanghai ELE understands that Friedrich asserted multiple objections to various documents requests of Tower. One of those objections was based upon burden and that the sales documents were being produced already by Shanghai ELE. While that was one issue raised by Friedrich, it was by no means the only one. See Chen Aff. ¶ 14. At no time during any of the conversations with Friedrich's counsel did Shanghai ELE's counsel ever suggest that Friedrich refuse to produce any documents, and Shanghai ELE certainly had no ability to control what Friedrich did in its response to the subpoena. See Chen Aff. ¶ 15.

Tower's reliance on Fashion House, Inc. v. K Mart Corp., 124 F.R.D. 15 (D.R.I. 1988) for the proposition that Shanghai ELE should be sanctioned for its involvement in third-party discovery is misplaced. In Fashion House, K Mart was compelled to pay plaintiff's expenses incurred by plaintiff in third-party discovery of defendant's direct vendors due to defendant's attorneys' intentional violation of court orders and failure to act in good faith or in honest and legitimate attempt to make discovery related to those vendors. Id. at 18-19. Here, apart from its subpoena on Friedrich, which again Shanghai ELE has produced its sales documents related to Friedrich, Tower seeks documents and information from United States retailers of air conditioners that allegedly incorporate Shanghai ELE LCDI's, including Benny's, Wal-Mart, and Home Depot. Unlike the situation in K Mart, Shanghai ELE does not have records reflecting sales to these companies because, as Tower and this Court are well aware, Shanghai ELE's LCDI products are sold to manufacturers in China -- manufacturers who then assemble their air conditioner products with the LCDI device as a component part and export the air conditioners to

other countries, including the United States. Thus, unlike in Fashion House, Shanghai ELE has not violated any Court Orders compelling Shanghai ELE to produce documents related to these United States retailers, because Shanghai ELE does not have any responsive documents. This should not be surprising to anyone because Shanghai ELE does not have contact with these United States retailers.

Accordingly, any assertions that Shanghai ELE has acted improperly with respect to Tower's attempts to conduct third party discovery are completely unfounded and Shanghai ELE should not be ordered to reimburse Tower for its expenses related to third party discovery.

## CONCLUSION

For the reasons stated above, it is respectfully submitted that Tower's Motion for Sanctions should be denied.

DEFENDANT
SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:

BINGHAM MCCUTCHEN LLP
Tony D. Chen (Pro Hac Vice)
Email: Tony.Chen@bingham.com
Victor H. Polk, Jr. (Pro Hac Vice Pending)
Lawrence T. Stanley, Jr. (Pro Hac Vice Pending)
150 Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

Dated: June 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 25th day of June, 2007.

/s/ Jeffrey S. Brenner