UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br>Plaintiff,<br>v.<br>SHANGHAI ELE MANUFACTURING CORPORATION,<br>Defendant. | CIVIL ACTION<br>NO. 06-00170-S-DLM |

**DECLARATION OF BARKLEY BAO IN**
**RESPONSE TO TOWER'S MOTION FOR SANCTIONS**

I, Barkley Bao, declare as follows:

1. I am the manager of the marketing department at Shanghai ELE Manufacturing Corporation ("Shanghai ELE"). I have personal knowledge of the matters stated in this declaration and would testify truthfully if called upon to do so.

2. I reside in Shanghai, China, which has a 12-hour time difference with Eastern Standard Time.

3. The Court issued an Order on Friday, March 16, 2007 (Saturday, March 17, 2007 in China) granting Tower's Motion to Compel Compliance with the Court's February 5, 2007 Order (the "March 16 Compliance Order"). I received a translation of the March 16 Compliance Order on Monday, March 19, 2007.

4. The March 16 Compliance Order required that Shanghai ELE shall have its Rule 30(b)(6) representative(s) apply for permission to travel to Hong Kong for the purpose of being deposed in that city.

5. Obtaining a travel visa for the purpose of going to Hong Kong from China is a multi-step process. The Chinese Government does not allow its residents to freely travel to Hong Kong, which is a Special Administrative Region (SAR). Rather, the Chinese Government requires that the traveler apply for a travel visa and prove that the traveler has sufficient ties to China, such that the government is confident that the traveler will return to China.

6. I had never applied for a travel visa to Hong Kong SAR before and therefore had no experience on how to obtain it. Initially, I was informed that I needed to go back to my hometown province of Anhui to apply for a "personal" travel visa. In light of my busy work schedule, the earliest I could go back to Anhui was on March 24, 2007.

7. On Saturday, March 24, 2007, I traveled to Anhui. On Monday, March 26, 2007, I contacted the provincial government authority but was informed that it would take at least two to three months for the process to complete, and even that lengthy time frame was not guaranteed for a definite result (i.e., that I would get a Hong Kong SAR visa). However, I learned that I could go through certain intermediary organizations who specialize in helping prospective travelers with obtaining "business" travel visas to Hong Kong SAR by ensuring that all of the necessary paper work is completed correctly. Since they operate in big costal cities where the government authorities are more familiar with issuing different types of travels visas to Hong Kong SAR, the process may take less time.

8. On March 27, 2007, I returned to Shanghai and promptly contacted one of the intermediary organizations, Shanghai China Travel International Co., Ltd. ("Shanghai CTI"). Shanghai CTI informed me that I would need certified or notarized copies of the following documents in order to submit my application for a "business" travel visa to Hong Kong SAR:

a. National Personal Identification Card

b. Shanghai Residency Permit

c. Bank statement

d. Proof of property ownership

e. Proof of employment

f. Business Permit of Shanghai ELE

g. Shanghai ELE's organization chart showing my title

h. Shanghai ELE's labor-protection insurance certificate

i. Marriage certificate (if married)

9. I immediately went into action to obtain these requested documents. I was able to obtain most documents during the last week of March and the first week of April. However, it took much longer to obtain a Shanghai Residency Permit for the reasons below.

10. I was not originally from Shanghai and only reside in Shanghai to work for Shanghai ELE. As required by the municipal government of Shanghai, I had a temporary Shanghai Residency Permit which was good for 6 months but renewable every 6 months. When I went to the municipal government agency to obtain a certified copy of my Shanghai Residency Permit on March 28, 2007, I was informed that since I had been residing in Shanghai for over two years, I could no longer use a temporary residency permit but would be issued a regular residency permit, which would take two weeks.

11. On April 12, 2007, I obtained my Shanghai Residency Permit and went to Shanghai CTI with all my other documents. Shanghai CTI helped me complete the necessary paperwork for my application for a travel visa to Hong Kong SAR. On the next day, Friday, April 13, 2007, I went to Shanghai CTI again and picked up the complete application package.

12. On Monday, April 16, 2007, I formally submitted my application for a travel visa to Hong Kong SAR. I was informed that it might take about three to four weeks to get the travel visa, as the week of May 1, 2007 is the Chinese national "May 1st" holiday week and all businesses would be closed.

13. Although it was nearly a month between the date that I learned of the March 16 Compliance Order and the date I submitted my application for a travel visa, I was at all times expeditiously taking the steps necessary for submitting my application for a travel visa to Hong Kong SAR.

14. On Monday, May 7, 2007, the first business day after the Chinese "May 1st" holiday week, I received a travel visa permitting me to travel to Hong Kong for the deposition. Shanghai FLF's counsel, Mr. Tony Chen, called me on the afternoon of that day (which was the night of Sunday, May 6, 2007 local time in California) and I promptly informed him that I had just received my travel visa to Hong Kong SAR.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on June 25, 2007.

Barkley Bao



ACTIVE 7766108.1 [illegible]