UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION, Plaintiff, v. SHANGHAI ELE MANUFACTURING CORPORATION, Defendant. | CIVIL ACTION NO. 06-00170-S-DLM |

**DECLARATION OF TONY D. CHEN IN SUPPORT OF DEFENDANT'S RESPONSE TO TOWER'S MOTION FOR SANCTIONS**

I, Tony D. Chen, declare as follows:

1. I am a Partner at Bingham McCutchen LLP, counsel of record in this action for Shanghai ELE Manufacturing Corporation ("Shanghai ELE"). I am a member of the Bar of the State of California. I have personal knowledge of the matters stated in this declaration and would testify truthfully if called upon to do so.

Alleged Delay in Providing Supplemental Discovery

2. I understand that Tower suggests that Shanghai ELE did not timely comply with the Court's March 16 Discovery Order by supplementing its interrogatory and document request responses by April 16, 2007 and that such responses were only made on April 20, 2007. The responses were not late. After the March 16 Discovery Order, I worked with my client to supplement the responses and had them completed on April 13, 2007. On April 13, I instructed my secretary, Jacqueline Spoonts, to mail Shanghai ELE's supplemental discovery responses via First Class Mail to Tower's counsel, as required by the March 16 Discovery Order. I believe that

was done.

3. On April 19, 2007, Tower's counsel sent a facsimile to my office notifying me that it had not received Shanghai ELE's supplemental discovery responses. See Ex. A attached hereto. Since I was out of office at a meeting with another client at its City of Industry headquarters that afternoon, I did not see that facsimile until the morning of April 20, 2007. I immediately responded by email attaching PDF copies of the discovery responses that I believe were mailed on April 13, 2007 (i.e., before the Court-ordered due date of April 16, 2007). See Ex. B attached hereto. While I take counsel at their word that they did not receive the copies mailed on April 13, 2007, I do not know what happened and promptly provided the PDF copies when notified of the problem.

4. Tower's counsel apparently is complaining about an alleged four day delay with respect to Shanghai ELE's supplemental responses. Although Shanghai ELE did not need the extra four days to comply with the March 16 Discovery Order, I assume that if Shanghai ELE actually needed those four extra days, counsel for Tower would have assented to a request.

Third Party Discovery

5. I understand that Tower asserts that Shanghai ELE unreasonably caused it to incur the expense of third party discovery in this action and seems to claim that Shanghai ELE's asserted non-compliance with Orders of this Court caused that expense. Again, I do not believe that the facts accord with those assertions.

6. First, the third party discovery sought by Tower was served on or before February 2007, prior to the Court's March 16 Orders. Certainly, those subpoenas were not the result of any subsequent activity.

7. Second, Shanghai ELE did nothing to impede Tower's third party discovery. In fact, counsel for Shanghai ELE including myself were not even notified about Tower's subpoena served to third parties such as Home Depot and Benny's Store in early January 2007. See Ex. C attached hereto.

8. When I became aware of Tower's third-party subpoenas, I did not try in any way to stop that discovery. Most of the third parties responded to the discovery without any contact with me or to my knowledge anyone on behalf of Shanghai ELE. I only sent a letter to notify certain third parties to introduce myself and Shanghai ELE's position, and copies of such letter were copied to Tower's counsel. See Ex. D attached hereto.

9. In a few instances, I was contacted by counsel for recipients of Tower's subpoenas. (In my experience, this is not unusual.) And even then, I cooperated with the third parties responding to the subpoenas and did not suggest to any third party that it object to the subpoena or not produce documents in response to Tower's subpoenas.

10. For example, when U.L. received a subpoena from Tower, it asked Shanghai ELE to contact U.L., and Shanghai ELE in turn asked me as its U.S. counsel to contact U.L. regarding the subpoena. See Ex. E attached hereto.

11. In this process, I have worked with both U.L.'s counsel and Tower's counsel to come up with a solution of designating the confidential level of the U.L. documents that was satisfactory to all parties. See Ex. F attached hereto.

12. I understand that Tower asserts that I did something wrong in my dealings with counsel for Friedrich Air Conditioning Co.

13. In late February 2007, I was contacted by Mr. Ted Lee, counsel for Friedrich, advising me that he was retained by Friedrich to handle the subpoena issued by Tower. Mr. Lee contacted me again on or about March 29, 2007, advising me that Tower had filed a motion to compel as Friedrich had objected to Tower's subpoena for being, among other things, overbroad and burdensome. Mr. Lee asked me whether Shanghai ELE would produce any of the documents being sought by Tower from Friedrich. I told him that Shanghai ELE was in the process of producing its sales documents related to its sales to Friedrich. On April 13, 2007, Shanghai ELE did in fact produce to Tower its sales documents related to sales to Friedrich.

14. I understand that Friedrich asserted multiple objections to various documents requests of Tower. One of those objections was based upon burden and that the sales documents

were being produced already by Shanghai ELE. While that was one issue raised by Friedrich, it was by no means the only one.

15. At no time during any of my conversations with Friedrich's counsel did I ever suggest that Friedrich refuse to produce any documents. I certainly had no ability to control what Friedrich did in its response to the subpoena.

Tower's Decision to Seek Sanctions

16. From Tower's Motion for Sanctions, one might come away with the view that the motion was the result of the Rule 30(b)(6) deposition of Shanghai ELE. That would not be accurate. On May 22 and 23, 2007, I exchanged a series of email correspondence with Tower's counsel, Larissa Bifano concerning my travel schedule to Hong Kong the next day in preparation for Mr. Bao's deposition on May 31, 2007. On May 23, Ms. Bifano wished me a "safe trip to Hong Kong", and on the early morning of May 24, she sent me an email thanking me for my detailed suggestion on the logistics of how the deposition would be conducted with an interpreter. See Ex. G attached hereto.

17. The next day on May 25, 2007, despite Shanghai ELE's good faith efforts to address any and all of Tower's concerns with Shanghai's discovery responses, Ms. Bifano sent me an email at 10:53 AM EST informing me that Tower intended to file a motion for sanctions against Shanghai ELE at 1:30 PM EST. See Ex. H attached hereto. Of course, Ms. Bifano was aware that I was enroute to Hong Kong on May 25, 2007, and her email was sent to me at 10:53 PM local time in Hong Kong, and demanded a response by 1:30 AM local time in Hong Kong.

18. Shanghai ELE's local counsel in this matter, Mr. Jeffrey Brenner, promptly responded to Ms. Bifano's email and expressed his concerns as to why Tower insisted that its motion must be filed by 1:30 PM EST. See Ex. I attached hereto. I also responded from Hong Kong to Ms. Bifano's email. See Ex. J attached hereto. Tower subsequently agreed to delay filing its motion until Tuesday, May 29, 2007.

19. In Tower's draft motion (see Ex. K attached hereto), it sought a court order

requiring Shanghai ELE to:

A. Supplement its document production and interrogatory responses as requested in Tower's April 30, 2007 letter;

B. Reimburse Tower for its attorneys' fees and costs expend[ed] in preparing and prosecuting this motion; [and]

C. Reimburse Tower for its attorneys' fees and costs expend[ed] in preparing and prosecuting Tower's two prior Motions to Compel in this Court.

Id. at 5-6.

20. On Tuesday, May 29, 2007 at about 3:33 AM local time in Hong Kong time, which was Monday, May 28, 2007 at about 3:23 PM local time in Boston, I responded from Hong Kong by email to Tower's draft motion for contempt and request for sanctions. See Ex. L attached hereto. I explained to Tower's counsel in detail why I believe Tower's motion was completely without merit.

21. Tower did not file its motion for contempt and sanctions on May 29, 2007.

The Rule 30(b)(6) deposition

22. On May 31, 2007, I attended the deposition of Barkley Bao in Hong Kong at the offices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. While it would have been perfectly within our rights to have the deposition taken during normal business hours, counsel for Tower wanted to take the deposition by video conference from Boston. To accommodate Tower's counsel, we agreed to begin the deposition at 8:00 AM local time in Hong Kong, 8:00 PM local time in Boston.

23. Prior to the deposition, I had tried to make sure that everyone was on the same page as to how the simultaneous interpretation would occur. Although not insurmountable, simultaneous interpretation issues add a level of complexity, and it is more efficient for the attorneys to address the issues before the deposition starts. Unfortunately, this process did not go well from the beginning and resulted in a large amount of time being consumed in dealing with

interpretation issues.

24. For example, at the very beginning of the deposition, the interpreter did not interpret everything said in English in the proceeding. See Ex. M, deposition transcript of Barkley Bao (filed under seal) at 4:21, attached hereto.[1]

25. In the first paragraph of the interpretation, the Interpreter interpreted the English word "witness" into a Chinese word that means "notary public". See Ex. M at 5:12-17. When I pointed out this error, Tower's Hong Kong counsel, Mr. Stephen Lo, agreed with me. See Ex. M at 6:13-21. There were numerous such instances that consumed a substantial amount of time required for clearing any mistake or confusion from the interpretation.

26. In addition, from the very beginning of the deposition, Mr. John Cotter, counsel for Tower, tried to go beyond the permissible scope of the deposition, necessitating my objections and instructions.

27. Although the deposition was limited to three hours by the February 5 Order and therefore was scheduled to concluded at 11:00 AM local time in Hong Kong, Shanghai ELE agreed to allow the deposition to continue past the scheduled cut-off time until the deposition was concluded at 12:56 PM.

28. Following the deposition, the parties continued to negotiate how Shanghai ELE could address Tower's concerns with Shanghai ELE's document production. On June 5, 2007, I spoke on the phone with Mr. Cotter and Ms. Bifano and offered to produce additional documents in response to Tower's discovery requests, even though Shanghai ELE maintained, and still maintains, that it has fully complied with Tower's document requests. Mr. Cotter and Ms. Bifano refused that offer unless Shanghai ELE agreed to pay Tower's expenses in connection with its prior motions to compel and agreed to pay for another deposition of Mr. Bao, including

[1] Tower filed the rough draft of Mr. Bao's deposition transcript under seal (see Ex. G to Tower's Motion for Sanctions). Since then, the transcript has been finalized. Accordingly, Shanghai ELE is filing the final version of Mr. Bao's transcript under seal.

Tower's expenses to conduct the deposition. Shanghai ELE refused Tower's demand for payment of its fees in connection with its motion practice.

29. Despite Tower's demand for payment of its costs and fees, Shanghai ELE nonetheless is in the process of preparing the production of the documents that it offered to produce in exchange for Tower's withdrawal of the present motion, even though Shanghai ELE still maintains that it was not required to produce such documents. Such additional documents will be produced, I believe, the week of June 25, 2007.

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 25th day of June, 2007 at Santa Monica, California.

Tony D. Chen