UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | Civil Action No. 06-170S-DLM |

**TOWER'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SHANGHAI ELE'S FAILURE TO COMPLY WITH DISCOVERY ORDERS**

Shanghai ELE's Memorandum in Support of its Objection to Tower's Motion for Sanctions (Dkt. No. 60) ("Objection") promises too little and too late, and repeats the approach Shanghai ELE has used throughout this case to hinder discovery of its contacts with Rhode Island and the United States. The little discovery Shanghai ELE has provided (and the only as a result of Court Orders), are one deposition (during which ELE objected to or evaded most of the questioning), just 413 pages of documents (mostly produced only after this motion was filed), and incomplete interrogatory responses. Unable to obtain straightforward jurisdictional discovery from Shanghai ELE, Tower has had to file motions against Shanghai ELE, and has had to subpoena third parties for documents that also should be in Shanghai ELE's possession.

Shanghai ELE’s lack of cooperation and obstruction of discovery have caused Tower to spend unnecessary time and effort, and support sanctions against Shanghai ELE.

## I. SHANGHAI ELE DOES NOT CONTEST MANY OF THE POINTS RAISED IN TOWER'S MOTION.

Shanghai ELE’s Objection raises extraneous matters and fails to contest the following points:

### A. Shanghai ELE's Rule 30(b)(6) Designee Did Not Testify on the Topics Identified in the Deposition Notice.

Shanghai ELE’s conduct during the deposition, including the designee’s failure to prepare to testify on the 30(b)(6) topics, prevented Tower from obtaining relevant testimony on those 30(b)(6) topics. At the March 15 Hearing the Court expanded the deposition topics of the original December Notice to include not only the web advertised “customer service center in America” but also “questions to explore what predecessors or affiliated and related companies Shanghai ELE may have.” March 15, 2007 Hr’g Tr. 9:10-11. Tower then served a Re-Notice incorporating the expanded topic, and Shanghai ELE did not object prior to the deposition. The deposition transcript, however, shows that Shanghai ELE had little intention of answering questions related to the two topics. For example:

> [BY MR COTTER:]
> [Q.] Mr. Bao, do you have any information about the statement on Shanghai ELE's website concerning a customer service center in America?

MR CHEN: Objection. Vague. Lack of foundation. And as to the form.
BY MR COTTER:
Q. Answer the question, please, Mr. Bao.
A. There's been too much conversation just now so could you repeat the question again, please?
Q. Are you here to testify about a customer support center in America as referenced in Shanghai ELE's website?
A. (Chinese spoken).
MR CHEN: Objection as to the form. Vague. Lack of foundation. Assuming facts not on the record.
BY MR COTTER:
Q. Please answer the question.
A. I have come here to answer questions in this deposition according to the truth. And my understanding is that it's according to what the court has made as the scope in these two areas. Mr. Cotter -- so would Mr. Cotter -- could you ask more specific questions, please? (Tower's Motion for Sanctions (Dkt. No. 56), Ex. G. at 31:9-32:4)).

After asking Mr. Bao five times whether or not he was present to testify about Shanghai ELE's customer support center in America, Mr. Bao finally indicated that he was. Id. at 31:9-34:1. However, throughout the deposition Mr. Bao, repeatedly failed to answer questions related to Shanghai ELE's customer support center.

Additionally, although Shanghai ELE had six weeks to prepare for the deposition, Mr. Bao was not familiar with the court-directed deposition topic of "predecessors and affiliated or related companies." (March 16 Discovery Order, Dkt. No. 49).

BY MR COTTER:
Q. Are you also here to testify about Shanghai ELE's predecessors and affiliated or related companies?

> A. Could you explain to me exactly what you mean by Shanghai ELE's predecessors and affiliated or related companies? (Ex. G. at 34:3-7).

Thus, Tower was unable to obtain information from Shanghai ELE about the 30(b)(6) topics because Shanghai ELE evaded or objected to questions relevant to the topics, and because the designated witness was unprepared to testify on the topics.

**B. Shanghai ELE Has Reason to Believe That The Home Depot Distributes Shanghai ELE LCDIs as a Component of Air Conditioners Throughout the United States.**

Shanghai ELE has not denied that it has reason to believe that The Home Depot distributes products with Shanghai ELE LCDIs, nor has Shanghai ELE denied that it has a business relationship with The Home Depot.

**C. Shanghai ELE Sells LCDIs to Midea, Frigidaire and Samsung.**

Tower repeatedly asked Shanghai ELE to confirm that it sells its LCDIs to air conditioner manufacturers Midea America (“Midea”), Frigidaire, and Samsung. Shanghai ELE does not deny that it sells LCDIs to Midea, Frigidaire and Samsung and that it has reason to believe Shanghai ELE LCDIs are sold in the United States as a component part of those manufacturers’ products.

**II. DESPITE SHANGHAI ELE'S CONTENTION THAT IT HAS COMPLIED WITH THE COURT’S MARCH 16 DISCOVERY ORDER, EVIDENCE SUGGESTS OTHERWISE.**

Shanghai ELE seeks amnesty because it produced documents on June 27, 2007, over six months after Tower's original requests

were served and two days after Shanghai ELE's Objection to this Motion was due. Not only are these documents too late to save any effort by Tower to get them produced, but the documents still leave Shanghai ELE in noncompliance with the March 16 Discovery Order. While the newly produced documents include purchase orders and invoices for LCDIs sold to Haier, Fedders Corporation, Daewoo, and LG, they do not include any documents related to Frigidaire, Midea or Samsung, all of which are responsive to Interrogatory Nos. 1 and 2 and Request for Production Nos. 3 and 4.

In addition, although Shanghai ELE has produced limited documents from customer Friedrich and certification body Underwriters Laboratories, as Tower now knows from production by these third parties, Shanghai ELE has not produced all of its responsive documents. As is its pattern, instead of fully responding when asked for discovery, Shanghai ELE again engages in a game of providing only select information and requiring Tower to ask the Court serially for relief. Shanghai ELE's tactics not only prevent Tower from obtaining necessary information for Tower to prove its case, but also require Tower to expend unreasonable time, money and effort to obtain information that the Federal Rules and this Court require it to produce.

## III. SHANGHAI ELE PREVENTED TOWER FROM TAKING A MEANINGFUL 30(b)(6) DEPOSITION OF SHANGHAI ELE

### A. Shanghai ELE's Conduct at the Deposition Does Not Comply with Rhode Island's Proscribed Deposition Conduct

This Court and the Rhode Island Supreme Court have proscribed conditions for the conduct of depositions including:

> 1. Counsel for the deponent shall refrain from gratuitous comments and directing the deponent in regard to times, dates, documents, testimony, and the like.
>
> 2. Counsel shall refrain from cuing the deponent by objecting in any manner other than stating an objection for the record followed by a word or two describing the legal basis for the objection.
>
> 3. Counsel shall refrain from directing the deponent not to answer any questions submitted unless the question calls for privileged information.
>
> 4. Counsel shall refrain from dialogue on the record during the course of the deposition. Southgate v. Vermont Mutual Ins. Co., 2007 WL 1813547 slip op. at *5 (D. R.I. June 21, 2007) citing Kelvey v. Coughlin, 625 A.2d 775, 777 (1993).

The record shows that Shanghai ELE did not follow these rules, and instead made gratuitous comments, lengthy objections, engaged in lengthy dialogue, and directed the witness not to answer questions within the scope of the 30(b)(6) deposition that did not call for privileged material.

Shanghai ELE claims that its instructions not to answer were warranted, as all the questions were outside of the scope of the Court's orders. (See Objection at 9-12). However, these

questions were either questions relating to Shanghai ELE's affiliated or related companies or background questions.

**B. Shanghai ELE's Improper Instructions Not to Answer**

**1. Shanghai ELE Shareholder Identities**

The deponent refused to answer Tower's question related to the shareholders of Shanghai ELE because of an objection that the question was outside scope of deposition. (Ex. G at 35:23-25). However, the identities of the shareholders of Shanghai ELE are integral to the ownership of Shanghai ELE.

**2. The Previous Employment of Mr. Zhang and Mr. Bao**

The deponent refused to answer Tower's question related to Mr. Zhang's previous employment. This question was directly related to Shanghai ELE's predecessors and affiliated and related companies. At the March 15 Hearing, Shanghai ELE's counsel mentioned that his understanding was that "there are other companies, then one of the owners of that company now is the owner of Shanghai ELE [Mr. Zhang]". March 15, 2007 Hr'g Tr. 3:21-23. As such, Mr. Zhang's previous employer may well have been a predecessor of Shanghai ELE.

Additionally, Mr. Bao was asked about his previous employment and was instructed not to answer. This question is relevant to Shanghai ELE's predecessors because Mr. Bao also previously could have been employed by a predecessor of Shanghai ELE.

**3. Background Questions**

Mr. Bao was asked several questions about his position as marketing manager at Shanghai ELE, with whom he dealt as marketing manager, and where he performed his duties. At a minimum, those questions go to the background of any witness testifying on website content and the marketing of the company. Shanghai ELE's attorney objected to these background questions and noted several times on the record that if the question was "outside the scope of today's deposition topics, [he] would object and instruct the witness not to answer." Tower's Motion, Ex. G at 15:4-6, 14-17.

However, the examining party's questions are not limited to the strict language listed in the 30(b)(6) notice. See Detoy v. City and County of San Francisco, 196 F.R.D. 362, 365-67 (N.D. Cal. 2000) (matters described in the 30(b)(6) notice are "the minimum about which the witness must be prepared to testify, not the maximum"). While Shanghai ELE makes much of the "limited" nature of the deposition, the Court only limited the 30(b)(6) topics and limited the surrounding questioning to areas of which the witness had knowledge. (See January 22, 2007 Hr'g Tr. at 26:17-21). The Court never precluded questioning on matters that were well within the witness's knowledge, such as the witness's employment and marketing role.

In any case, when Tower attempted to ask questions using

the language of the 30(b)(6) notice and about the witness's job, counsel engaged in lengthy objections and the witness stonewalled. (See e.g. Ex. G at 31:9-32:4; 50:15-54:12; 73:9-76:16.) Effectively, Tower was not permitted to obtain answers for these relevant questions and Shanghai ELE was able again to hide relevant information from Tower. Therefore, Shanghai ELE's instructions not to answer background questions were inappropriate and sanctionable.

## IV. SHANGHAI ELE MISCHARACTERIZES ITS MOTION FOR PROTECTIVE ORDER

Shanghai ELE Objection rewrites the history of this action to avoid sanctions. For example, Shanghai ELE's Motion for Protective Order (Dkt. No. 22) asserted that Tower's 30(b)(6) notice went beyond the scope of jurisdictional discovery, but Shanghai ELE now argues that it sought a protective order because the deposition might be held in the United States[1]. As another example, Shanghai ELE's Objection claims that the Hong Kong location was not covered by the February 5 Order (Dkt. No. 40); that Tower moved to modify, not compel compliance with, the original order; and that Shanghai ELE never refused to have the deposition in Hong Kong. In fact, the February 5 Order states

[1]Shanghai ELE's complaint about having to travel "halfway around the world" (Objection at 5) should be viewed in light the recent filing of Shanghai ELE's own patent infringement lawsuit in the California. Shanghai ELE Mfg. Corp. v. Technology Research Corp. No. C.D. Cal. CV-07 1102.

the deposition shall occur in the People's Republic of China (which includes Hong Kong) and Hong Kong was discussed at the January 22, 2007 hearing as a possible location.

Additionally, with respect to the travel permit, the Court required Shanghai ELE to keep Tower updated on any progress Shanghai ELE was making. If Mr. Bao did encounter the difficulties Shanghai ELE claims, all Shanghai ELE had to do was to keep Tower informed on Mr. Bao's progress; but it did not[2].

## V. SHANGHAI ELE'S DISCOVERY PRACTICES NECESSITATED THIRD PARTY DISCOVERY

Shanghai ELE claims in its Objection that Tower is seeking sanctions because Shanghai ELE interfered with Tower's third party discovery. (Objection at 1, 17-20). However, Tower merely seeks from Shanghai ELE the cost of obtaining from third parties information that Shanghai ELE could have and should have provided to Tower months ago. Because Shanghai ELE has refused to provide Tower with the discovery requested or has failed to fully disclose information, Tower had to obtain the relevant documents from third parties. For example, Friedrich produced over 2,000 pages of relevant documents and Underwriters Laboratories, Inc. ("UL") produced almost 800 pages of relevant documents. Therefore, Tower is entitled to costs of third party

---

[2] The Court ordered Shanghai ELE to provide a status report on May 1, 2007. March 15, 2007 Hr'g Tr. 53:7-8. However, Shanghai ELE did not serve or file any such report.

discovery because it should not have needed to resort to subpoenas and motion practice to obtain from third parties jurisdictional discovery that should come directly from Shanghai ELE.

**VI. CONCLUSION**

As Shanghai ELE has caused Tower to file three motions to compel on which Tower has succeeded either in whole or in part, Tower requests compensation for its time and effort expended in prosecuting those motions. (Federal Rule 37 (a)(4)(A)).

Shanghai ELE should be sanctioned under Rule 37(b) for failure to comply with the February 5 Court Order, which failure forced Tower to file a Motion to Compel Compliance (Dkt. No. 44). Shanghai ELE further should be sanctioned for its failure to comply with the March 16 Discovery Order and the March 16 Order granting Tower's Motion to Compel Compliance (Dkt No. 50).

Tower also requests sanctions under Rule 37(b)(1) for Shanghai ELE's failure to answer questions in the Rule 30(b)(6) deposition and for failure to provide discovery under 37(b)(2).

Additionally, Tower requests an order finding personal jurisdiction over Shanghai ELE. Insurance Corp. of Ireland, Ltd. v. Compaignie des Bauxutes de Guinee, 456 U.S. 694 (1982).

Dated: July 10, 2007

Respectfully submitted,

PLAINTIFF
TOWER MANUFACTURING CORP.,

By its attorneys:

s/ Bruce W. Gladstone________

Bruce W. Gladstone (#2643)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
Tel.: 401.331.5700
Fax: 401.331.5787
E-mail: bgladstone@cm-law.com
John J. Cotter (*pro hac vice*)
Larissa S. Bifano (*pro hac vice*)
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
E-mail: john.cotter@klgates.com
E-mail: larissa.bifano@klgates.com
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel.: 617.261.3100
Fax: 617.261.3175

## CERTIFICATE OF SERVICE

I, Larissa Bifano, certify that on July 10, 2007, a true and correct copy of TOWER'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SHANGHAI ELE'S FAILURE TO COMPLY WITH DISCOVERY ORDERS was served upon the attached Service List in the manner indicated.

s/ Larissa Bifano

______________________________

## SERVICE LIST

| | | |
|---|---|---|
| Jeffrey S. Brenner<br>**Nixon Peabody LLP**<br>One Citizens Plaza<br>Providence, RI 02903 | ECF | Local Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Tony D. Chen<br>**Bingham McCutchen LLP**<br>1620 26th Street, Suite 4000N<br>Santa Monica, CA 90404-4060 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Victor H. Polk, Jr.<br>Lawrence T. Stanley, Jr.<br>**Bingham McCutchen LLP**<br>150 Federal Street<br>Boston, MA 02110 | First Class Mail | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Bruce W. Gladstone<br>**Cameron & Mittleman LLP**<br>56 Exchange Terrace<br>Providence, RI 02903 | ECF | Local Counsel for Plaintiff,<br>**Tower Manufacturing Corp.** |