**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

TOWER MANUFACTURING CORPORATION,

Plaintiff,

v.

SHANGHAI ELE MANUFACTURING CORPORATION,

Defendant.

Civil Action No. CA 06 170S

**DEFENDANT SHANGHAI ELE MANUFACTURING CORPORATION'S**
**<u>EMERGENCY MOTION FOR CLARIFICATION</u>**

Defendant Shanghai ELE Manufacturing Corporation ("Shanghai ELE") respectfully moves for clarification of the Court's August 10, 2007 Memorandum and Order (the "Order") (attached hereto as Exhibit A) on Plaintiff Tower Manufacturing Corporation's ("Tower") Motion for Sanctions. As grounds for this motion, Shanghai ELE states as follows:

1. On June 6, 2007, Tower filed a Motion for Sanctions "relate[d] to three broad categories of discovery-related conduct: (1) Shanghai ELE's conduct relating to the deposition of Shanghai ELE's Rule 30(b)(6) witness; (2) Shanghai ELE's responses to Tower's First Set of Interrogatories and First Request for Production of Documents ('Discovery Requests'); and (3) Shanghai ELE's alleged involvement in third party discovery." Order at 2.

2. On August 10, 2007, this Court granted in part and denied in part Tower's Motion for Sanctions. As part of the sanctions allowed, the Court granted Tower "permission to take a further deposition of Mr. Bao, but the deposition shall be by written questions pursuant to Rule 31(a) and shall be limited to the same two matters which the Court previously authorized." *Id.*

The Court further held that "because the need for a further deposition is partly attributable to sanctionable conduct of Shanghai ELE's counsel and Rule 30(b)(6) witness, pursuant to Rule 30(d)(3) and/or Rule 37(b)(2), Shanghai ELE shall pay Tower's attorney's fees for preparing the questions up to a maximum of three hours time for one attorney … [and] Shanghai ELE shall pay the costs incurred by Tower in having the questions translated into Chinese." ***Id.*** at 23-24.[1]

3. On September 10, 2007, Tower served a Notice of Taking Rule 31 Deposition Upon Written Questions (the "Notice") (attached hereto as Exhibit B). The Notice includes 141 questions and four deposition exhibits (with accompanying Chinese translations) and provides that the deposition upon written questions of Mr. Bao will be taken before an available court reporter at the offices of Tower's counsel in ***Hong Kong***. Notice at 1.

4. On September 11, 2007, Tower sent a follow up letter stating that the Order requires that "the deposition shall occur at a mutually convenient date on or before 30 days after service of the Deposition Notice. Please advise when Mr. Bao will be available for the deposition in Hong Kong." Letter from Bifano, dated September 11, 2007 (Attached hereto as Exhibit C).

5. Contrary to Tower's interpretation of the Order, Shanghai ELE does not believe that the Court intended Mr. Bao to return to Hong Kong to sit for a written question deposition, as opposed to answering the questions in writing. First, nowhere in the Order did the Court suggest that Mr. Bao must go through the process of applying for another travel permit to Hong Kong -- a process which the Court itself labeled as "cumbersome." Order at 6 ("The Court was also unaware at that time that the process of obtaining permission for Shanghai ELE's

[1] The Court also ordered Shanghai ELE to "pay Tower one-half of the cost of the Rule 30(b)(6) deposition which was conducted on June 1, 2007, including one-half of the attorney's fees which are attributed to the services of Attorney John S. Cotter during that deposition." Order at 23. Tower submitted its statement of such costs and fees on August 27, 2007, which Shanghai ELE promptly paid.

representative to travel to Hong Kong is as cumbersome as it has now been shown to be."); ***see also*** Declaration of Barkley Bao in Response to Tower's Motion for Sanctions (Doc. #61) ("Bao Decl.") ¶¶ 5-13 (detailing multi-step process to obtain travel permit to Hong Kong to attend deposition).

6. Second, the deadlines set by the Court do not contemplate a strict interpretation of Rule 31. The Court instructed that "[t]he written questions shall be propounded within thirty days of the date of this order, and they shall be answered by Mr. Bao within thirty days of service of the questions upon Shanghai ELE's counsel." Order at 23. However, if the Court intended to apply a strict construction of Rule 31, as Tower suggests, then this "thirty-day" window for answering the deposition questions would not be consistent with Rule 31. Rule 31 provides:

> Within 14 days after the notice and written questions are served, a party may serve cross questions upon all other parties. Within 7 days after being served with cross questions, a party may serve redirect questions upon all other parties. Within 7 days after being served with redirect questions, a party may serve recross questions upon all other parties.

Fed. R. Civ. P. 31(a)(4). In view of Fed. R. Civ. P. 6 (which provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation), it would not be possible for Mr. Bao to answer the written deposition questions within thirty days and still allow the time provided under the rules for serving cross, redirect, and recross questions -- none of which were mentioned by the Order.[2]

7. Third, the deadlines set by the Court imply that the Court did not envision Mr.

[2] Alternatively, the Court may have contemplated that the parties comply with the procedures set forth in Rule 31 concerning cross, redirect, and recross, and then measure the time from which Mr. Bao must respond to the written deposition questions from the date that all of the questions are compiled. However, Shanghai ELE does not believe the Court intended such an interpretation, as that interpretation would result in the questions not being answered until more than *sixty days* from the date of the Order.

Bao returning to Hong Kong, because if Mr. Bao was required to go through the cumbersome process of reapplying for a travel permit to Hong Kong, there is no guarantee that he would receive such a permit within 30 days. As such, if the Court intended for Mr. Bao to return to Hong Kong to answer the written questions, it likely would have provided Mr. Bao more time to answer the questions.

8. Fourth, the Court-ordered sanctions are not consistent with Tower's interpretation that Mr. Bao must return to Hong Kong to answer the written questions. Specifically, the Court ordered that because the need for a further deposition was partly attributable to sanctionable conduct of Shanghai ELE, Shanghai ELE must pay Tower's attorney's fees for preparing the written questions up to a maximum of three hours time for one attorney and Shanghai ELE must pay the costs incurred by Tower in having the questions translated into Chinese. Order at 23-24. Notably, the Court did not order that Shanghai ELE pay *any* expenses concerning reconvening a deposition in Hong Kong -- which the Court likely would have done if it envisioned the parties traveling back to Hong Kong and attending a deposition in person.

9. Contrary to Tower's interpretation, Shanghai ELE believes that the Court envisioned Tower serving written questions and within thirty days of such service, Mr. Bao serving written answers and providing a sworn verification for his answers -- *i.e.*, more akin to the process of responding to written interrogatories. Indeed, the Court even referred to the written deposition questions as "interrogatories" in a footnote. Order at 23, n. 22 ("Tower, of course, is not required to avail itself of this option and may elect not to propound such written interrogatories."). Such an approach would provide the answers that Tower seeks, avoid the time and expense of having to go through the cumbersome process of returning to Hong Kong to answer the questions, and would alleviate each of the problems the Court noted that the written

questions were intended to avoid. Order at 23 ("This method of discovery should avoid the problems which manifested themselves at the June 1, 2007, deposition because of disagreements regarding translation, definition of terms, and the scope of the inquiry.").

10. Accordingly, Shanghai ELE seeks clarification whether the Court intended for Mr. Bao to return to Hong Kong to answer the written questions before a court reporter.

WHEREFORE, Shanghai ELE respectfully requests that the Court clarify its August 10, 2007 Order as articulated herein. Shanghai ELE also requests that this Court grant such other and further relief that this Court deems just and proper.

Dated: September 14, 2007

Respectfully submitted

SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
Tony D. Chen (*Pro Hac Vice*)
Email: tony.chen@bingham.com
Bingham McCutchen LLP
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Victor H. Polk, Jr. (*Pro Hac Vice*)
Lawrence T. Stanley, Jr. (*Pro Hac Vice*)
Bingham McCutchen LLP

150 Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I hereby certify that on September 14, 2007, counsel for Shanghai ELE Manufacturing Corporation, Victor H. Polk, Jr. and Lawrence T. Stanley, Jr., conferred in good faith with counsel for Tower Manufacturing Corporation, John J. Cotter and Larissa S. Bifano, but the parties were unable to resolve the issues presented in this Motion.

/s/ Lawrence T. Stanley, Jr.
Lawrence T. Stanley, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 14, 2007.

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)