# EXHIBIT A

## TO SHANGHAI ELE MANUFACTURING CORPORATION'S EMERGENCY MOTION FOR CLARIFICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TOWER MANUFACTURING CORPORATION, Plaintiff, | : | |
| v. | : | CA 06-170 S |
| SHANGHAI ELE MANUFACTURING CORPORATION, Defendant. | : | |

**MEMORANDUM AND ORDER**
**RE PLAINTIFF'S MOTION FOR SANCTIONS**

Before the Court is Tower's Motion for Sanctions for Shanghai ELE's Failure to Comply with Discovery Orders (Document ("Doc.") #56) ("Motion for Sanctions" or "Motion").[1] A hearing was conducted on July 24, 2007. For the reasons stated herein, the Motion is granted in part and denied in part.

Plaintiff Tower Manufacturing Corporation ("Plaintiff" or

---

[1] The signatures of Tower's counsel on the Motion, the memorandum submitted in support of the Motion, and Tower's reply memorandum do not comply with the Court's Administrative Procedures for Electronic Case Filing. See Administrative Order No. 2006-01 (adopting attached "Administrative Procedures for Electronic Case Filing"). Paragraph 9 of that document provides in relevant part that:

> (a) .... All Electronically Filed documents must include a signature block and must set forth the attorney's name, bar registration number, address, telephone number, fax number and e-mail address. The name of the ECF user under whose login and password the document is submitted must be preceded by a "/s/" and typed in the space where the signature would otherwise appear.
>
> ....
>
> (c) The filer of any document requiring more than one signature (e.g., pleadings filed by pro hac vice lawyers, stipulations, joint status reports) must list thereon all the names of other signatories by means of a "/s/" for each.

Administrative Procedures for Electronic Case Filing ¶ 9; see also Administrative Order No. 2006-01.

"Tower") alleges that Defendant Shanghai ELE Manufacturing Corporation ("Defendant" or "Shanghai ELE") has "elected to stonewall discovery and ignore the Court's discovery Orders issued after Tower's two prior motions to compel." Memorandum in Support of Tower's Motion for Sanctions for Shanghai ELE's Failure to Comply with Discovery Orders ("Tower Mem.") at 1. Tower claims "Shanghai ELE's tactics have forced Tower to defend one discovery motion and prosecute three others in two jurisdictions, just to attempt (unsuccessfully) to obtain from Shanghai ELE the jurisdictional discovery to which Tower is entitled." Id. at 8. Opining that filing another motion to compel would seem to be pointless, Tower states that it has little choice but to move for Rule 37 sanctions. See id. at 1.

## I. Alleged Basis for Sanctions

In general, Tower's complaints relate to three broad categories of discovery-related conduct: (1) Shanghai ELE's conduct relating to the deposition of Shanghai ELE's Rule 30(b)(6) witness; (2) Shanghai ELE's responses to Tower's First Set of Interrogatories and First Request for Production of Documents ("Discovery Requests"); and (3) Shanghai ELE's alleged involvement in third party discovery. The Court discusses Tower's allegations as they relate to each category.

### A. The Rule 30(b)(6) Deposition

#### 1. Request for a Protective Order

Tower initially cites the fact that Shanghai ELE sought to avoid submitting to a Rule 30(b)(6) deposition and that the Court denied Shanghai ELE's motion for a protective order. See id. at 2; see also Order Denying Defendant Shanghai ELE Manufacturing Corporation's Motion for a Protective Order (Doc. #40) ("Order of 2/5/07"). Tower implies that Shanghai ELE's action was unjustified and that it should be weighed in favor of granting the instant Motion. See Tower Mem. at 2, 8. However, Tower

Case 1:06-cv-00170-S-DLM Document 70 Filed 08/10/2007 Page 3 of 24

noticed the deposition for Boston, Massachusetts, see Memorandum in Support of Defendant's Motion for a Protective Order ("Defendant's Protective Order Mem."), Exhibit ("Ex.") A (Notice of Rule 30(b)(6) Deposition of Shanghai ELE Mfg. Corp.), and stated in a letter which accompanied the notice that it was "willing to discuss a mutually convenient **U.S. location** ...," Plaintiff Tower's Memorandum in Support of Tower's Objection to Defendant's Motion for Protective Order (Doc. #26), Ex. C (Letter from Bifano to Chen of 12/14/06)(bold added). As this still would have required Shanghai ELE's deponent to travel almost half way around the world, the Court declines to fault Shanghai ELE for seeking a protective order.[2]

While it is true that Shanghai ELE sought to preclude the deposition entirely, see Defendant's Protective Order Mem. at 6, it still obtained significant relief as a result of the Court's order that the deposition "be conducted via videoconference at a mutually convenient time ... in the People's Republic of China, in a location as close as practicable to Shanghai," Order of 2/5/07 at 1. Tower does not appear to contend that it communicated to Shanghai ELE prior to the January 22, 2007, hearing on the motion for a protective order that it was willing to depose Shanghai ELE's representative at a location in China.[3] Accordingly, to the extent that Tower contends that Shanghai

---

[2] Even allowing for the possibility that Tower would have been willing to conduct the deposition in Hawaii or Alaska, either locale would have involved a very long journey for Shanghai ELE's representative.

[3] At the January 22, 2007, hearing, the Court asked Shanghai ELE's counsel whether the deposition could be conducted utilizing videoconferencing. See Transcript of 1/22/07 Hearing ("1/22/07 Tr.") at 14. Immediately thereafter, Tower's counsel indicated that his law firm had "such facilities in our offices in China. I know it's a good distance but in Beijing and Hong Kong we have those facilities, we could use them." Id. at 15.

ELE's action in seeking a protective order weighs in favor of granting the instant Motion, such argument is unpersuasive.

### 2. Compliance with Order of 2/5/07

Tower next states that Shanghai ELE refused to appear in Hong Kong for the deposition and that Tower moved to compel compliance with the Order of 2/5/07. See Tower Mem. at 2. Responding to this allegation, Shanghai ELE initially appears to claim that it did not refuse to travel to Hong Kong.[4] See Memorandum of Law in Response to Tower's Motion for Sanctions ("Shanghai ELE Mem.") at 6. The record does not support this claim. Shanghai ELE's counsel stated in a February 14, 2007, letter to Tower's counsel that "[s]hould you move for a court order to have the deposition taken in Hong Kong, we will oppose your motion because it will place an undue burden on my client while other alternative discovery means exist." Motion to Compel Shanghai ELE's Compliance with the Court's February 5, 2007[,] Order (Doc. #44) ("Motion to Compel Compliance with 2/5/07 Order"), Ex. F (Letter from Chen to Bifano of 2/14/07) at 2. The letter identifies the undue or "extra burden" as "travel restrictions imposed by the Chinese authorities," id. at 1, and complains that the legal issues which made it difficult for the

---

[4] Shanghai ELE states:

> While the Court later agreed that the deposition could proceed in Hong Kong, given that Tower's counsel drafted the February 5 Order, and that the February 5 Order provided that the deposition was to occur in the People's Republic of China as close as practicable to Shanghai, **even if defendant refused to travel to Hong Kong -- which it did not** -- any refusal to obtain the necessary travel permits and visas could not be considered a failure to comply with the February 5 Order, because the Court did not order the deposition to occur in Hong Kong and did not contemplate Shanghai ELE having to apply for a travel visa to attend the deposition.

Memorandum of Law in Response to Tower's Motion for Sanctions ("Shanghai ELE Mem.") at 6 (bold added).

deposition to be conducted in Shanghai or Beijing should have been raised by Tower at the January 22, 2007, hearing, see id. Had that been done, the letter continues, Shanghai ELE could have addressed them at that time and advised the Court "of the extra burden for taking the deposition in Hong Kong and the Court may have considered an alternative solution to the deposition." Id.

Given that the Court's Order of 2/5/07 stated that the deposition is to be conducted "in the People's Republic of China, in a location as close as practical to Shanghai," Order of 2/5/07 at 1, and that it was subsequently determined that conducting the deposition in Mainland China[5] was problematic,[6] Shanghai ELE's refusal to agree to the deposition being conducted in Hong Kong absent a further court order was not justified and violated the Order of 2/5/07. Hong Kong is part of the People's Republic of China ("PRC"). Shanghai ELE's insistence that Hong Kong was "not a mutually convenient place ...," Motion to Compel Compliance

---

[5] The Court uses the term Mainland China to refer to the area currently administered by the People's Republic of China ("PRC") but excluding the two special administrative regions ("SARs") administered by the PRC: Hong Kong and Macau. See U.S. Department of State, Bureau of Consular Affairs web site: http://travel.state.gov/law/info/judicial/judicial_650.html (stating that "Hong Kong became a Special Administrative Region (SAR) of the People's Republic of China (PRC) on July 1, 1997[,] in accordance with the 1984 Sino-British Joint Declaration."); http://travel.state.gov/travel/cis_pa_tw/cis/cis_955.html (stating that "Macau, formerly a Chinese territory under Portuguese administration, became a Special Administrative Region (SAR) of the People's Republic of China (PRC) on December 20, 1999 ....").

[6] According to information obtained on February 15, 2007, from a web site managed by the Bureau of Consular Affairs, U.S. Department of State (http://travel.state.gov/law/info/judicial/judicial_694.html?css=print): "Taking evidence in China for use in foreign courts is problematic. China does not recognize the right of persons to take depositions, and any effort to do so could result in the detention and/or arrest of U.S. participants." Motion to Compel Shanghai ELE's Compliance with the Court's February 5, 2007[,] Order (Doc. #44) ("Motion to Compel Compliance with 2/5/07 Order"), Ex. C (State Department Circular: "Obtaining Evidence in China") at 3.

with Order of 2/5/07, Ex. F at 1, when Shanghai ELE knew that because of "legal issues," id., there was virtually no other location within the PRC where the deposition could be conducted was unreasonable.[7]

The seriousness of Shanghai ELE's refusal to comply with this aspect of the Order of 2/5/07 is, however, tempered by the fact that the parties and the Court were not aware at the January 22, 2007, hearing that conducting the deposition in virtually any Chinese city other than Hong Kong was not feasible. The Court was also unaware at that time that the process of obtaining permission for Shanghai ELE's representative to travel to Hong Kong is as cumbersome as it has now been shown to be. See Declaration of Barkley Bao in Response to Tower's Motion for Sanctions (Doc. #61) ("Bao Decl.") ¶¶ 5-13 (detailing multi-step process which requires the applicant to obtain and submit nine separate documents). Shanghai ELE's counsel's apparent desire to make the Court aware of the difficulty posed for his client in conducting the deposition in Hong Kong, see Motion to Compel Compliance with Order of 2/5/07, Ex. F, is at least understandable and mitigates the violation. Less excusable was counsel's attempt to reargue the question of whether Tower should be able to take the Rule 30(b)(6) deposition, a matter upon which the Court had already ruled, see Transcript of 3/15/07 Hearing

---

[7] The Hague Service Convention, the Hague Evidence Convention, and the Hague Legalization Convention remain in effect in Hong Kong and depositions may be conducted there. See http://travel.state.gov/law/info/judicial/judicial_650.html at 1-2. This contrasts with the rest of Mainland China. See Motion to Compel Compliance with 2/5/07 Order, Ex. C at 3 ("Given China's declaration on accession to the Hague Convention that it does not consider itself bound by Articles 16-22 of Chapter II of the Convention, China could well deem taking depositions by American attorneys or other persons in China, as a violation of China's judicial sovereignty. Such action could result in the arrest, detention, expulsion, or deportation of the American attorneys and other participants.").

("3/15/07 Tr.") at 45-46 (noting that the Court had ruled upon that matter and that the "ruling stands"). Nevertheless, considering all the circumstances, the Court does not find that Shanghai ELE's violation of the Order of 2/5/07 (by refusing to appear in Hong Kong) warrants imposition of any sanction.

**3. Order of 3/16/07 Re Compliance**

Tower also complains that, notwithstanding the Court's March 16, 2007, order that Shanghai ELE move expeditiously in obtaining permission for its Rule 30(b)(6) representative to travel to Hong Kong, Shanghai ELE waited a month before applying for a permit to travel. See Tower Mem. at 2 (citing Ex. A (e-mail from Chen to Bifano of 4/20/07); see also Order Granting Motion to Compel Compliance (Doc. #50) ("Order of 3/16/07 Re Compliance") at 1. In response, Shanghai ELE has submitted a declaration from its Rule 30(b)(6) witness, Barkley Bao ("Mr. Bao"), which explains the efforts he made to comply with the Order of 3/16/07 Re Compliance after receiving a translation of it on March 19, 2007. See Bao Decl. ¶¶ 3, 6-14. Those efforts included: traveling back to his hometown province of Anhui to apply for a "personal" travel visa, where he was advised that it would take two to three months to complete the application process and that there was no guarantee the visa would be granted, see id. ¶¶ 6-7; seeking assistance thereafter from an intermediary organization which specializes in helping travelers obtain "business" travel visas to Hong Kong, see id. ¶¶ 7-8; and lastly obtaining certified or notarized copies of nine documents in order to submit his application for a "business" travel visa to Hong Kong, see id. ¶ 8.

The Court is satisfied that Shanghai ELE has adequately explained the delay in the submission of Mr. Bao's application for permission to travel to Hong Kong. Accordingly, the Court finds that the delay is a not a reason for imposition of any

sanction upon Shanghai ELE.

To the extent that this request is also based on an alleged failure by Shanghai ELE to keep Tower informed of the progress in obtaining permission for its Rule 30(b)(6) witness to obtain travel documents, the Court is satisfied that the April 20, 2007, e-mail from Mr. Chen to Ms. Bifano, while tardy, satisfies at least minimally this requirement. See Tower Mem., Ex. A. With regard to the alleged failure of Shanghai ELE to provide a status report on May 1, 2007, see Tower's Reply in Support of Motion for Sanctions for Shanghai ELE's Failure to Comply with Discovery Orders (Doc. #66) ("Tower Reply") at 10 n.2, the Court imposed this responsibility on both parties as reflected in the Order of 3/16/07 Re Compliance:

> If permission to travel to some location for the purpose of the Rule 30(b)(6) deposition has not been obtained by Defendant by May 1, 2007, counsel are directed to notify the Court of this fact by letter. The Court will then schedule a telephone conference with counsel to discuss the matter.

Order of 3/16/07 Re Compliance at 2. While only Shanghai ELE would know whether permission had been obtained, the Court deliberately worded the Order as above so as to give Tower the ability to bring to the Court's attention that such permission had not been obtained as of May 1, 2007. Apparently, Tower chose not to avail itself of this option.

In short, the Court finds that Shanghai ELE's compliance with the Order of 3/16/07 Re Compliance was adequate. Tower's request for sanctions based on alleged non-compliance is denied.

**4. Conduct at the Deposition**

Turning now to the deposition itself, Tower complains that:

> Because of lengthy interruptions by Shanghai ELE's

> counsel[8] (Shanghai ELE's counsel spoke for 31.75% of the deposition[9]), instructions not to answer[], stonewalling by the witness[], the witness's lack of knowledge of the 30(b)(6) deposition topics[], and numerous alleged translation problems,[] Tower was unable to obtain information from the witness on the two deposition topics, even though Shanghai ELE extended the deposition beyond the three hour limit proposed by the Court.[]

Tower Mem. at 6-7.

**a. Counsel's Conduct**

Shanghai ELE contends that its counsel did not obstruct the taking of the deposition. See Shanghai ELE Mem. at 8-14. With regard to the instructions not to answer certain questions, Shanghai ELE relies upon Fed. R. Civ. P. 30(d)(1) which provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Id. at 9 (quoting Fed. R. Civ. P. 30(d)(1)) (alteration in original). Shanghai ELE maintains that its counsel "instructed Bao not to answer questions which exceeded the scope of the multiple Orders already entered in this case, which expressly defined the scope of the 30(b)(6) deposition." Id. at 10. Shanghai ELE further notes that the Court at the January 22, 2007, hearing had stressed that the deposition which was being authorized was a "limited 30(b)(6) deposition ...," id.

---

[8] According to Tower: "Shanghai ELE's counsel engaged in speaking objections, colloquies and coaching the witness throughout the deposition, consuming 635 lines out of 2,000 lines of the first 80 pages of the 82 page draft deposition transcript (Ex G.) used for this analysis." Tower Mem. at 6 n.2. Shanghai ELE has not disputed these numbers.

[9] Tower states: "For comparison purposes, the witness provided answers to Tower's questioning attorney for 217 lines, the questioning attorney for Tower spoke 574 lines, Tower's local Hong Kong attorney for 54 lines, the interpreter spoke for 118 lines, the videographer spoke for 22 lines, and the court reporter spoke for 7 lines." Tower Mem. at 6 n.3. Shanghai ELE has not challenged this statement.

Case 1:06-cv-00170-S-DLM Document 70 Filed 08/10/2007 Page 10 of 24

(quoting Transcript of 1/22/07 Hearing ("1/22/07 Tr.") at 25-26), and specifically limited to the topic identified in Schedule A to the Notice of Deposition,[10] see id.

At the deposition, Tower's counsel described the questions which had prompted the instruction not to answer as "background questions and very standard in any deposition of any scope." Declaration of Tony D. Chen in Support of Defendant's Response to Tower's Motion for Sanctions (Doc. #62) ("Chen Decl."), Ex. M (Transcript of Videotaped Deposition) at 23.[11] In most circumstances, the Court would be inclined to agree, and it would have no difficulty faulting Shanghai ELE's counsel for being too quick to interpose such instruction and for not allowing Tower's counsel some reasonable latitude, especially at the very outset of the deposition. Here, however, Tower asks the Court to sanction Shanghai ELE by making certain factual findings, including that "Mr. Bao performed his duties as Shanghai ELE's marketing manager in locations other than Shanghai, China, including the United States," Tower Mem. at 10, that "Mr. Bao discussed the sales of the LCDIs with other people in the industry, including all the companies listed on its web site," id., and that "Mr. Bao and his employees are responsible for marketing Shanghai ELEs' LCDI products to the United States," id.[12] Tower's request provides some, although not conclusive,

---

[10] The Court subsequently broadened the scope of the Rule 30(b)(6) deposition somewhat by the March 16, 2007, Order Re Compliance which permitted Plaintiff's counsel to also question the witness "regarding Defendant's predecessors and affiliated or related companies." Order Re Compliance at 1.

[11] Although the transcript of the deposition has been filed under seal, the Court's quotation of that transcript in this Memorandum and Order discloses no confidential information.

[12] The last two questions which Tower's counsel had posed prior to making the statement that "[t]hese are background questions ...," Declaration of Tony D. Chen in Support of Defendant's Response to

support for Shanghai ELE's claim that the questions were not background questions, but "were questions clearly designed to target information that Tower seeks concerning its jurisdictional discovery issues and were plainly outside the narrow scope of [the] deposition authorized by the Court," Shanghai ELE Mem. at 11.

Because there is at least some doubt as to whether these questions were, in fact, only background questions, the Court concludes that Shanghai ELE's counsel's instructions to Mr. Bao not to answer should be treated as permissible under Rule 30(d)(1). See Fed. R. Civ. P. 30(d)(1) (permitting an instruction not to answer "to enforce a limitation directed by the court"); see also Continental Casualty Co. v. City of Jacksonville, No. 3:04-cv-1170-J-20MCR, 2007 WL 678016, at *4 (M.D. Fla. Mar. 5, 2007)(holding that attorney was authorized by Rule 30(d)(1) to instruct witness not to answer "because counsel was merely attempting to enforce prior Orders of this Court"); S.E.C. v. Oakford Corp., 141 F.Supp.2d 435, 437 (S.D.N.Y. 2001) (finding direction not to answer in order to enforce a limitation on scope previously imposed by the Court "clearly proper"). Thus, to the extent that the Motion is based strictly on Shanghai ELE's counsel's instructions to Mr. Bao not to answer questions, the Motion is denied.

Shanghai ELE also claims that its counsel properly raised issues concerning alleged questionable translation during the deposition. See id. at 12. It notes that the parties engaged in a long discussion on the proper translation of the term "affiliated" into Chinese, id., and that when Mr. Bao asked for

---

Tower's Motion for Sanctions (Doc. #62) ("Chen Decl."), Ex. M (Transcript of Videotaped Deposition) at 23, were: "Mr. Bao, please describe your sales activities[,]" id. at 21, and "What are your responsibilities as sales manager at Shanghai ELE with respect to LCDI products[,]" id. at 22.

clarification of the word, Tower's counsel "simply repeated the word 'affiliated' and suggested to the witness that he should know what the word means ...," id. at 13. Shanghai ELE additionally points out that Tower chose the translator. See id.

The transcript does reflect that there were problems with translation. It was permissible for Shanghai ELE's counsel to object to a translation error so long as the objection was stated concisely and in a non-argumentative and non-suggestive manner.[13] See Fed. R. Civ. P. 30(d)(1).

Nevertheless, despite the above findings, the Court concludes that Shanghai ELE's counsel interjected himself excessively into the proceeding with his long speaking objections. This conduct adversely affected Mr. Bao's ability and/or willingness to give responses, even to questions which clearly were within the scope of the deposition.[14] As a result,

---

[13] For example, "Objection to the translation of word "witness."

[14] The following excerpt is illustrative of the adverse effect of the interruptions by Shanghai ELE's counsel:

> Q. Mr. Bao, do you have any information about the statement on Shanghai ELE's website concerning a customer service center in America?
>
> MR. CHEN: Objection. Vague. Lack of foundation. And as to the form.
>
> BY MR. COTTER:
>
> Q. Answer the question, please, Mr. Bao.
>
> A. There's been too much conversation just now so could you repeat the question again, please?

Chen Decl., Ex. M at 35. While the above objection by Shanghai ELE's counsel is relatively brief, he had just engaged in a lengthy exchange with Tower's counsel. See id. at 32-35. As the numerical analysis set forth in notes 8 and 9 indicates, such exchanges were, regrettably, not isolated occurrences. See, e.g., id. at 57-59, 75-76, 78-84.

Parenthetically, the Court notes that the objection was totally

Case 1:06-cv-00170-S-DLM Document 70 Filed 08/10/2007 Page 13 of 24

Tower was largely frustrated in its attempt to obtain the information for which the Court had authorized the Rule 30(b)(6) deposition. While Shanghai ELE's counsel agreed to extend the deposition past the scheduled cut-off time (an action which was certainly appropriate under the circumstances), the value of this gesture was diminished by his continued comments, including repeated remarks about the time and/or the extension, see Chen Decl., Ex. M at 60, 65, 69-70, 75, 78-79. In short, Shanghai ELE's counsel violated Rule 30(d)(1) by failing to state his objections concisely and in a non-argumentative and non-suggestive manner and also by speaking excessively, thereby preventing Tower from obtaining the information it sought.

**b. Witness's Conduct**

With regard to Tower's complaint that Mr. Bao was unwilling or unprepared to testify on the two topics for which the deposition had been authorized, see Tower Reply at 2, the Court finds that this complaint is valid with regard to the topic of "Shanghai ELE['s] ... customer support center in America, as claimed on Shanghai ELE's website ...," Tower Mem., Ex. D (Letter from Bifano to Chen of 5/16/07), Attachment ("Att.") (Notice of Rule 30(b)(6) Deposition of Shanghai ELE Mfg. Corp.) at 3 (Schedule A). Although the Court has difficulty determining whether Mr. Bao's failure to testify informatively on this topic was due to a lack of knowledge on his part or the disruptive effect of Shanghai ELE's counsel's repeated, meritless objections and lengthy interjections, see n.14 supra, it is clear that Tower

---

without merit as the question was directly related to the very subject which had caused the Court to authorize the deposition in the first place. See 1/22/07 Tr. at 25 (granting Rule 30(b)(6) deposition based on fact that the defendant's web site has the statement "have customer support center in America providing global service"). Even worse, Shanghai ELE's counsel persisted in this baseless objection, requiring Tower's counsel to ask the question five times before Mr. Bao finally answered yes. Chen Decl., Ex. M. at 36-38.

did not get the information for which the Court had originally authorized the deposition, see 1/22/07 Tr. at 27.[15] Accordingly, I find that the failure of Mr. Bao to provide testimony on the first topic designated in the Notice of Deposition, see Tower Mem., Ex. D, Att. at 3; see also Chen Decl., Ex M. at 35-38, 63-76, 79-80, violated either Rule 37(b)(2)[16] or Rule 30(d)(3).[17]

As to the other topic (i.e., "Shanghai ELE's predecessors and affiliated or related companies," Tower Mem., Ex. D, Att. at 3), however, the Court does not find that Mr. Bao's failure to provide information is sanctionable. The Court reaches this conclusion because the transcript reflects significant difficulty with translation of the terms "predecessors," Chen Decl., Ex. M at 42, and "affiliated," id. at 50-52, 56-60, and the definition

---

[15] Given that Shanghai ELE's counsel terminated the deposition, see Chen Decl., Ex. M. at 84, it is unknown whether Tower's counsel would have eventually been able to obtain this information from Mr. Bao if the deposition had continued.

[16] Fed. R. Civ. P. 37(b)(2) provides in part:

> **Sanctions by Court in Which Action is Pending**. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just ....

Fed. R. Civ. P. 37(b)(2).

[17] Fed. R. Civ. P. 30(d)(3) provides that:

> If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

Fed. R. Civ. P. 30(d)(3).

of the latter term, see id. at 56.[18] As the Court observed at the March 15, 2007, hearing, because of language and/or cultural differences, these terms may not mean the same thing to a Chinese company as they do to an American company. See 3/15/07 Tr. at 7-8. While it is unfortunate that these difficulties interfered with Tower's ability to obtain this information at the deposition, this was not the fault of Shanghai ELE. Tower selected the interpreter, and Tower could have anticipated (and possibly avoided) the problem by providing Mr. Bao with a written definition, translated into Chinese, of the terms "predecessors and affiliated or related companies," Tower Mem., Att. at 3, prior to the hearing. Thus, the Court does not find that Mr.

---

[18] The following exchange between Tower's counsel and Mr. Bao is representative of the difficulty which stemmed from the uncertainty regarding the term "affiliated."

Q. Alright. Are you aware of any affiliated companies of Shanghai ELE?

A. I already asked you to explain what you mean by "affiliated companies." This is what I mean when I ask you to ask specific questions. If -- if you can only give me a very unclear concept then I have no way of answering the question. Are you -- are you talking about a company which is wholly owned by Shanghai ELE or are you talking about a company in which we only have some of the shares?

Q. I am talking about ... (overspeaking)

A. Or are you talking about some small unit that is sub-diary to our company. So could you explain to me exactly what you mean by the concept of "affiliated"?

Q. (Indistinct words).

A. I understand what we mean by "affiliated" in China, but -- but I cannot be absolutely certain what -- what the legal definition of "affiliated" is in English.

Chen Decl., Ex. M at 56.

Bao's failure to provide information regarding the second topic identified in the Notice of Deposition is sanctionable.

**B. Shanghai ELE's Response to Discovery Requests**

Tower argues that Shanghai ELE did not respond in detail to Tower's Discovery Requests, forcing Tower to file a motion to compel. See Tower Mem. at 2. In Tower's view, the Court "substantially granted Tower's requests." Id. at 2-3. Shanghai ELE disputes this characterization of the ruling. See Shanghai ELE Mem. at 14-15.

The Court does not consider the resolution of this semantic quarrel to have a significant bearing on the resolution of the instant Motion. To the extent that the degree to which the Court granted Tower's motion to compel has relevance, the Court finds that Tower received more than fifty percent of the relief it was seeking and that to this extent the characterization of "substantially granted" is not inappropriate.

Tower further argues that Shanghai ELE failed to comply with the Order Granting in Part Plaintiff's Motion to Compel Discovery (Doc. #49) ("Order of 3/16/07 Re Discovery") by the due date of April 16, 2007. Id. at 4. The Court does not consider the fact that Tower did not receive Shanghai ELE's responses until April 20th, four days after the due date specified by the Order of 3/16/07 Re Discovery, as warranting more than minimal weight in determining the instant Motion because counsel for Shanghai ELE, upon being advised of Tower's non-receipt of the copies which Shanghai ELE certifies were mailed on April 13, 2007, promptly e-mailed PDF copies to Tower's counsel. See Chen Decl. ¶ 3.

Tower additionally complains that "Shanghai ELE and its attorney, Tony Chen, have stated numerous times that Shanghai ELE sells its LCDIs to air conditioner manufacturers, such as Korean manufacturer LG," Tower Mem. at 3, but that "Shanghai ELE has only provided contact information and documents for Friedrich Air

Conditioning Co. and Fedders Co.," id. at 4. Tower also states that Shanghai ELE produced only 413 pages of documents (most allegedly after the Motion was filed) and incomplete interrogatory responses. See Tower Reply at 1. Citing the fact that Tower obtained over 2,000 pages of "relevant documents" from Friedrich and almost 800 pages of similarly described documents from Underwriters Laboratories, Inc., Tower appears to suggest that this demonstrates that Shanghai ELE has withheld and/or failed to produce hundreds of responsive documents. See id. at 10.

Tower acknowledges in its reply memorandum that Shanghai ELE's recent production of documents "include[s] purchase orders and invoices for LCDIs sold to Haier, Fedders Corporation, Daewoo, and LG ...." Tower Reply at 5. Tower suggests that the recent production is still deficient because it does not include any documents related to Frigidaire, Midea, or Samsung, all of which it contends are responsive to Interrogatories Nos. 1 and 2 and Request for Production Nos. 3 and 4. See id. Tower has not submitted any representative samples of the documents obtained from Friedrich and Underwriters Laboratories which would indicate that identical, similar, or related documents must be in the possession of Shanghai ELE and have not been produced. The Court is, thus, unable to find at this point that Shanghai ELE has failed to produce responsive documents and that it should be sanctioned for such failure.

While Tower has indicated its belief that a further motion to compel would have been "pointless," Tower Mem. at 1, such a motion would have allowed the Court to focus narrowly on the question of Shanghai ELE's compliance with the discovery requests at issue as opposed to the instant Motion which encompasses multiple issues and disputes. There are times, of course, when a Motion like the instant one (detailing multiple alleged discovery

violations and/or failures) is warranted. The Court simply does not share Tower's view that this was one of them.

This is not to say that the Court is without concerns about the completeness of Shanghai ELE's responses to Tower's discovery requests. The April 30, 2007, letter from Tower's counsel to Shanghai ELE's counsel details "some apparent inconsistencies and potential deficiencies in the responses," Tower Mem., Ex. C (Letter from Bifano to Chen of 4/30/07) at 1, and requests that Shanghai ELE clarify and/or explain the apparent inconsistencies, see id. at 2-5. Although exhibits filed in connection with the present Motion suggest that Shanghai ELE subsequently clarified informally some matters, see, e.g., Chen Decl., Ex. F (e-mail from Chen to Bifano of 5/22/07); id., Ex. L (e-mail from Chen to Bifano of 5/29/07), offered to produce additional documents (while maintaining that Shanghai ELE had already fully complied), see Chen Decl. ¶ 28, and produced (or intended to produce) the additional documents the week of June 25, 2007, see id. ¶ 29, it is not entirely clear to the Court the extent to which Shanghai ELE's subsequent supplementation has resolved compliance issues.[19] In an attempt to avoid further motion practice, the parties are directed to confer and attempt to resolve any remaining issues regarding Shanghai ELE's compliance with Tower's discovery requests.

**C. Shanghai ELE's Involvement in Third-Party Discovery**

Tower claims that because Shanghai ELE refused to provide Tower with discovery or failed to fully disclose information, it

---

[19] Tower in its reply memorandum states: "While the newly produced documents include purchase orders and invoices for LCDIs sold to Haier, Fedders Corporation, Daewoo, and LG, they do not include any documents related to Frigidaire, Midea or Samsung, all of which are responsive to Interrogatory Nos. 1 and 2 and Request for Production Nos. 3 and 4." Tower's Reply in Support of Motion for Sanctions for Shanghai ELE's Failure to Comply with Discovery Orders (Doc. #66) ("Tower Reply") at 5.

was forced to obtain relevant documents from third parties. See Tower Reply at 10. Tower further alleges that, after it served a subpoena on U.S. Natural Resources d/b/a Friedrich Air Conditioning Co. for third-party discovery, Shanghai ELE involved itself in that third-party discovery by making representations to Friedrich that Shanghai ELE would produce certain documents so as to obviate the need for Friedrich to produce any similar documents. See Tower Mem. at 5. Tower complains that because of this involvement, Tower was forced to file a motion to compel against Friedrich in the Western District of Texas. See id.

Shanghai ELE responds to these allegations by noting first that the third-party discovery was served in February of 2007 and that the subpoenas could not have been the result of any subsequent activities. See Shanghai ELE Mem. at 18. The Court agrees with Shanghai ELE on this point. Any suggestion that Tower was forced to seek discovery from these third-parties because of an alleged non-compliance by Shanghai ELE with the Discovery Order of 3/16/07 does not withstand analysis.

Shanghai ELE next contends that it did nothing to impede Tower's third-party discovery. See Shanghai ELE Mem. at 18. In fact, Shanghai ELE represents it "cooperated with the third parties responding to the subpoenas and did not suggest to any third party that it object to the subpoena or fail to produce documents in response to Tower's subpoenas." Id. With regard to Shanghai ELE's alleged involvement in the attempt by Tower to obtain discovery from Friedrich, Shanghai ELE states that it was contacted in late February 2007 by counsel for Friedrich with regard to the subpoena issued by Tower. See id. According to Shanghai ELE, Friedrich's counsel subsequently called Mr. Chen, advised him that Friedrich had objected to the subpoena as being overly broad and burdensome, among other grounds, and asked Mr. Chen whether Shanghai ELE was producing any of the documents

sought by Tower. See id. at 18-19. Shanghai ELE further states that Mr. Chen responded that Shanghai ELE was in the process of producing its sales documents related to sales to Friedrich. See Shanghai ELE Mem. at 19.

The Court is satisfied by Shanghai ELE's explanation and does not find that it attempted to obstruct Tower's discovery from third parties. The February 14, 2007, letter which Mr. Chen sent to Friedrich's counsel, while asserting that Tower's infringement claim against Shanghai ELE was "without merit," Chen Decl., Ex. D at 3 (Letter from Chen to Marino of 2/14/07), does not suggest that Friedrich should resist or not comply with the subpoena. Even if, as the wording of the Order from the Western District of Texas may suggest, Mr. Chen told Friedrich's counsel that the documents Shanghai ELE was producing in Rhode Island "would satisfy Requests 1 & 2," Tower Mem. at 5-6 (quoting id., Ex. F (Order of 5/18/07, Tower Manufacturing Co. v. Shanghai ELE Corp., Cause No. SA-07-MC-262-OG, U.S. District Court for the Western District of Texas) at 3), this does not establish that Mr. Chen sought to discourage compliance with the subpoena by Friedrich. It is possible that counsel for Friedrich may have asked Mr. Chen what documents Shanghai ELE would be producing in Rhode Island and Mr. Chen, upon seeing or being advised of the contents of Requests 1 and 2, merely indicated that Shanghai ELE would be producing documents described in those requests.

Lastly, Shanghai ELE makes the valid point that Friedrich's objection to the subpoena was not limited solely to the documents sought by Requests 1 and 2. See Shanghai ELE Mem. at 19. Thus, Tower would have been required to file its motion to compel in the Western District of Texas court regardless of any statement made by Chen. See id. In sum, the Court is not persuaded that Tower has demonstrated that Shanghai ELE interfered with third party discovery or otherwise acted improperly relative to such

Case 1:06-cv-00170-S-DLM Document 70 Filed 08/10/2007 Page 21 of 24

discovery. Therefore, Tower's request for sanctions based on such conduct is denied.

## II. Rulings Regarding Specific Requests for Sanctions

In this section the Court recapitulates its rulings as to each request for sanctions.

### A. The Rule 30(b)(6) Deposition

#### 1. Protective Order

The Court finds that Shanghai ELE's actions in seeking a protective order do not weigh in favor of granting sanctions.

#### 2. Request for Sanctions under Rule 37(b) for Alleged Failure to Comply with Order of 2/5/07

Although Shanghai ELE's refusal to agree to have the Rule 30(b)(6) deposition conducted in Hong Kong violated the Order of 2/5/07, there were mitigating circumstances. See Discussion section I.A.2. supra at 5-7. The Court declines to impose any sanction for this violation at this time. Accordingly, as to this request, the Motion is denied.

#### 3. Request for Sanctions under Rule 37(b) for Failure to Comply with the Order of 3/16/07 Re Compliance[20]

For the reasons previously stated, see Discussion section I.A.3. supra at 7-8, the Motion is denied as to this request.

#### 4. Request for Sanctions under Rule 37(b)(1) for Shanghai ELE's Failure to Answer Questions in the Rule 30(b)(6) Deposition

To the extent that this request is based on the conduct of Shanghai ELE's counsel at the deposition, the Motion is granted pursuant to Rule 30(d)(3). See Discussion section I.A.4.a. supra

[20] Tower makes this specific request for sanctions in its reply memorandum, but it does not state in that document precisely how Shanghai ELE violated the Order of 3/16/07 Re Compliance (Doc. #50). See Tower's Reply at 11. The Court assumes that this request is based on Tower's contention that Shanghai ELE violated the order by not "proceed[ing] expeditiously." Order of 3/16/07 Re Compliance at 1.

at 12-13. To the extent that this request is based on the failure of Mr. Bao to testify informatively on the topic of "Shanghai ELE['s] ... customer support center in America, as claimed on Shanghai ELE's web site," Tower Mem., Ex. D, Att. at 3, the Motion is granted pursuant to Rule 37(b)(2) and/or Rule 30(d)(3). See Discussion section I.A.4.b. supra at 13-14. To the extent that it is based on the failure of Mr. Bao to testify informatively on the topic of "Shanghai ELE's predecessors and affiliated companies," id., the Motion is denied.

**B. Request for Sanctions under Rule 37(b) for alleged failure to Comply with the Order of 3/16/07 Re Discovery**

While the Court has concerns about Shanghai ELE's compliance with the Discovery Order of 3/16/07, the evidence of non-compliance is not sufficiently certain to allow the Court to impose sanctions. See Discussion section I.B. supra at 16-18. As to this request, the Motion is denied.

**C. Involvement in Third Party Discovery**

To the extent that Tower seeks sanctions based on Shanghai ELE's alleged improper involvement in third party discovery, the Motion is denied.

**III. Determining the Appropriate Sanctions**

Of the four bases on which Tower has sought sanctions, the Court has determined that only one, the conduct of Shanghai ELE's counsel and Rule 30(b)(6) witness at the deposition, warrants any relief. In determining the appropriate sanction, the Court takes into consideration the findings it has made relative to their conduct. The Court has found: 1) that the instructions given by Shanghai ELE's counsel to the witness not to answer questions (which were outside the scope of the deposition ordered by the Court) are not a basis for the imposition of sanctions and 2) that there were problems with translation, especially with regard to the definition (or lack of definition) of the term

"affiliated" and that these problems partly explain or mitigate Shanghai ELE counsel's garrulousness and the witness's non-responsiveness. These findings reduce the severity of the sanction which the Court imposes.

Accordingly, pursuant to Rule 30(d)(3) and/or Rule 37(b)(2), this Court orders that Shanghai ELE pay Tower one-half of the cost of the Rule 30(b)(6) deposition which was conducted on June 1, 2007, including one-half of the attorney's fees which are attributed to the services of Attorney John S. Cotter during that deposition.[21] Tower is directed to submit to Shanghai ELE within fifteen days of the date of this Memorandum and Order a statement of the cost of the deposition and of the attorney's fees attributable to Attorney Cotter.

In addition, the Court grants Tower permission to take a further deposition of Mr. Bao, but the deposition shall be by written questions pursuant to Rule 31(a) and shall be limited to the same two matters which the Court previously authorized.[22] See Tower Mem., Ex. C, Att. at 3. This method of discovery should avoid the problems which manifested themselves at the June 1, 2007, deposition because of disagreements regarding translation, definition of terms, and the scope of the inquiry. All of these issues can be addressed (and if necessary ruled upon) before Mr. Bao answers the questions. The written questions shall be propounded within thirty days of the date of this order, and they shall be answered by Mr. Bao within thirty days of service of the questions upon Shanghai ELE's counsel.

Because the need for this further deposition is partly

---

[21] Shanghai ELE is not required to pay fees attributable to any other Tower attorney and is not required to pay for the time spent in preparation for the deposition.

[22] Tower, of course, is not required to avail itself of this option and may elect not to propound such written interrogatories.

attributable to sanctionable conduct of Shanghai ELE's counsel and Rule 30(b)(6) witness, pursuant to Rule 30(d)(3) and/or Rule 37(b)(2), Shanghai ELE shall pay Tower's attorney's fees for preparing the questions up to a maximum of three hours time for one attorney. In addition, Shanghai ELE shall pay the costs incurred by Tower in having the questions translated into Chinese. Payment shall be made by Shanghai ELE within thirty days of receiving a statement from Tower setting forth the cost of the translation and of the attorney's time.[23]

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 10, 2007

[23] The Court does not order that Shanghai ELE pay the reasonable expenses and attorney's fees Tower incurred in the bringing of this Motion because of the circumstances, described in detail in this Memorandum and Order, which make the award of such expenses unjust. See Fed. R. Civ. P. 37(b)(2).