**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | Civil Action No. CA 06 170S |

**DEFENDANT SHANGHAI ELE MANUFACTURING CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Tower's effort to assert jurisdiction in Rhode Island is fundamentally flawed. In considering Tower's brief, it is important to focus on whether Tower is describing contacts of Shanghai ELE Manufacturing Corporation ("ELE") with the United States *as a whole* or with Rhode Island *specifically*. Bearing this distinction in mind, it is apparent that Tower has made a very thin showing of contacts which are germane to a traditional jurisdictional analysis -- namely those with Rhode Island itself. Rather, most of the contacts Tower relies upon are those made with the United States as a whole. From ELE's obtaining UL certification for its products to manufacturing products meeting NEMA standards to operating an English language version of its website, most of the contacts Tower relies upon are not specific to Rhode Island but instead relate at most to ELE's aggregate contacts with the United States generally. For jurisdiction to lie in this Court based upon such general contacts with the United States, however, Tower must certify and establish under Federal Rule of Civil Procedure 4(k)(2) that personal jurisdiction over ELE does not exist in some other state. Based upon the undisputed evidence of direct sales of

the products at issue in this case, LCDIs, into three states, including New York, ELE does not understand how Tower could certify, as required, that jurisdiction does not exist in any other state.[1]

When the focus is properly directed to ELE's contacts with Rhode Island, most of the evidence relied upon by Tower disappears. The only contact left at the end of the day between ELE and Rhode Island are indirect sales of ELE LCDIs to third party air conditioner manufacturers in China, who in turn sell the assembled air conditioner units to distributors and retailers around the world, only by extension including to retailers in the United States and only by further extension including Rhode Island. As discussed below, such indirect contacts with Rhode Island are insufficient to support personal jurisdiction over ELE in this Court. Tower has not made a case for specific jurisdiction in Rhode Island and has certainly failed to show nearly sufficient contacts for general jurisdiction in Rhode Island. Because Tower fails to establish that this Court has personal jurisdiction over ELE either directly or within Rule 4(k)(2), this case should be dismissed.

## I. ELE IS NOT SUBJECT TO THE GENERAL JURISDICTION OF RHODE ISLAND

ELE does not come close to having the "extensive and pervasive" contacts with Rhode Island necessary to establish general jurisdiction here. ***See LSI Indus. Inc. v. Hubbell Lighting, Inc.***, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts.") (citations omitted); ***Barry v. Mortgage Servicing***

[1] In its Objection to Shanghai ELE's Motion to Dismiss ("Opp. Br."), Tower certifies that ELE is not subject to jurisdiction in any state "if personal jurisdiction over Shanghai ELE does not exist in Rhode Island." Opp. Br. at 33. ELE does not understand how Tower could make that certification. As detailed below, direct sales of allegedly infringing product by ELE into New York, for example, certainly provides a far more compelling argument for jurisdiction than presented here. This is not a case where jurisdiction either exists in Rhode Island or it exists in no state of the United States.

*Acquisition Corp.*, 909 F. Supp. 65, 75 (D.R.I. 1995) ("The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive."). ELE is a Chinese company with all its facilities and employees in China. It does not have any officers, employees, agents, representatives, facilities, property, or bank accounts in Rhode Island (or any other state in the United States). Moreover, ELE does not sell, offer for sale, or advertise its products directly in Rhode Island.

The only contacts with Rhode Island that Tower points to are (1) indirect sales of ELE LCDIs in air conditioner units manufactured by Haier (a Chinese manufacturer) that were sold by Benny's and Wal-Mart, (2) indirect sales of ELE LCDIs in air conditioner units manufactured by Frigidaire (a Chinese manufacturer) that were sold by Lowe's and (3) sales of an unrelated ELE product, GFCIs, in the United States generally (presumably including in Rhode Island). Notably, however, all of ELE's LCDIs that were ultimately sold in Rhode Island are LCDIs that were manufactured and sold in China for assembly into air conditioner units by unrelated third party manufacturers in China. Those air conditioner units were then imported and sold in the United States under a different label (*e.g.*, Haier), completely outside of the control of ELE.

These minimal contacts with Rhode Island cannot be said to rise to the level of "continuous and systematic" contacts necessary to establish general jurisdiction. Rather, ELE's contacts can at most arguably be related to a "stream of commerce" theory, which is specifically applicable to a specific jurisdiction analysis, not a general jurisdiction analysis. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 (7th Cir. 2003) (stream-of-commerce theory "is relevant only to the exercise of specific jurisdiction; it provides no basis for exercising general jurisdiction over a nonresident defendant"); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000) ("We have specifically rejected a party's reliance on the

stream of commerce theory to support asserting general jurisdiction over a nonresident defendant."). Tower has not shown general jurisdiction, and as discussed below, however, also fails to show sufficient contacts to justify specific jurisdiction under the stream of commerce theory.

## II. ELE IS NOT SUBJECT TO SPECIFIC JURISDICTION IN RHODE ISLAND

Tower's "specific jurisdiction" argument is based upon the "stream of commerce" theory. Under this theory, "the forum state does not exceed its powers under the Due Process Clause if its asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World Wide Volkswagen v. Woodsen*, 444 U.S. 286, 297-98 (1980). "Under [the stream of commerce] theory, a defendant has minimum contacts with the forum when it purposefully ships a product into the forum state through an 'established distribution channel.'" *Akeva L.L.C. v. Mizuno Corp.*, 199 F.2d 336, 339 (M.D.N.C. 2002).

As shown in the following quote from its Opposition Brief, Tower argues that an "established distribution channel" can be found because:

> (1) Shanghai ELE LCDIs have been sold in Rhode Island in air conditioners since before Tower filed its complaint;
>
> (2) Shanghai ELE sells its LCDIs directly to at least three U.S. companies, including Friedrich Air Conditioning Co. *of Texas*, CareCo Fedders Corp. *of Illinois*, and Fedders Islandaire *of New York*; and
>
> (3) Shanghai ELE LCDIs are on sale in air conditioners *throughout the United States* and have been since before the complaint was filed.

Opp. Br. at 4 (emphasis added). In support of these contentions, Tower also argues that ELE LCDIs are "prevalent throughout Rhode Island and the United States for the simple reasons that Shanghai ELE has (1) designed its products for, (2) marketed its products to, (3) sold its products

to, and (4) provided customer service for and to, ***the United States***." Opp. Br. at 4 (emphasis added).

Even ignoring that Tower repeatedly stretches the facts in its brief[2] and taking these two summaries at face value, in the end, Tower at most has made out a case that ELE has sufficient minimum contacts with the United States as a whole to possibly satisfy a ***nationwide*** contacts test and that jurisdiction may lie in New York, Illinois, or Texas. But on the specific question of jurisdiction in Rhode Island, Tower comes up short, instead repeatedly trying to rely on national contacts instead of focusing on contacts with Rhode Island. Indeed, contrary to Tower's assertions, the evidence establishes that there is an insufficient basis to maintain jurisdiction in Rhode Island, most notably, because Tower fails to explain how ELE had reason to believe that its LCDIs would be sold in Rhode Island, as opposed to mere awareness that its LCDIs may be sold in the United States generally.

### A. ELE Does Not Have Reason To Believe That Its LCDIs Will Be Sold In Rhode Island

While Tower points to ELE's direct sales in the Unites States (namely, to companies in New York, Illinois, and Texas), ELE does not point to any direct sales in Rhode Island and fails to explain how ELE "knew or should have known" that its products would be sold indirectly in Rhode Island. Tower, instead, rests on its conclusory allegation that ELE must have known that its LCDIs would be sold in Rhode Island by the mere fact that ELE sold its LCDIs to air conditioner manufacturers in China, who assembled the air conditioner units in China and subsequently sold the air conditioner units to distributors and retailers around the world, including to retailers in the United States (including Rhode Island).

[2] For example, as detailed below, obtaining UL approval and manufacturing plugs to meet NEMA standards does not somehow show that ELE designs its products for the U.S. market generally, let alone Rhode Island specifically.

Specifically, Tower alleges that Frigidaire model air conditioners containing ELE LCDIs were on sale at Lowe's in Rhode Island and Haier model air conditioners containing ELE LCDIs were on sale at Benny's and Wal-Mart in Rhode Island, and therefore the fact that these products were on sale in Rhode Island alone satisfies Tower's burden for finding jurisdiction under the stream of commerce theory as applied in *Schwanger v. Munchkin, Inc.*, 1999 U.S. App. LEXIS 25038 (Fed. Cir. Oct. 7, 1999) and *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). Tower's reliance on *Schwanger* and *Beverly Hills Fan*, however, is misplaced.

In *Schwanger*, the out-of-state defendant made direct sales of the allegedly infringing product to Wal-Mart, who in turn sold the product in the forum state. Unlike *Schwanger*, where the defendant knowingly sold directly to the largest retailer in the United States, here the distribution channel is further removed. Importantly, with limited exceptions not applicable here, ELE sells its LCDIs to manufacturers in China. These independent Chinese manufacturers then assemble the parts into air conditioners in China, and then sell the assembled air conditioner units to distributors and retailers of their choosing. ELE has absolutely no control over where the assembled air conditioners are ultimately sold.

Likewise, Tower's reliance on *Beverly Hills Fan* is also misplaced. In *Beverly Hills Fan*, the defendant manufacturer of the accused product was based in China and sold the accused product to a company based in New Jersey, who then distributed the product in the United States. The *Beverly Hills Fan* Court determined that the "defendants, acting in consort, placed the accused [product] in the stream of commerce, *they knew the likely destination of the products*, and their conduct and connections with the forum state were such that they should have reasonably anticipated being brought into court there." *Id.* at 1566 (emphasis added). Contrary

to the facts in *Beverly Hills Fan*, Tower has failed to provide any evidence suggesting that ELE knew its products would be sold in Rhode Island, apart from merely speculating that ELE must know that its LCDIs will be sold in Rhode Island via the simple fact that ELE sells its LCDIs to Chinese manufacturers, such as Haier and LG, who each in turn sell to distributors and retailers around the world, including the United States generally.

Mere awareness that a product ***may*** end up in the forum state, however, does not constitute "purposeful availment." *See Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992); *see also Geary v. Goldstein*, 782 F. Supp. 725, 730 (D.R.I. 1992) (sale of magazine in Rhode Island by independent distributors, as opposed to direct distribution in the state by defendants themselves cannot suffice to subject defendants to jurisdiction). In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), the United States Supreme Court analyzed the purposeful availment test in detail. Justice O'Connor's plurality opinion held that "the placement of product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum state ..." *Id.* at 112. While the Court in *Beverly Hills Fan* did not join the debate as to whether "something more" is needed under the stream of commerce theory to satisfy the "purposeful availment" prong, applying Justice O'Connor's test here, Tower is missing that "something more," as ELE has not purposefully directed its actions toward the forum state (*i.e.*, Rhode Island).

Importantly, the analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *See Purdue Research Found.*, 338 F.3d at 780. Here, Tower has failed to provide any evidence to suggest that ELE knew or had reason to know that air conditioners

assembled with its LCDIs would be sold in Rhode Island apart from speculating that ELE should have known that its LCDIs would be sold as component parts to assembled air conditioners in Rhode Island by the simple fact that ELE sold its LCDIs to certain Chinese companies, including Daewoo, LG and Haier. This is simply insufficient to establish personal jurisdiction under the stream of commerce theory.

**B. <u>ELE LCDIs Are Not Made Specifically For Rhode Island</u>**

Again focusing strictly on evidence of contacts with the United States in general rather than anything specific to Rhode Island, Tower argues that ELE's products are designed for the U.S. Market because ELE has (1) used electrical connectors that conform to the standards of the National Electrical Manufacturer's Association ("NEMA"); (2) obtained UL certification for its LCDIs and GCFIs, (3) imprinted its LCDIs with English warnings; (4) identified ELE as the manufacturer of the LCDI in English; and (5) prosecuted and obtained U.S. Patents related to LCDIs and GCFIs. *See* Opp. Br. at 4-5. Not only do these arguments fail to support Tower's assertion that ELE has sufficient minimum contacts with Rhode Island specifically, but it is a stretch to suggest that these facts establish sufficient contacts with the United States to satisfy a *nationwide* minimum contacts test.

First, with respect to manufacturing plugs in accordance with NEMA standards, Tower misleadingly suggests that such plugs can only be used in the United States. While Tower admits in a footnote that the plugs could also be used in Canada and Mexico, Tower erroneously asserts that NEMA-standard plugs are "only used in North America and not in Europe, Australia, Asia, or Africa." Opp. Br. at 5, n.3. Contrary to Tower's assertion, NEMA-standard plugs are used in Asia, including in Taiwan. Indeed, Tower grossly underestimates the number of countries that use NEMA-standard plugs. Those countries include: America Somoa, Antigua and Barbuda, Bahamas, Barbados, Belize, Bermuda, Brazil, British Virgin Islands, Canada,

Cayman Islands, Columbia, Cuba, Ecuador, El Salvador, Guam, Guatemala, Guyana, Haiti, Honduras, Jamaica, Mariana Islands, Marshall Islands, Mexico, Micronesia, Midway Islands, Nicaragua, Palau, Panama, Puerto Rico, Samoa, Taiwan, Trinidad and Tobago, Turks and Caicos Islands, United States, Venezuela, Virgin Islands, and Wake Island. *See* Exhibit A attached hereto. Indeed, according to the IDC World Plug and Socket Standards:

> The standard NEMA 5-15 plug and socket system (in Canada, CS22.2, No.42) that is commonly used in the U.S. and Canada is also an important *international* standard.

Exhibit B attached hereto (emphasis added). It is hard to see how manufacturing to "an important international standard" can establish jurisdiction in the United States generally (let alone Rhode Island specifically). Indeed, as explained in ELE's moving brief, "ELE's products are sold in the United States, as well as in China, Japan, South Korea, Thailand, Russia, European countries, Middle East countries, Canada, Mexico, Australia, etc." ELE Motion to Dismiss Br. at 4.

Similarly, the fact that ELE's LCDIs are compliant with UL standards does not indicate any intent to design the products for use in Rhode Island specifically. ELE obtaining UL certification shows nothing more than that it was aware that its products may be sold in the United States as a whole -- a fact that it acknowledged in its moving brief. *See* ELE's Motion to Dismiss Br. at 3-4. Indeed, the only case that Tower cites discussing the implications of seeking UL certification held that such certification supported a finding of minimum contacts with the *United States* as whole in connection with the Court's analysis under Fed. R. Civ. P. 4(k)(2). *See* Opp. Br. at 20, *citing Homedics, Inc. v. Yejen Indus., Ltd.*, 2006 WL 2594918, at *5 (E.D. Mich. Sept. 8, 2006). The court in *Homedics* did not find that obtaining UL certification supported jurisdiction in any specific forum.

Lastly, the fact that ELE is identified as the manufacturer in English and that warnings are placed in English on ELE LCDIs plainly does not support Tower's argument that ELE's LCDIs were specifically designed for use in Rhode Island. Potential customers in numerous countries around the world speak and read English, and Tower cannot seriously contend that including English words on the accused products indicate an intent to sell the product in the United States, let alone any single state in the U.S.

**C. ELE Does Not Market Its Products To Rhode Island**

Tower points to ELE's relationship with Friedrich Air Conditioning Company *of Texas*, Careco Fedders *of Illinois*, and Fedders Islandaire *of New York* to argue that ELE's marketing efforts in the United States support finding sufficient minimum contacts with Rhode Island. *See* Opp. Br. at 5. While these contacts may arguably be sufficient to support jurisdiction in the specific states in which the relationships are maintained, these contacts do nothing to suggest that jurisdiction would be proper in Rhode Island. Indeed, Tower fails to provide any evidence to suggest that these three air conditioner manufacturers have sold any air conditioners incorporating ELE LCDIs in Rhode Island.

Similarly, Tower vaguely alludes to relationships with a number of Chinese manufacturers, including Haier, Samsung, Midea, Daewoo, Kelon, and LG, but Tower provides no support to suggest any contacts with Rhode Island, apart from the indirect sales already discussed *supra*. Tower also points to purported relationships with retailers, such as Home Depot, but does not, and cannot, rebut the fact that with respect to LCDIs, any such relationship is entirely through indirect sales to manufacturers in China and with respect to GCFIs, any such relationship is irrelevant to a specific jurisdiction analysis, as ELE's GFCIs are not accused of infringement in this action.

Lastly, Tower suggests that ELE's maintenance of an English-language version of its website and acceptance of payment in U.S. dollars somehow constitutes marketing of products targeted to Rhode Island. As Tower acknowledges, Shanghai ELE has an English-language version of its website "to allow any English-speaking individual who visits the site to learn more about Shanghai ELE." *See* Opp. Br at 6. ELE's maintenance of a passive website, located at www.elemfg.com, does not provide sufficient grounds to establish personal jurisdiction in Rhode Island. ELE merely places information on the Internet, and that is insufficient to confer jurisdiction based on access to that information by residents of Rhode Island. The ELE website makes no mention of Rhode Island. ELE's website does not have any advertisements or statements relating to Rhode Island. A review of ELE's website shows that it is focused generally on customers throughout the world. There is absolutely no focus directed at Rhode Island. Further, there is no evidence that anyone in Rhode Island ever purchased any goods from the website nor is there evidence that ELE made any attempt to purposefully avail itself of the Rhode Island marketplace. A passive website merely makes information available to the public and "cannot render [the defendant] subject to personal jurisdiction." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Enters, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003). Accordingly, the maintenance of ELE's website cannot create minimum contacts with Rhode Island.

**D. ELE Does Not Provide Customer Service To Rhode Island Residents**

Tower grossly exaggerates ELE's alleged "customer service." As ELE has repeatedly represented, "ELE does not have a formal customer support department." *See* Ex. G to Opp. Br. at 4. Moreover, any references to providing customer support "in America" on ELE's website were in "reference to supporting American customers [who may have] possible questions arising from GFCI sales in the United States." *Id.* at 12. In support of Tower's argument that ELE's customer service program supports finding jurisdiction in Rhode Island, Tower points to a single

"Customer Feedback Form" from LG in relation to a defective LCDI "from the United States." *See* Opp. Br. at 11. Tower does not provide any evidence that the customer feedback form had anything to do with an LCDI sold or offered for sale in Rhode Island. With respect to the other "Customer Feedback Forms" from Midea, LG, Kelon, Samsung, and Haier, Tower also does not suggest that the feedback comments or questions had anything to do with LCDIs sold in the United States generally, let alone Rhode Island specifically.

Under these circumstances, it cannot be said that ELE has "purposefully avail[ed] itself of the privilege of conducting activities within [Rhode Island]." *World Wide Volkswagen Corp.*, 444 U.S. at 297. Accepting Tower's argument that ELE must anticipate being haled into court in Rhode Island because ELE sells LCDIs to Chinese manufactures who then ship products to the United States generally would effectively eliminate the jurisdiction requirement for any foreign entity that ships any product into the United States. Any such foreign entity would then be subject to jurisdiction in any state regardless of where it shipped its products. Tower bears the burden of making a prima facie showing that jurisdiction exists. Tower has failed to satisfy that burden. This Court lacks personal jurisdiction over ELE pursuant to Rhode Island's long-arm statute, and ELE lacks the necessary "minimum contacts," including under the Federal Circuit's stream of commerce theory, with the State of Rhode Island to satisfy the constitutional requirements of due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *Helicopteros Nacionales De Colombia S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868 (1984).

Because Tower has not successfully shown that ELE "purposefully directed" its activities at residents of Rhode Island, it is unnecessary to analyze whether Tower has shown whether assertion of personal jurisdiction over ELE is "reasonable and fair." Nonetheless, for the reasons

set forth in ELE's moving brief, assertion of personal jurisdiction over ELE in Rhode Island would be unreasonable and unfair, and ELE's Motion to Dismiss should also be granted for the reasons discussed therein. *See* ELE's Motion to Dismiss Br. at 20-24.

## III. TOWER FAILS TO ESTABLISH PERSONAL JURISDICTION UNDER FED. R. CIV. P. 4(K)(2)

In light of evidence of direct sales to three states other than Rhode Island, Tower's alternative theory that personal jurisdiction over ELE is proper under Federal Rule of Civil Procedure 4(k)(2) also fails. Rule 4(k)(2) provides that a federal court may exercise jurisdiction in cases arising under federal law when the defendant is not ***subject to personal jurisdiction in any individual state***, but ***has contacts with the United States as a whole***. In order to invoke Rule 4(k)(2), Tower must show that "(1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that [ELE's] contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements." *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999). Moreover, notably, Tower also "must certify that, based on the information that is readily available to [it] and [its] counsel, [ELE] is not subject to suit in the courts of general jurisdiction of any state." *Id.*

Here, Tower has failed to meet the certification requirement. While Tower attempts to circumvent this requirement by conditionally making the certification, *i.e.*, Tower states that "if personal jurisdiction over Shanghai ELE does not exist in Rhode Island under the traditional specific and general jurisdiction tests, Tower certifies that Shanghai ELE is not subject to the jurisdiction of the courts of general jurisdiction of any state," Opp. Br. at 33, Tower's certification directly contradicts the evidence that Tower submitted in connection with its opposition brief.

Through the jurisdictional discovery that Tower conducted, Tower alleges that it has discovered that "Shanghai ELE sells its LCDIs directly to at least three U.S. companies, including Friedrich Air Conditioning Co. of Texas, CareCo Fedders Corp. of Illinois, and Fedders Islandaire of New York." Opp. Br. at 4. This evidence of ***direct sales*** into the three aforementioned states effectively prevents Tower from properly certifying that ELE is not subject to jurisdiction in any other state. *See, e.g., Parti-Line Intern., L.L.C. v. Bill Ferrell Co.*, 2005 WL 578777, *4 (E.D. La. Mar. 4, 2005) (in foregoing stream of commerce analysis in view of direct sales in the forum state, Court held that "[w]hen a company directly sells its products in a particular forum, the company can reasonably foresee being haled into court in that forum."). As such, Tower cannot establish that jurisdiction over ELE is lacking in those other jurisdictions, such as New York, and therefore, Tower's Rule 4(k)(2) argument must fail.

## IV. CONCLUSION

For the foregoing reasons, and the reasons set forth in ELE's Memorandum in support of the instant Motion, ELE respectfully requests that the Court grant its Motion to Dismiss against Tower for lack of personal jurisdiction.

Dated: November 14, 2007

Respectfully submitted

SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
Tony D. Chen (*Pro Hac Vice*)
Email: tony.chen@bingham.com
Bingham McCutchen LLP
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Victor H. Polk, Jr. (*Pro Hac Vice*)
Lawrence T. Stanley, Jr. (*Pro Hac Vice*)
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Bruce W. Gladstone, Esq., at bgladstone@cm-law.com, John J. Cotter, Esq., at john.cotter@klgates.com, and Larissa S. Bifano, Esq., at larissa.bifano@klgates.com, identified on the Notice of Electronic filing (NEF), on this 14th day of November, 2007.

/s/ Jeffrey S. Brenner