UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | Civil Action No. 06-170S |

**TOWER'S MOTION FOR SANCTIONS AGAINST SHANGHAI ELE PURSUANT TO 28 U.S.C. § 1927, RULE 26(g) AND THE COURT'S INHERENT POWER**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 1

II. SHANGHAI ELE'S NUMEROUS MISSTATEMENTS COUPLED WITH SHANGHAI ELE'S FAILURE TO CORRECT THEM BEFORE THE COURT ARE SANCTIONABLE UNDER THE COURT'S INHERENT POWER TO PROTECT THE INTEGRITY OF THE ADJUDICATIVE PROCESS .......... 4

A. The Court Should Sanction Shanghai ELE and its Counsel for Long Zhang's and Shanghai ELE's Counsel's Misrepresentation of Shanghai ELE's U.S. LCDI Sales .......... 5

B. The Court Should Sanction Mr. Zhang, Shanghai ELE, and Counsel for Misrepresenting Shanghai ELE's GFCI Sales to United States Customers .......... 9

C. The Court Should Sanction Mr. Bao, Shanghai ELE, and Counsel for Misrepresenting Shanghai ELE's Possession of LCDI Customer Feedback Forms .......... 10

D. The Court Should Sanction Shanghai ELE's Counsel for Failure to Investigate and Misrepresentation of Jurisdictional Law .......... 12

E. The Court Should Sanction Shanghai ELE's Counsel for Failure to Correct Misrepresentations before the Court .......... 13

III. SHANGHAI ELE'S CONDUCT UNREASONABLY AND VEXATIOUSLY MULTIPLIED THE PROCEEDINGS UNDER 28 U.S.C. § 1927 .......... 15

IV. THE CONTRADICTION BETWEEN MR. BAO'S ANSWERS TO WRITTEN QUESTIONS AND SHANGHAI ELE'S DOCUMENT PRODUCTION VIOLATE RULE 26(g)'S CERTIFICATION REQUIREMENT .......... 18

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

Alyeska Pipeline Service Co. v. Wilderness Society,
421 U.S. 240 (1975)....................................4

Beverly Hills Fan Co. v. Royal Sovereign Corp.,
21 F.3d 1558 (Fed. Cir. 1994)..........................2, 12

Chambers v. NASCO,
501 U.S. 32 (1991)....................................4, 5

Cruz v. Savage,
896 F.2d 626 (1st Cir. 1990)..............................18

Fusco v. Medeiros,
965 F. Supp. 230 (D. R.I. 1996)...........................16

Hale v. Sklodowski,
No. 87 C 8817, 1988 WL 61184, at *3 (N.D. Ill June 2, 1988).....................................................13

Jones v. Derwinski,
1 Vet. App. 596 (Vet. App. 1991)..........................13

Kraemer Export Corp. v. Peg Perego U.S.A.,
No. 93 Civ. 0198 (PKL) 1994 WL. 86357 (S.D.N.Y. 1994)......5

In re Louanne Frances Anderson,
128 B.R. 850 (D. R.I. 1991)...............................17

Meredith, Inc. v. Marketing Resources Group of Oregon,
No. 4:04CV1727-DJS 2005 WL 2334294 (E.D. Mo. 2005).........5

Nike, Inc. v. Top Brand Co. Ltd.,
216 F.R.D. 259 (S.D. N.Y. 2003)...........................17

Plante v. Fleet National Bank,
978 F. Supp. 59 (D. R.I. 1997).........................5, 7

Qualcomm Corp. v. Broadcom Corp.,
No. 05cv1958-B(BLM) 2008 WL 66932 (S.D. Cal. 2008)...passim

Rottlund Co. Inc. v. Pinnacle Corp.,
222 F.R.D. 362 (D. Minn. 2002)........................passim

Thornton-Trump v. United States,
3 U.S.P.Q. 2d (BNA) 1359 (Cl. Ct. 1987)................7, 19

United States v. Ross,
535 F.2d 346 (6th Cir. 1976).............................16

Young v. City of Providence ex rel. Napolitano,
404 F.3d 33 (1st Cir. 2005)...............................5

**OTHER AUTHORITIES**

28 U.S.C. § 1927..........................................passim

Federal Rule of Civil Procedure 26(g)......................passim

Rhode Island Rules of Professional Conduct Rule 3.3(a).........14

**TOWER'S MOTION FOR SANCTIONS AGAINST SHANGHAI ELE PURSUANT TO 28 U.S.C. § 1927, RULE 26(g) AND THE COURT'S INHERENT POWER**

## I. INTRODUCTION

Tower Manufacturing Corporation files this Motion for Sanctions because Shanghai ELE's conduct throughout the jurisdictional phase of the case has far exceeded fair advocacy and instead has constituted obstructive behavior. As the Court pointed out, defendant Shanghai ELE's conduct in pursuing its now denied motion to dismiss has been "troubling" and "disturbing," particularly in Shanghai ELE's presentation of facts to the court. Report and Recommendation re Shanghai ELE's Motion to Dismiss (Dkt. No. 80, "Report and Recommendation") at n. 3. Not only did Shanghai ELE file its motion to dismiss based on dubious facts that have since been proven false, but Shanghai ELE and its counsel also ignored their opportunities and shirked their duties to correct those facts when it became clear that they were false. By buttressing its original motion and maintaining that motion with false facts, Shanghai ELE wasted this Court's judicial resources for many months and cost Tower hundreds of thousands of dollars in legal fees, netting Shanghai ELE a free year of what Tower believes is infringing competition in the marketplace. To (1) curb Shanghai ELE's troubling and disturbing conduct in the remainder of the proceedings, (2) punish Shanghai ELE for its conduct, and (3)

reimburse Tower for the money expended to combat such conduct, Tower seeks sanctions against Shanghai ELE and its attorneys under 28 U.S.C. § 1927, Federal Rule 26(g), and the Court's inherent power.

Shanghai ELE's questionable conduct includes the following, in roughly chronological order:

- November 2006 and February 2007: Underpinning its Motion to Dismiss (Dkt. No. 13) with Shanghai ELE's CEO's sworn declaration (Dkt. No. 14) that **Shanghai ELE never sold the accused LCDIs in the United States** and repeating that claim in a Motion for Protective Order (Dkt No. 22) and again at a hearing on that Motion (Motion for Protective Order Hr'g Tr. 4:21-25, January 22, 2007, attached as Ex. A to Declaration of Larissa S. Bifano ("Bifano Dec.")). Tower later uncovered proof that by the date of the declaration, **Shanghai ELE had actually sold at least 74,000 LCDIs to U.S. manufacturers,** resulting in revenue of over $390,000. Report and Recommendation at n. 3.

- November 2006: Bolstering its Motion to Dismiss with a sworn statement that **Shanghai ELE never sold other products such as GFCIs to U.S. manufacturers**, even though Shanghai ELE **later admitted that it sold GFCIs to U.S. customers**, including The Home Depot, Inc. (See Motion to Dismiss Hr'g Tr. 11:17-19, November 21, 2007, attached as Ex. B to Bifano Dec.).

- November 2006-November 2007: **Failing to cite the controlling Federal Circuit case**, Beverly Hills Fan v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994), in its Motion to Dismiss and misdirecting the Court to First Circuit law on reply and at the Motion to Dismiss hearing. (See Motion to Dismiss Hr'g Tr. 22:14-25 – 23:7, attached as Ex. B to Bifano Dec.).

- December 2006 – April 2007: **Failing to produce invoices** in jurisdictional discovery **that Tower had to uncover from third parties**, such as the Shanghai ELE invoices to Friedrich Air Conditioning Co. of Texas, that demonstrated that Shanghai ELE sold LCDIs to Friedrich.

- April – November 2007: **Neglecting to alert the Court**, despite months of opportunity and Tower's discovery of contradictory facts, **that Shanghai ELE's factual claims** in its Motion to Dismiss and declaration that Shanghai ELE had made no U.S. LCDI and GFCI sales **were false**.

- October 2007: Shanghai ELE's VP of Sales **providing inaccurate answers to Written Deposition Questions that the Court had required answers to in a prior sanctions order**, and swearing under penalty of perjury that he "diligently" reviewed Shanghai ELE's customer support records for evidence regarding LCDI support and found none,[1] even though one day later Shanghai ELE's document production included LCDI customer feedback forms. (See Declaration of Kenneth X. Xie and Exs. JJ-NN to same, attached as Ex. D to Bifano Dec.).

By this misconduct, Shanghai ELE has violated 28 U.S.C. § 1927, Federal Rule 26(g), and has tarnished the integrity of the judicial process, in addition to wasting both the Court's and Tower's time. If Shanghai ELE had been forthright with Tower and with the Court, many months of painful discovery, from third parties and Shanghai ELE, would have been avoided. Therefore, Tower requests that this Court sanction Shanghai ELE.

[1] See Answer to Question No. 30 of Deposition Upon Written Questions, attached as Ex. C to Bifano Dec. at 7.

## II. SHANGHAI ELE'S NUMEROUS MISSTATEMENTS COUPLED WITH SHANGHAI ELE'S FAILURE TO CORRECT THEM BEFORE THE COURT ARE SANCTIONABLE UNDER THE COURT'S INHERENT POWER TO PROTECT THE INTEGRITY OF THE ADJUDICATIVE PROCESS

The Court can assess attorney's fees against Shanghai ELE and its attorneys for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons," to protect the integrity of the adjudicative process. Chambers v. NASCO, 501 U.S. 32, 50 (1991) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975). In similar circumstances to those here, the Minnesota District Court, on a personal jurisdiction motion to dismiss, sanctioned the defendant and its counsel for misrepresenting the defendant's contacts with the forum and for failing to sufficiently investigate those facts before filing its motion to dismiss. Rottlund Co. Inc. v. Pinnacle Corp., 222 F.R.D. 362 (D. Minn. 2002). Two other courts also have sanctioned parties under Federal Rule 11 for misrepresenting jurisdictional facts and failing to investigate

facts and law.[2] Meredith, Inc. v. Marketing Resources Group of Oregon, No. 4:04CV1727-DJS 2005 WL 2334294 (E.D. Mo. 2005) (defendant sanctioned for misrepresenting jurisdictional facts, even though defendant won its motion to dismiss); Kraemer Export Corp. v. Peg Perego U.S.A., No. 93 Civ. 0198 (PKL) 1994 WL 86357 (S.D.N.Y. 1994) (defendant misrepresented in motion, reply, and declaration its contacts with New York; court sanctioned defendant for failure to investigate the appropriate facts and law). This Court, under its inherent power, should sanction Shanghai ELE, its CEO, its VP of Sales, and its counsel for their troubling and disturbing conduct.

### A. The Court Should Sanction Shanghai ELE and its Counsel for Long Zhang's and Shanghai ELE's Counsel's Misrepresentation of Shanghai ELE's U.S. LCDI Sales

Central points made by Shanghai ELE in its Motion to Dismiss were that:

[2] Although it is too late for Tower to file a Rule 11 motion, the Court can impose Rule 11 sanctions upon ELE and its counsel *sua sponte*. Chambers v. NASCO, 501 U.S. 32, 50 (1991); see also Young v. City of Providence ex rel. Napolitano, 404 F.3d 33 (1st Cir. 2005) (recognizing that a district court can raise Rule 11 sanctions on its own, but reversing Judge Lisi's *sua sponte* Rule 11 sanctions as the particular statements at issue did not violate Rule 11). Additionally, this Court has granted Rule 11 Sanctions to a movant who did not formally satisfy the 1993 Amendment's safe harbor notice requirement. See Plante v. Fleet Nat. Bank, 978 F. Supp. 59 (D. R.I. 1997).

> **Shanghai ELE's products subject to this patent infringement action are all manufactured and sold in China** for assembling into air conditioner units by unrelated third party manufacturers in China, **and imported and sold in the United States without any control of Shanghai ELE** by third party entities completely unrelated to Shanghai ELE. (Dkt. No. 13, Shanghai ELE's Memorandum at 1, final bullet point).
>
> The only action by Shanghai ELE in connection with its alleged infringing LCDI devices was the manufacturing of its LCDI devices in China and selling them to air conditioner manufacturers in China… (Dkt. No. 13, Shanghai ELE's Memorandum at 1-2).[3]

However, these alleged facts were not true. Therefore Shanghai ELE, through its Chief Executive Officer Long Zhang and counsel, should be sanctioned under the Court's inherent power, because when Mr. Zhang and counsel represented that Shanghai ELE did not sell LCDIs to U.S. customers, they both either (1) knew that fact was incorrect and presented it anyway, or (2) could have determined the truth upon reasonable inquiry, but failed to do so.

With respect to CEO Zhang, there is "no rule that permits a party to withhold plainly relevant information that directly contradicts its assertions in the hopes that the Court will be

---

[3] Mr. Zhang speaks Mandarin and writes in Chinese. Therefore, Mr. Zhang's declaration was in Chinese and had to be translated into English. Should Shanghai ELE argue that the English translation contained mistakes, the Court may note that Mr. Chen, Shanghai ELE's attorney also speaks Mandarin, writes in Chinese, and, as shown by the June 1, 2007 Deposition Transcript of Mr. Barkley Bao, is a stickler for correctly translating Chinese to English and vice versa.

duped by the misleading arguments and dismiss the withholding party from suit." Rottlund, 222 F.R.D. at 379. Although the record does not specifically show that Mr. Zhang knew Shanghai ELE sold to U.S. customers at the time Mr. Zhang executed his declaration, as CEO it is hard to believe that he did not know that Shanghai ELE had sold the vast quantities of LCDIs to U.S. customers (74,247 units for $391,565) that Tower later uncovered.

Regarding Shanghai ELE's counsel, even if Mr. Chen was unaware of Shanghai ELE's U.S. sales when he filed the Motion to Dismiss, he was under a duty to thoroughly investigate the facts and should not have accepted Shanghai ELE's misrepresentations about its U.S. sales of LCDIs. A reasonable attorney has a duty to investigate facts and claims (Plante v. Fleet National Bank, 978 F. Supp. 59, 69 (D. R.I. 1997)(attorney failed to conduct cursory investigation into prerequisites for each claim)), as reliance on a client's faulty memory is not always reasonable. Thornton-Trump v. United States, 12 Cl. Ct. 262, 3 U.S.P.Q.2d (BNA) 1359, 1362 (Cl. Ct. 1987). Because Mr. Chen ignored or did not investigate sales of almost $400,000 before presenting the Court with what he claimed were jurisdictional facts, Mr. Chen could not have investigated fully the facts before filing the Motion to Dismiss. Qualcomm Corp. v. Broadcom Corp., No. 05cv1958-B(BLM) 2008 WL 66932 slip op. at *18 (S.D. Cal. 2008)

(The Court, when sanctioning attorneys and client $8.5 million under Federal Rule 26(g) and the court's inherent power, noted that "the Sanctioned Attorneys assisted Qualcomm in committing this incredible discovery violation by intentionally hiding or recklessly ignoring relevant documents, ignoring or rejecting numerous warning signs that Qualcomm's document search was inadequate[4], and blindly accepting Qualcomm's unsupported assurances that its document search was adequate.")

Therefore, the Court can sanction Mr. Zhang and Shanghai ELE's attorneys under its inherent power, either for misrepresenting the facts or for failing to investigate those facts before presenting them to the Court. Rottlund, 222 F.R.D. at 379.

[4] The Qualcomm court also noted that the attorneys' conduct was sanctionable because "one or more of the retained lawyers chose not to look in the correct locations for the correct documents, to accept the unsubstantiated assurances of an important client that its search was sufficient, to ignore warning signs that the document search and production were inadequate, **not to press Qualcomm employees for the truth**, and/or to encourage employees to provide the information (or lack of information) that Qualcomm needed to assert its non-participation argument and to succeed in this lawsuit." Qualcomm, 2008 WL 66932 at *13 (emphasis added).

**B. The Court Should Sanction Mr. Zhang, Shanghai ELE, and Counsel for Misrepresenting Shanghai ELE's GFCI Sales to United States Customers**

Mr. Zhang, Shanghai ELE, and counsel also misrepresented Shanghai ELE's U.S. sales of another product, ground fault circuit interrupters, or GFCIs:

> 10. There are two types of Shanghai ELE's products that are currently sold in the United States markets, but neither of them was imported or sold in the United States directly by Shanghai ELE. One of these two types of products is a Ground Fault Circuit Interruption (GFCI) device… (Dkt. No. 14, Zhang Decl. at ¶ 10, p. 2).
>
> 11. Shanghai ELE's GFCI products were sold to Chinese exporters in China. The Chinese exporters in turn sold the GFCI products to United States importers, which products finally were sold in the United States market through United States distributors and retailers. (Dkt. No. 14, Zhang Decl. at ¶ 11, p. 2).

Backed by Mr. Zhang's declaration, Shanghai ELE argued in its Motion to Dismiss that Shanghai ELE did not sell its GFCIs to U.S. customers, presenting that "fact" as evidence of Shanghai ELE's presence in the U.S. (Motion to Dismiss at 3). However, just as with its LCDI sales, Shanghai ELE later was forced to admit that it does sell GFCIs directly to U.S. customers, but not until after it further mislead the Court about the true nature of Shanghai ELE's GFCI sales to the U.S. market.

Specifically, at a January 22, 2007 Motion for Protective Order Hearing, Shanghai ELE's counsel restated Shanghai ELE's position that it sold GFCIs "to Chinese exporters, and Chinese exporters sell U.S. importers or distributors in the United States, and through that transaction then the product finally sold in United States." (Motion for Protective Order Hr'g Tr. 7:9-12, Jan. 22, 2007, attached as Ex. A to Bifano Dec.). Shanghai ELE never wavered from that position until the Motion to Dismiss hearing ten months later, when counsel admitted that Shanghai ELE sells its GFCIs directly to The Home Depot (Atlanta, GA). (See Motion to Dismiss Hr'g Tr. 11:17-19, November 21, 2007, attached as Ex. B to Bifano Dec.).

As with the misrepresentations regarding LCDI sales in the U.S., this conduct regarding GFCIs shows that Mr. Zhang, Shanghai ELE, and Shanghai ELE's counsel either misrepresented jurisdictional facts or failed to investigate jurisdictional facts before presenting them to the Court, and warrants sanctions. Rottlund, 222 F.R.D. at 379.

### C. The Court Should Sanction Mr. Bao, Shanghai ELE, and Counsel for Misrepresenting Shanghai ELE's Possession of LCDI Customer Feedback Forms

Barkley Bao--Shanghai ELE's Vice President of Sales--Shanghai ELE, and Shanghai ELE's attorneys either falsely claimed that Shanghai ELE did not have LCDI customer service

reports or failed to properly investigate the facts surrounding such reports before Mr. Bao provided his answers to written deposition questions ordered by the Court. In Shanghai ELE's Answer to Question No. 30, Mr. Bao stated that "[a]fter a duly diligent review of our customer support feedback files, I have not located records of any instances in which such support was provided to any LCDI customer." (Ex. C to Bifano Dec. at 7).

A day after Mr. Bao's statement, Shanghai ELE's counsel forwarded Tower's counsel a supplemental document production comprising 34 pages of forms (most of which were in Mr. Bao's native language, Chinese). Tower investigated these forms by having them read and translated by a Chinese fluent lawyer. These documents turned out to be the very forms Mr. Bao swore did not exist, including one associated with a customer's return to Shanghai ELE of a defective LCDI from the United States. (See Xie Declaration, attached as Ex. D to Bifano Dec., at ¶ 39 and Ex. JJ to Xie Declaration). Thus, Mr. Bao, Shanghai ELE, and Shanghai ELE's counsel should be sanctioned under inherent power for misrepresenting the facts about U.S. customer feedback or for failing to investigate those facts before presenting them to the Court.

**D. The Court Should Sanction Shanghai ELE's Counsel for Failure to Investigate and Misrepresentation of Jurisdictional Law**

In addition to the documented disregard for the facts, Shanghai ELE and its counsel also have not been straightforward about the law applicable to the Motion to Dismiss. In the Motion to Dismiss, rather than address controlling Federal Circuit precedent on personal jurisdiction in patent cases, Shanghai ELE misdirected the Court to First Circuit law on personal jurisdiction and failed to cite the controlling Federal Circuit authority on stream of commerce personal jurisdiction: Beverly Hills Fan. Shanghai ELE then continued to argue the incorrect law, including at the hearing on the Motion to Dismiss, where Magistrate Judge Martin specifically noted this issue by asking Shanghai ELE's Counsel: "[w]hy do you cite Boit versus Gar-tech Products, a First Circuit Case…?" (Motion to Dismiss Hr'g Tr. 22:19-21, attached as Ex. B to Bifano Dec.). In the face of this question, Shanghai ELE could not make any good faith argument for extending, modifying, or reversing existing law such that Shanghai ELE would not be required to follow Federal Circuit authority. Instead, it misdirected the Court by incorrectly implying that it was Tower who had cited the incorrect law in Tower's Rule 4(k)(2) arguments. (Id. at 23:3-7). Rather than charging Tower with off-point legal

research, Shanghai ELE should have properly investigated the law before filing and arguing its Motion to Dismiss.

### E. The Court Should Sanction Shanghai ELE's Counsel for Failure to Correct Misrepresentations before the Court

Shanghai ELE's counsel also failed to correct the factual misrepresentations contained within (1) the Motion to Dismiss and accompanying Zhang declaration, (2) the Motion for Protective Order, and (3) Mr. Bao's Answer to Question No. 30. This Court noted in its opinion that:

> ELE did not notify the Court of the misstatements in Zhang's declaration, nor has it offered any explanation for them. Even more troubling, ELE's counsel repeatedly states in their initial memorandum that ELE had not made any direct sales of LCDIs to U.S. manufacturers. . . .ELE's counsel never advised the Court that these statements were incorrect, even after counsel clearly had such knowledge. Cf. Jones v. Derwinski, 1 Vet. App. 596, 606 (Vet. App. 1991)("[T]here is an inherent professional obligation imposed upon attorneys to correct misstatements."); Hale v. Sklodowski, No. 87 C 8817, 1988 WL 61184, at *3 (N.D. Ill June 2, 1988)("The obligation to disclose contrary authority also imposes an obligation on attorneys to correct an inaccurate statement when they learn of it."). Their failure to do so is disturbing. (Memorandum and Order at n. 3.)

At numerous times throughout the year in which the Motion was pending, Shanghai ELE could have corrected these misrepresentations, but chose not to, even when confronted with the misstatements via Tower's Objection to the Motion to Dismiss. For example, Shanghai ELE did not even mention the misstatements in its Reply, but instead flipped them into an

argument that its direct U.S. sales supported its position against Rule 4(k)(2) jurisdiction in Rhode Island. (Reply at 1-2, Dkt. No. 74). This selective use of the "truth" should not be tolerated.

Additionally, the merger of Shanghai ELE's first law firm Alschuler Grossman into Bingham McCutchen did not result in correction of these misstatements, despite new counsel's assurance that "I hope that the atmosphere of the case can change with, certainly [with] my involvement…" (Motion for Sanctions Hr'g 15:18-20 July 24, 2007, attached as Ex. G). The Bingham firm's involvement did not bring about the changes assured at the hearing, as Shanghai ELE never corrected its misstatements.

Further, under Rule 3.3(a) of the Rhode Island Rules of Professional Conduct, a lawyer may not "knowingly make a false statement of material fact to a tribunal" or "offer evidence that the lawyer knows to be false." Rule 33(a) also requires that "[i]f the lawyer has offered material evidence and comes to know its falsity, the lawyer shall take reasonable remedial measures." Shanghai ELE's counsel violated this Rule of Professional Conduct by failing to inform the Court of the falsity of the evidence offered in support of its Motion to Dismiss.

In summary, this Court should sanction Shanghai ELE and its attorneys under inherent power, for:

- Making false statements about Shanghai ELE's direct U.S. sales of LCDIs;
- Making false statements about Shanghai ELE's direct U.S. sales of GFCIs;
- Making false statements about Shanghai ELE's possession of LCDI customer service reports;
- Failing to reasonably investigate the law applying to the Motion to Dismiss, or misleadingly citing inapplicable law from the wrong circuit; and
- Failing to correct the numerous misstatements after their inaccuracy was clear.

## III. SHANGHAI ELE'S CONDUCT UNREASONABLY AND VEXATIOUSLY MULTIPLIED THE PROCEEDINGS UNDER 28 U.S.C. § 1927

Tower needed many months of discovery to prove the Rhode Island Court had jurisdiction over Shanghai ELE. If Shanghai ELE had been honest or had conducted an appropriate investigation into its contacts with the United States, this time frame surely would have been shortened, and perhaps no discovery would have been needed. For example, after Shanghai ELE resisted Tower's discovery efforts regarding Shanghai ELE's contacts with Friedrich in Texas, Tower subpoenaed Friedrich on

February 2, 2007. Although Shanghai ELE's attorney, Mr. Chen, was aware of the subpoena and Tower's subsequent motion to compel filed in Texas, Shanghai ELE did not provide Tower with Friedrich/Shanghai ELE invoices until April 13, 2007, after Tower had spent over two months and over $30,000 to obtain those documents from Friedrich. (See Bifano Dec. at ¶8).

Although the record does not clearly specify that Attorney Chen had knowledge of Shanghai ELE's sales of LCDIs to U.S. customers at the time he filed the Motion to Dismiss, he at least knew of Shanghai ELE's relationship with Friedrich as of February 16, 2007. On February 16, 2007 Friedrich's counsel wrote to Tower, copying Mr. Chen, indicating that Tower should seek the Friedrich/Shanghai ELE subpoenaed invoices from Shanghai ELE before seeking them from Friedrich. (See Letter from T. Lee to L. Bifano, attached as Ex. I). However, Mr. Chen never corrected the statements denying U.S. LCDI sales in the Motion to Dismiss and waited until April 13, 2007, almost two months after Friedrich's letter and after Tower had spent over $30,000, to produce the invoices.

Shanghai ELE's counsel's conduct was "an intentional departure from proper conduct or, at a minimum, a reckless disregard of the duty owed by counsel to the court" Fusco v. Medeiros, 965 F. Supp. 230, 255 (D. R.I. 1996) (citing United States v. Ross, 535 F.2d 346, 349 (6th Cir. 1976)); Id. (citing

In re Louanne Frances Anderson, 128 B.R. 850 at 856 (D. R.I. 1991). "When counsel's conduct unnecessarily delays the discovery proceedings, § 1927 sanctions are appropriate." Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 275-276 (S.D. N.Y. 2003)(court sanctioned defendant's counsel under 28 U.S.C. § 1927 for making false statements in a declaration, causing the plaintiff to prove the statements false through months of discovery, and diverting the "plaintiffs and the court from the real issues in the case.") Like the defendant in Nike, Shanghai ELE multiplied the jurisdictional phase of this proceeding by delaying the discovery and failing to timely disclose its U.S. LCDI sales to Tower.

Shanghai ELE may argue that since Tower continued to pursue Friedrich after April 13, Tower would have served and litigated the subpoena regardless of Shanghai ELE's conduct. However, Shanghai ELE's disturbing and troubling conduct required Tower to verify all of Shanghai ELE's statements with third parties. From the beginning, i.e., the Motion to Dismiss, Tower could not trust Shanghai ELE's representations and had to independently verify them. Thus, Shanghai ELE's and Shanghai ELE's counsel's objectively deceitful conduct significantly increased the time and effort required for Tower to uncover Shanghai ELE's true jurisdictional facts.

Even if Mr. Chen was unaware of Shanghai ELE's U.S. sales when he filed the Motion to Dismiss, he should have more thoroughly investigated the facts and should not have accepted Shanghai ELE's misrepresentations about its sales of LCDIs and GFCIs in the United States.

Therefore, regardless of whether Shanghai ELE's counsel (1) intentionally misrepresented the jurisdictional facts, or (2) failed to fully investigate Shanghai ELE's jurisdictional facts, either conduct is sanctionable. Further, Shanghai ELE's failure to alert the Court and Tower of the misrepresentations, once Shanghai ELE became aware of them, is sanctionable under Section 1927 as well. Therefore, this Court should sanction Shanghai ELE under 28 U.S.C. § 1927 for its objectively deceitful conduct, which multiplied the litigation unreasonably and vexatiously. Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990).

## IV. THE CONTRADICTION BETWEEN MR. BAO'S ANSWERS TO WRITTEN QUESTIONS AND SHANGHAI ELE'S DOCUMENT PRODUCTION VIOLATE RULE 26(g)'S CERTIFICATION REQUIREMENT

Shanghai ELE's discovery practices already resulted in one order requiring it to pay sanctions penalties and provide sworn answers to written deposition questions. (August 10, 2007 Sanctions Order, Dkt. No. 70, at 23). Having once been warned, Shanghai ELE should have known to be doubly careful in complying

with that sanctions order by providing accurate answers to the written questions. However, the facts suggest that Shanghai ELE was not so careful. Specifically, on October 10, 2007, Mr. Bao and Mr. Stanley (Shanghai ELE's counsel) certified under penalty of perjury that the information contained within Shanghai ELE's Answers to Written Questions was "true and correct." (Answers to Written Questions at 23 and 24, attached as Ex. C to Bifano Dec.). As discussed above, one day later Tower knew Mr. Bao's answers were not all "true and correct."

The Rule 26(g) signatures of Mr. Bao and Mr. Stanley certify, among other things, that the Mr. Bao and Mr. Stanley made a reasonable inquiry into the factual basis of the discovery responses. "Rule 26(g) requires counsel to 'stop and think' about a response" before service of the response. Rottlund, 222 F.R.D. at 385; see also Qualcomm, 2008 WL 66932 at *7. Answering an interrogatory incorrectly, as Mr. Bao did, is an example of inadequate or unreasonable inquiry into the factual basis of the discovery response. Thornton-Trump v. United States, 3 U.S.P.Q.2d (BNA) 1359 (Cl. Ct. 1987). The certification requirements authorize sanctions against Mr. Bao and Mr. Stanley for failing to comply with the rule. See Federal Rule 26(g)(3).

The best Shanghai ELE and its attorneys can claim is that they failed to provide Mr. Bao with the relevant documents for

his answers. At worst, however, the timing suggests that they may have attempted to bury the 34 pages of customer support documents by swearing one day that they did not exist, yet providing them in Chinese the next.

Mr. Bao claimed to have conducted a diligent search of his files and was unable to locate any LCDI feedback forms. However, someone at Shanghai ELE, potentially Mr. Bao, found the 34 pages of LCDI feedback forms and provided them to Shanghai ELE's attorneys. As Shanghai ELE's 30(b)(6) witness on customer support issues, i.e., the person at Shanghai ELE that is most knowledgeable on customer support issues, Shanghai ELE and Mr. Bao have "an obligation to conduct a reasonable investigation and review to ensure that the witness does possess the organization's knowledge." Qualcomm, 2088 WL 66932 at *11.

Shanghai ELE has not offered any explanation for the inconsistency and has not corrected Mr. Bao's written answer. Perhaps Shanghai ELE suspected that Tower would not translate the customer feedback forms and would not expose Shanghai ELE's web of lies or shoddy diligence. However, Tower did translate the documents and exposed them in its Objection to Shanghai ELE's Motion to Dismiss (Dkt. No 73). Notably, Shanghai ELE failed to address this issue, either in its Reply or at the Hearing.

Therefore, because Shanghai ELE either failed to investigate the factual basis of its discovery response or interposed the responses for an improper purpose (to bury the 34 pages of Chinese feedback forms), this Court should sanction Shanghai ELE under Rule 26(g)(3) for failure to comply with the certification requirements of Rule 26(g)(2).

## V. CONCLUSION

For the reasons stated above, Tower requests this Court sanction Shanghai ELE for its conduct related to its Motion to Dismiss. Tower requests attorneys' fees and costs for preparing this motion and for Shanghai ELE's deceitful conduct, and requests permission to supplement this motion, if necessary, with a statement of fees and costs.

Respectfully submitted,

PLAINTIFF
TOWER MANUFACTURING CORP.,

By its attorneys:

Bruce W. Gladstone (#2643)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
Tel.: 401.331.5700
Fax: 401.331.5787
Email: bgladstone@cm-law.com

John J. Cotter (*pro hac vice*)
Larissa S. Bifano (*pro hac vice*)
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Email: john.cotter@klgates.com
Email: larissa.bifano@klgates.com
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel.: 617.261.3100
Fax: 617.261.3175

Dated: April 14, 2008 By: /s/ John J. Cotter

CERTIFICATE OF SERVICE

I, Larissa S. Bifano, certify that on April 14, 2008, a true and correct copy of TOWER'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927, RULE 26(G) AND THE COURT'S INHERENT POWERS was served upon the attached Service List in the manner indicated.

/s/ Larissa S. Bifano

**SERVICE LIST**

| | | |
|---|---|---|
| Jeffrey S. Brenner<br>**Nixon Peabody LLP**<br>One Citizens Plaza<br>Providence, RI 02903 | ECF | Local Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Tony D. Chen<br>**Bingham McCutchen LLP**<br>1620 26th Street, Suite 4000N<br>Santa Monica, CA 90404-4060 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Joshua M. Dalton<br>Lawrence T. Stanley, Jr.<br>**Bingham McCutchen LLP**<br>150 Federal Street<br>Boston, MA 02110 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Bruce W. Gladstone<br>**Cameron & Mittleman LLP**<br>56 Exchange Terrace<br>Providence, RI 02903 | ECF | Local Counsel for Plaintiff,<br>**Tower Manufacturing Corp.** |