# Supplemental

## Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TOWER MANUFACTURING CORPORATION C.A. NO.06-170 S

Plaintiff

vs. Providence, RI
JULY 24, 2007

SHANGHAI ELE

Defendant

BEFORE MAGISTRATE JUDGE DAVID L. MARTIN
(Motion for Sanctions)

APPEARANCES:

FOR THE PLAINTIFF:

BRUCE W. GLADSTONE, ESQ.
56 Exchange Terrace
Providence, RI 02903
331-5700

JOHN J. COTTER, ESQ
Kirkpatrick & Lockhart
Boston, Ma 02111
617-261-3175

LARISSA S. BIFANO, ATTY
Kirkpatrick & Lockhart

FOR THE DEFENDANT:

VICTOR POLK, ESQ.
Bingham McCutchen
150 Federal Street
Boston, MA 02110
617-951-8736

JEFFREY S. BRENNER, ESQ.
Nixon Peabody LLP
454-1000

(via telephone) TONY D. CHEN, ESQ.

RECEIVED
AUG 6 2007
By

sanctions in our reply so I'm going to rest on the papers, unless you have particular issues which I'm happy to address. I feel that this discovery and the amount of time we have taken with the Court has been considerable and I'd like to move it as fast as we can.

THE COURT: As I recall, the Court authorized a period of jurisdictional discovery in this case. Is that correct?

MR. COTTER: Yes, your Honor.

THE COURT: Is there an end date for that period of jurisdictional discovery?

MR. COTTER: The end date was pegged to when discovery, when the depositions, I believe, were complete, so there was a period of time after we finished getting this discovery done that at that point the opposition will be due. That time hasn't expired yet because we haven't completed the discovery, despite the efforts.

THE COURT: All right. Thank you, Mr. Cotter.

MR. COTTER: Thank you, your Honor.

THE COURT: I'll hear from counsel for Shanghai Ele.

MR. POLK: Your Honor, I believe that once this motion is resolved, there are no further questions

under the 30(b)(6) deposition that would be authorized by the Court, that jurisdictional discovery is over and it's time to get to the substance of that motion.

Having said that, on the sanctions motion, first of all, I'm Victor Polk obviously representing Shanghai Ele.

Your Honor, I may be old-fashioned, but I really don't understand this proceeding here. If you read the papers that they are relying on, what you have is a fair amount of characterization of, I think, sometimes accusations as opposed to specific citations to the record which I believe in a sanction motion is key.

Let me take what I think are the major issues that are raised. They ask for sanctions on each of the motions to compel that have been filed. They ask specifically on the first motion to compel, which was a document request and interrogatory responses, and what they tell you, and I'm looking at pages 2 and 3 of their original motion, as grounds for sanctions in this case that the Court substantially granted Tower's request. Now again, I haven't been in the case. I wasn't here when your Honor dealt with the case, dealt with the motion, but all I can do is read the pleadings and the history here, and to represent in a motion for sanctions that the Court substantially granted Tower's

request, that's not what I read in the record. What I saw in the record was your Honor basically painstakingly going through the interrogatories, going through the document requests, limiting them gravely, and so the idea that sanctions -- something was wrong in bringing that motion, I think that it would stand the record.

They also say with regards to the order that we didn't comply in a timely fashion with the document requests. And again, I'm sorry, but maybe I'm old-fashion, but they start with this argument that the response date was the 16th, I believe, of April, and that on the 20th they hadn't received the responses and they sent an email to Mr. Chen and said where are they, and literally the next day they get an email back with the response, with a certificate of service, within the period.

Now, I believe Mr. Cotter when he said that they didn't get the response. I mean, there's no question of believing counsel. But what I don't understand that in a motion for sanctions to not believe the certificate of service from opposing counsel has been something that's screwed up in the process because it came the day after. If he were looking for a four day extension he could have gotten it by picking up the

phone because in every jurisdiction I know when you call counsel on the other side and say, hey, I'm having trouble with a foreign client, I need four days, he could have gotten it. There's no suggestion in the record anything happened here other than something happened in the mail. The documents didn't get there, and quite frankly, to make that as a part of your motion for sanctions, again, I don't know what's motivating them, but to bring that to a federal court when literally the day after they said we didn't get your response they got an email with a response, I think, again, is inappropriate.

And the biggest part of it is, and this is what I say about characterization as opposed to citations to the record, they say we haven't produced all the documents that we were required to produce. And if you look at page 4 of their reply brief on this issue, because what they do is they say Shanghai has not denied, for example, the sales with Home Depot and has reason to know. Well, now wait a second, your order didn't say if plaintiff claims that they bought a product at Home Depot you have to produce. Your order was very different from that. It was what do you know. Again, and this is maybe again I'm old-fashion, I believe Mr. Cotter when he says he has evidence that

products purchased at Home Depot have one of these devices on it. I believe that. But in terms of defining my client's discovery obligations, if we'd gone back and said, look, the Judge has said no wilful blindness here. If you have reason to believe based on anything, and we've pushed anything, that these are being sold in the United States, we want to know and produce, and quite frankly with my getting in the case we pushed even harder and produced more documents. But they come in now and they say to you, well, they have reason to believe. What basis do we have reasons to believe that? There's no basis cited in the record other than their complaint, and Mr. Cotter's allegation. I believe Mr. Cotter that that isn't the basis for giving discovery and saying there's an obligation on behalf of my client. And I would suggest to your Honor on the document production, there is not one shred of evidence which would allow this Court to find that my client has not provided documents completely responsive to the Court's request.

They then go off on another issue, third party discovery. They ask for sanctions that we pay for all of their third party discovery. Now, it's fine, your Honor, but I think again it's at least somewhat misleading what they say. They point in one example to

a party where they had to go to Texas with a motion to compel Friedrichs, and they point to, in responding to their subpoena, Friedrichs, with regard to two of the four requests, said, well, we spoke to Mr. Chen and Mr. Chen told us that Shanghai was going to produce the documents, so we don't want to have to produce the documents. Basically a burden argument. The Court properly rejected the argument from Friedrichs, fine. But what do you have in the record that suggests that Shanghai Ele or Tony Chen were out there trying to get Friedrichs not to respond? You have nothing. What you have now in response to their motion, they didn't bring this up in their reply so maybe they're not pushing it, but what we have in response is Mr. Chen's statement, look, when we got notice of these subpoenas to third parties, we took no affirmative action to contact any of them. No affirmative action. Now as is usual in many of these cases, and certainly I've experienced being practicing for longer than I want to admit, you do get calls from people who say, okay, we're doing this. We want to talk to you about what we're doing. And what Mr. Chen said is, you know, I told them where we were, what we were doing, but you don't have a suggestion of any attempt to inhibit discovery, and to say Shanghai Ele was involved in third party discovery,

I don't think is borne out by the record. And notice what they say, and I'm quoting from page 5 of their reply -- I'm sorry, it may not be the reply, your Honor, it may be the original motion: "As a result, once again Tower had to move to compel." Well -- because, you know, Mr. Chen had said we're going to be producing the documents, anyway. Well, that again isn't completely accurate because they had to move to compel on the other issues that were before Judge Garcia. If you look at the order which is Exhibit G to their pleading, he's ruling on a series of objections of Friedrichs. The only one that has anything to do with us is the first two. So they had to move with regard to other things. So the idea that we're responsible for that doesn't work.

But then they even go further, remember? They're not just asking for that one, they're saying all third party discovery we should be required to for. And again, let's look at the specifics on it. If you look at where they placed that argument in their brief, right before the deposition discovery, you would think that what happened is they went through these motions to compel, and difficulty getting documents, and then served some subpoenas because they were forced to do it. Again, it's a misleading suggestion to the Court.

These subpoenas were out there in early January. Judge Garcia cites the Friedrichs' subpoena as being served February 2nd. That's in the record. That is before your rulings on February 5th, your rulings in March, the hearings in this case, and so it was necessitated by our misconduct? And they get fees on that? Again, your Honor, it's one of those things it's easy to throw out the charges and the accusations but do they withstand scrutiny? And I again suggest it does not.

With regard to the depositions, which is the deposition which I think is the third category here. Again, I think you see misdirections. First of all, and again, I wasn't there for it, your Honor, but the characterization of the Hong Kong deposition asking for the motion to costs (inaudible) and the motion to compel, just the Hong Kong deposition, as if we had done something wrong by questioning the -- they came in and got an order that it be in Shanghai, in the Peoples Republic of China, or as near as practicable to Shanghai. He rendered that order. They drafted that order. To suggest that we did something wrong when it turned out that, no, they couldn't take a deposition in the Peoples Republic of China, and they wanted him to get a VISA to go to Hong Kong, again, to suggest that we did something wrong there is improper, I think is

wrong.

They also make this big deal about this supposed delay in getting the VISA, and point out, well, he hadn't applied for it for nearly a month after the Court's ruling. First of all, your Honor, he had the VISA by May 7th. Your ruling was in mid March. I don't know China, your Honor, but it doesn't strike me that that's a huge delay in getting a VISA. We've got the affidavit from Mr. Val talking about the steps that he took to get that VISA and what he did to get that VISA. And, your Honor, again, you have to look at the affidavit, but what you see is a series of steps to get a VISA, and that the Chinese government because it's worried apparently about citizens going to Hong Kong as a way of leaving the country, they regulate that fairly vigorously and he had a number of things he had to get to. Again, in my view, I would suggest to the Court that you've seen a lot of charges. And again, I hope that the atmosphere of the case can change with, certainly with my involvement because I don't understand this way of proceeding with a series of charges that -- between counsel. I mean, they know the date that he applied because we told them the date he applied for his application.

Let's get to the substance of the deposition.