# EXHIBIT 1

# TO DECLARATION OF JOSHUA M. DALTON

**Stanley, Lawrence T., Jr.**

**From:** Dalton, Joshua M.
**Sent:** Tuesday, April 29, 2008 6:51 PM
**To:** 'Cotter, John J.'
**Cc:** Chen, Tony D.; Stanley, Lawrence T., Jr.
**Subject:** ele/tower

John:

I received your voicemail this morning about the motion for sanctions. I was quite disappointed by Tower's response. For the reasons I've already articulated, and will discuss further below, $30,000 as a compromise payment is well beyond a reasonable offer, and certainly merited a concrete response.

I believe it would be in the best interest of all involved to move past these issues and get to the merits of the case, but ELE cannot and will not bid against itself, nor will it bid against air. You have indicated in our discussions that Tower believes its fees for just its activities after ELE filed its initial motion to dismiss and not including briefing the motion to dismiss are over $300,000. That figure seems grossly high, particularly given that ELE's entire fees to date for *everything* in the case are well less than that. As such, if we are to seriously consider paying anything over $30,000, we will need Tower to provide a more detailed fee claim, and specifically, to indicate what Tower's are fees *not including* those related to matters that have already been vetted by the Court or which are otherwise not properly the subject of a motion for sanctions, including without limitation the following:

1. Jurisdictional Discovery generally (discovery requests and interrogatories)--Tower would have taken jurisdictional discovery anyway because this was a stream of commerce case and Tower had to establish some level of knowledge on ELE's part.

2. Opposing ELE's Motion for Protective Order--ELE had good faith basis for moving for P.O. on grounds that 30(b)(6) deposition was not needed, and even if required, ELE should not be required to travel to the United States for the deposition. While the Court denied ELE's motion for a protective order, it did agree that ELE should not have to travel to the United States for the deposition. Clearly, ELE's motion was in good faith, and the Court's Order does not suggest otherwise.

3. Motion to Compel Discovery--The Court granted in part and denied in part Tower's motion to compel discovery. Notably, the Court significantly narrowed Tower's discovery requests in many respects.

4. Motion to Compel Compliance--The original order (drafted by Tower) required ELE to be deposed in China. Tower learned after it prepared the order that it would not be able to depose ELE in China and that ELE would have to obtain a travel visa to get to Hong Kong for deposition. It was Tower's fault that it did not know it could not depose ELE witness in China. The Court did not suggest that ELE had any bad faith in not obtaining permits to travel to Hong Kong until after the Court ordered it to so travel.

5. Motion for Sanctions I--Many issues already vetted by the Court (including conduct during 30(b)(6) deposition, ELE responses to discovery requests, and Tower third party discovery). Court considered all arguments and awarded certain sanctions to Tower, but denied requests in other respects.

6. Written deposition questions--These questions, which were the result of the first motion for sanctions, have already been accounted for. Moreover, Tower demanded that Bao travel back to Hong Kong to answer the questions. In view of Tower's unreasonable demands, ELE was forced to move for clarification of the Court's order, which the Magistrate granted ELE's motion without waiting for Tower's response. Plainly fees associated with fighting that losing battle should not be included.

7. Translations--Chinese client produced documents as kept in ordinary course of business. Burden of translating is on the requesting party.

8. Other expenditures to note: Tower also prepared and threatened another motion for sanctions against ELE with respect to its Answer and Counterclaim on the grounds that ELE should be sanctioned under Rule 11 for making the standard patent litigation affirmative defenses of inequitable conduct and unclean hands. Notably, in the prior Tower-TRC case before this very Court, Tower moved for a more definite statement with respect to TRC's inequitable conduct, unclean hands, and patent misuse affirmative defenses and counterclaims, and the Court denied that motion. Although ELE's

answer and counterclaim had the same level of detail that this Court found appropriate in the Tower-TRC case and ELE therefore was well aware that Tower's motion was groundless, ELE comprised and withdrew those affirmative defenses in order to avoid the time and expense of opposing that motion and wasting further court resources on a meritless motion.

Frankly, we are struggling to see how Tower can claim it is entitled to fees even up to the $30,000 ELE has already offered, let alone a figure ten times as high. And all this is without account for in what you and I both know will be this Court's reaction to both the number of hours billed and the billing rate. Recall, for example, that even when the Court *agreed* with Tower that it was improperly blocked from getting relevant information from Mr. Bao, and awarded Tower fees for drafting the written questions, it limited Tower to *three hours.* I have no doubt that drafting the 141 questions Tower ultimately served took multiples of that time to actually prepare. And that's something on which you prevailed.

We have tried by making this offer to be objection and put emotions aside. We would expect Tower to do the same. We ask that Tower re-consider its decision to reject the offer, and at a bare minimum, make a reasonable counter offer that fairly excludes those fees listed above which are not the proper subject of a motion for sanctions.

Please get back to me as soon as possible this week, as once we begin drafting an opposition in earnest, we do not expect ELE to permit us to leave the offer on the table.

Rgds.

-Josh