UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION, Plaintiff, v. SHANGHAI ELE MANUFACTURING CORPORATION, Defendant. | CIVIL ACTION NO. 06-00170-S-DLM |

**DECLARATION OF BARKLEY BAO**

I, Barkley Bao, declare and state as follows:

1. I am the manager of the marketing department at Shanghai ELE Manufacturing Corporation ("ELE"). I make this declaration upon my own personal knowledge, except where noted upon information and belief, and if called to testify as a witness, could and would competently testify thereto.

2. I served as the point person for ELE in connection with its efforts to collect documents and information in response to plaintiff Tower Manufacturing Corporation's ("Tower") discovery requests, and I personally reviewed the ELE documents that were collected in response to the discovery requests before sending the documents to counsel.

3. I also served as ELE's representative in connection with Tower's 30(b)(6) deposition notice. Tower initially noticed my deposition for the United States and demanded that I travel halfway around the world for deposition. After ELE sought a protective order, upon Court Order, Tower agreed to take my deposition via videoconference in China. However, after Tower learned that depositions were not permitted in mainland China, Tower demanded that I

travel to Hong Kong for deposition. Upon the Court's Order, I obtained all necessary travel permits and traveled to Hong Kong to sit for my deposition on June 1, 2007. The extensive steps that were required to obtain the necessary travel permits were described in my declaration dated June 25, 2007, which was submitted in response to Tower's first Motion for Sanctions.

4. In response to Tower's first Motion for Sanctions, I understand that the Court permitted Tower to serve written deposition questions upon ELE, which Tower served on or about September 10, 2007. I further understand that Tower demanded that I travel back to Hong Kong to answer the 141 written deposition questions that it served, but that the Court clarified its Order and permitted me to answer the written deposition questions without the burden of traveling back to Hong Kong.

5. After I received the written deposition questions, I pulled and reviewed additional ELE documents that I believed may be responsive to Tower's discovery requests and that would assist me in answering the written deposition questions.

6. On or about October 6, 2007, I conferred by telephone with counsel and discussed each of the 141 written deposition questions and answers one by one. On or about October 10, 2007, I reviewed and signed the answers to the written deposition questions.

7. On or about October 10, 2007, ELE produced over 300 pages of documents that comprised its third production of documents in response to Tower's discovery requests. On or about October 11, 2007, ELE produced, in a separate production, thirty-four pages of "customer support feedback forms" and their corresponding "corrective & prevention action reports" related to LCDIs that ELE had received from air conditioner manufacturers prior to the production of those documents. The feedback forms recorded quality control complaints from air conditioner manufacturers, and the action reports recorded what was done with the quality

control complaints.

8. I understand that Tower has complained that there is a discrepancy between my answers with respect to a select few answers to the 141 written deposition questions and the customer support feedback forms that ELE produced the day after the those answers were served. Specifically, Tower asked in Question 27: "To what customer or customers did Shanghai ELE provide customer support regarding a 'technical problem'?" I responded to Question 27 as follows: "After a duly diligent review of our customer support feedback forms, I have not located records of any instances in which such support was provided to any LCDI customer." In Question 30, Tower asked: "For each customer listed in response to question 27, list all individuals with which Shanghai ELE had contact regarding such customer support." I responded to Question 30 as follows: "After a duly diligent review of our customer support feedback forms, I have not located records of any instances in which such support was provided to any LCDI customer. In general, Shanghai ELE does not record the name of the individual seeking customer support." Tower asked similar questions concerning customer support and customer service generally and business problems, transports problems, and storage problems specifically.

9. I understand that Tower has identified a single customer support feedback form reflecting a communication between ELE and a Chinese manufacturer that refers to a problem with LCDIs that had been imported by the Chinese manufacturer into the United States. In view of that single customer support feedback form, I understand that Tower claims that my answers to questions concerning the feedback forms were incorrect.

10. The document to which Tower refers (ELE-TRC000793) as contradicting my answer to Question 30 relates to products with quality control problems that were returned by

LG's factory in China. Apparently these LCDIs were assembled in air conditioner units by LG's factory in China and then shipped to the United States to be sold, but were returned back from the U.S. due to quality control problems. I did not understand that feedback form, or any of the feedback forms, to be related to "technical problems," a term that I understood at the time of answering the 141 written deposition questions to mean something like design defects or problems that require technical support from ELE to the air conditioner manufacturers. In response to quality control complaints by air conditioner manufacturers, the issue were internally resolved within ELE, and sometimes ELE would replace the LCDIs returned by the air conditioner manufacturers with replacement LCDIs.

11. At the time that I answered the 141 written deposition questions, I had reviewed the customer support feedback forms, and I did not believe that any of my answers contradicted those forms. When I reviewed the customer feedback forms, I noted that they were all in Chinese and therefore assumed they were all records related to air conditioner manufacturers in China.

12. I understand that Tower has suggested in recent papers filed with this Court that I intended to deceive Tower or the Court with my responses, and that they were somehow part of a conspiracy to do so. These allegations have no basis in reality. I had no intent to deceive anyone in responding to the 141 written deposition questions. Indeed, I personally reviewed the feedback forms and provided them to counsel, knowing that they would be promptly served on Tower. Based on previous follow up questions from Tower that were relayed by ELE's counsel concerning ELE's document production, I was well aware that Tower would translate the customer support feedback forms into English. I had reviewed the forms and thought that the substance of the forms were consistent with my answers.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on May 15 2008.

Barkley Bao