IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | Civil Action No. 06-170S |

**PLAINTIFF TOWER'S REPLY TO SHANGHAI ELE'S**
**RESPONSE TO TOWER'S MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 2

A. Incorrect Statements by Mr. Zhang and Counsel and Counsel's Failure To Correct Those Statements Justify Sanctions ........................ 2

B. Incorrect Answers in Mr. Bao's Written Deposition Questions Support Sanctions ............. 5

C. ELE's Failure to Cite Controlling Federal Circuit Law in ELE's Motion to Dismiss Supports Sanctions ........................................ 7

D. ELE's Claim that Tower Would Have Taken the Same Discovery Even If Shanghai ELE Had Not Misrepresented the Facts Is Not Correct ............ 8

III. CONCLUSION ........................................ 9

## I. INTRODUCTION

Shanghai ELE Manufacturing Corporation's ("Shanghai ELE" or "ELE") Response to Tower Manufacturing Corporation's ("Tower") Motion for Sanctions boils down to justifying ELE's activities in question as "sometimes minor grounds"; a "discrepancy"; "a handful of misstatements"; just an "overstated" description of the "lack" of U.S. sales which are "low-level" and "small"; or as encompassing only "some of ELE's behavior." (See Dkt. No. 102, Memorandum in Response("Response") at 1, 3, and 4; Bao Decl. at ¶ 8; Zhang Decl. at ¶¶ 4-7). Shanghai ELE also argues that its behavior did not cause Tower to do any additional discovery, and that Tower is now seeking to affirmatively mislead the Court by filing this motion. (Id., Response at 2).

While the facts of what Shanghai ELE has done and how that affected this case so far are already of record, Tower files this Reply to clarify several points raised in the Response and new declarations.[1] In particular, Tower highlights why Shanghai ELE's behavior cannot be excused as unintentional, and why Shanghai ELE's no harm, no foul defense is wrong in view of the

[1] Shanghai ELE's Response at page 2 and the entire Dalton Declaration raise settlement discussions as support for Shanghai ELE's position. Those arguments and alleged facts should be excluded from consideration under the policy of Rule 408(a), Fed. R. Evid., as they are irrelevant to the merits of any issue in this sanctions motion, and because accepting them here would be contrary to the public policy favoring compromise and settlement of disputes.

significant effort Tower necessarily incurred and the wasting of judicial resources proximately caused by Shanghai ELE's questionable behavior, first in filing its motion to dismiss and then in carrying that motion through with misstatements and lack of candor.

## II. ARGUMENT

### A. Incorrect Statements by Mr. Zhang and Counsel and Counsel's Failure to Correct Those Statements Justify Sanctions.

In his declaration accompanying ELE's motion to dismiss, Mr. Zhang, CEO of ELE, made statements under penalty of perjury that were incorrect at the time he signed the declaration. This is not disputed. Now, ELE submits another declaration from Mr. Zhang stating that he believed his incorrect statements to be true at the time he made them (Dkt. No. 102, Zhang Decl. at ¶ 6), that he did not have significant involvement in the day-to-day operations (Id. at ¶ 7), and that he assumed that no sales of LCDIs had been made directly to the United States. (Id. at ¶ 6).

Even if these claims from Mr. Zhang's second declaration were accepted, it remains inexcusable for the CEO of ELE to have made definitive statements with little personal knowledge and on assumptions. Indeed, the excuse that a declarant believed a statement to be true but had little personal knowledge of the facts supporting the statement could be used to excuse any

incorrect statement, however egregious. Presumably, Mr. Zhang could have easily asked his vice president of sales, Barkley Bao, whether any direct sales were made to the United States, as Mr. Bao knew that ELE had U.S. customers. (See Ex. I to Declaration of Kenneth X. Xie filed under seal on Oct 26, 2007 along with Tower's objections to ELE's motion to dismiss ("Xie Decl.")).

Mr. Zhang's incorrect statements might be excusable if his statements were of incidental fact. But the statement that ELE never directly sold any products in the United States was the central fact supporting ELE's motion to dismiss.

There is also a good question as to whether the court should give any weight to Mr. Zhang's second declaration. First, as a declarant who asserts that he "had absolutely no intent to deceive this Court or Tower when [he] signed [his first] Declaration," he does not explain why he waited until now to come forward with his new position, other than because this motion is compelling him to. (Dkt. No. 102, Zhang Decl. at ¶ 7).

Next, Mr. Zhang's new claim that he did not have significant involvement in Shanghai ELE's day-to-day operations is questionable given that he (1) previously trumpeted his position as CEO for the very reason of impressing the Court that he had knowledge of what goes on at Shanghai ELE, and (2) still provides no evidence of the number of executives or management

structure at Shanghai ELE to back up his new claim that he was remote from the LCDI operations.

In addition, Mr. Zhang's new claim that he assumed ELE had made no sales of LCDIs directly into the United States is not credible given that before he gave his first declaration, Shanghai ELE had designed its LCDI for U.S. standards, and had very publicly marketed LCDIs to the U.S. via its web site.

ELE's counsel also had a duty to make a reasonable inquiry as to whether central statements supporting ELE's argument in the motion to dismiss had evidentiary support. ELE's counsel complain they did everything they should have done to vet the accuracy of the misstatements and should not have been required to fly to China to personally audit ELE's financials. (Dkt. No. 102, Response at 9). Yet counsel could have simply asked Mr. Bao, or read Mr. Bao's E-mails. The relative ease in which ELE's counsel could have discovered that ELE made direct sales to the United States suggests that if ELE's counsel did not know at the time of the initial statements that Mr. Zhang's statements were incorrect, ELE's counsel knew soon thereafter. Shanghai ELE's motion to dismiss was filed on November 21, 2006, and yet it took until October 10, 2007 for ELE to admit that it sold products directly to the U.S. (See Xie Decl., Ex. M, ELE's supplemental interrogatory responses). During the interim period, ELE let Tower discover for itself, through costly

discovery from ELE and third-parties, that Mr. Zhang's declaration and ELE's motion to dismiss were based on incorrect statements.

The failure to adequately inquire into Mr. Zhang's initial declaration statements and counsel's inexcusable failure to correct Mr. Zhang's statements and statements made in ELE's motion to dismiss until almost a year later justifies the imposition of sanctions through the Court's inherent power.[2]

**B. Incorrect Answers in Mr. Bao's Written Deposition Questions Support Sanctions.**

ELE's explanation for the incorrect answers in Mr. Bao's answers to written deposition questions further demonstrates ELE's difficulty with the truth. Mr. Bao, in his latest declaration, explains that he did not understand the feedback forms to be related to "technical problems" because he understood at the time that "technical problems" meant something like design defects or problems that require technical support. (Dkt. No. 102, Bao Decl. at ¶ 10). This new explanation is inconsistent with his deposition answers, which make clear that Mr. Bao understood a "technical problem" to be a product

---

[2] Contrary to ELE's claim that these issues and the others raised in this Motion have already been considered in Tower's prior sanctions motion, the prior motion concerned ELE's failure to comply with discovery orders, not ELE's misstatements and behavior that were fundamental to its motion to dismiss. (See Dkt. No. 56).

malfunction, not a design defect or a problem that requires technical support:

> [Q] 26. Explain in detail what you meant in your June 1, 2007 testimony answer by a "technical problem."
>
> [A] I was referring to a potential problem with the function of the product itself such as a malfunction.
>
> [Q] 27. To what customer or customers did Shanghai ELE provide customer support regarding a "technical problem"?
>
> [A] After a duly diligent review of our customer support feedback files, I have not located records of any instances in which such support was provided to any LCDI customer. (Dkt. No. 89, Ex. C at 6).

The feedback forms, which ELE produced after giving the above responses, concerned LDCI customers complaining about various malfunctions or defects in ELE's LDCI products. It simply strains credibility that Mr. Bao's deposition answers are consistent with the feedback forms and that he did not understand what "technical problem" meant, a phrase he himself used. One can only assume that Mr. Bao in his "duly diligent review" of the customer support feedback files choose to ignore the couple of feedback forms that dealt with LDCI customers and hoped that Tower's counsel would take his deposition answers at face value and not delve into translating the feedback forms. Mr. Bao's answer was not a "good faith attempt to fairly and accurately answer the ... question[] posed" as ELE's counsel has argued. (Dkt. No. 102, Response at 11).

### C. ELE's Failure to Cite Controlling Federal Circuit Law in ELE's Motion to Dismiss Supports Sanctions.

ELE's counsel understood that Federal Circuit law applied to the issue of specific personal jurisdiction in patent cases (Dkt. No. 102, Response at 14-15), and therefore presumably also understood that First Circuit law did not apply. And yet, in ELE's motion to dismiss, while discussing the pivotal stream-of-commerce theory ELE's counsel cited primarily Supreme Court, Rhode Island, and First Circuit cases, but not Federal Circuit authority. Indeed, the memorandum reads as if First Circuit law applies rather than Federal Circuit law. (See Dkt. No. 13 at 14-15).

ELE's counsel's only justification for this is that they "did not find a Federal Circuit case with such clear language on the indisputable point it was asserting." (Dkt. No. 102, Response at 15). ELE's counsel's do not argue they did not know about the adverse controlling law, especially Beverly Hills Fan v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994). Instead, ELE purposefully chose to ignore the adverse controlling law and cited non-controlling law with more favorable language. This is a failure of the duty of candor. See Rhode Island Rule of Professional Conduct 3.3 ("(a) A lawyer shall not knowingly: ... (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the

lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"); also see Comments to Rule 3.3(a)(2) ("A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities").

**D. ELE's Claim that Tower Would Have Taken the Same Discovery Even If Shanghai ELE Had Not Misrepresented the Facts Is Not Correct.**

Even if the court cannot know with certainty what, if any, discovery would have been needed had ELE been accurate and forthcoming, ELE should not be allowed to benefit from its own misrepresentations by avoiding liability for the discovery that was taken.

Many cases, including patent infringement cases, involve motions to dismiss for lack of personal jurisdiction where the plaintiff does not take any discovery at all, and this case could well have been one of them. See e.g. Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co. Ltd., Civil No 2:05-cv-185 (E.D. Texas) (motion to dismiss took less than 4 months to resolve without discovery on jurisdictional facts similar to this case). Public information showed the key facts that ELE's LCDI was UL registered, that ELE's LCDIs were located in and sold in Rhode Island and across the country, that ELE marketed to the U.S. market via its website, that ELE sought U.S. patent protection for its LCDIs, and that ELE produced LCDIs with English language

warnings and identifiers, all independent of discovery from ELE or third parties. (See Xie Decl., Exhibits A-F, H, and II; see also Dkt. No. 80, Report and Recommendation at 20 (summarizing facts on which the Court based it finding that ELE purposefully directed its activities to the U.S. and the forum)). Discovery from third parties and Shanghai ELE was needed specifically because ELE's Motion to Dismiss challenged Tower's jurisdictional allegation by misleading Tower and the Court about even the existence of Shanghai ELE sales directed to the U.S. and Rhode Island.

## III. CONCLUSION

For the reasons stated above and in Tower's Motion for Sanctions, Tower requests that this Court sanction Shanghai ELE for its conduct related to its Motion to Dismiss.

Dated: May 23, 2008

Respectfully submitted,

PLAINTIFF
TOWER MANUFACTURING CORPORATION,

By its attorneys:

/s/ John Cotter
John J. Cotter
(*admitted pro hac vice*)
Email: john.cotter@klgates.com
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

Tel.: (617) 261-3100
Fax: (617) 261-3175

Bruce W. Gladstone
Email: bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
Tel.: (401) 331-5700
Fax: (401) 331-5787

CERTIFICATE OF SERVICE

I, John Cotter, certify that on May 23, 2008, a true and correct copy of PLAINTIFF TOWER'S REPLY TO SHANGHAI ELE'S RESPONSE TO TOWER'S MOTION FOR SANCTIONS was served upon the attached Service List in the manner indicated.

/s/ John Cotter

**SERVICE LIST**

| | | |
|---|---|---|
| Jeffrey S. Brenner<br>**Nixon Peabody LLP**<br>One Citizens Plaza<br>Providence, RI 02903 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Tony D. Chen<br>**Bingham McCutchen LLP**<br>1620 26th Street, Suite 4000N<br>Santa Monica, CA 90404-4060 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Joshua M. Dalton<br>Lawrence T. Stanley, Jr.<br>**Bingham McCutchen LLP**<br>150 Federal Street<br>Boston, MA 02110 | ECF | Counsel for Defendant,<br>**Shanghai ELE Manufacturing Corp.** |
| Bruce W. Gladstone<br>**Cameron & Mittleman LLP**<br>56 Exchange Terrace<br>Providence, RI 02903 | ECF | Counsel for Plaintiff,<br>**Tower Manufacturing Corp.** |