UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TOWER MANUFACTURING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SHANGHAI ELE MANUFACTURING CORPORATION,<br><br>Defendant. | ) | CIVIL ACTION<br>NO. 06-00170-S-DLM |

**SHANGHAI ELE MANUFACTURING CORPORATION'S SUR-REPLY**
**IN RESPONSE TO TOWER'S MOTION FOR SANCTIONS**


OF COUNSEL

Tony D. Chen (*Pro Hac Vice*)
Email: tony.chen@bingham.com
Bingham McCutchen LLP
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Joshua M. Dalton (*Pro Hac Vice*)
Email: josh.dalton@bingham.com
Lawrence T. Stanley, Jr. (*Pro Hac Vice*)
Email: lawrence.stanley@bingham.com
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

*Attorneys for Shanghai ELE Manufacturing Corporation*

As Tower acknowledges in its reply brief, "what Shanghai ELE has done and how that affected this case are already of record." Reply Br. at 1. ELE has explained the circumstances surrounding the three statements in the first Zhang affidavit overlooking a handful of sales directly to the United States; that Tower was not prejudiced by, and did not expend any additional money because of, these statements; and that, while it made this mistake in good faith and without the intent to deceive, ELE deeply regrets that it ever occurred. If the Court finds based on these facts that the stern admonishment that it included in its opinion on the Motion to Dismiss was insufficient, so be it. ELE, however, does not believe further sanctions are warranted, and believes instead that the parties should focus on resolving this case on the merits. Indeed, if anything, the misleading and exaggerated arguments set forth in Tower's reply brief further highlight why sanctions should not be awarded.

## I. THE COURT MAY CONSIDER THE DALTON DECLARATION

Tower's assertion that the Declaration of Joshua Dalton ("Dalton Decl.") should be excluded from consideration under Fed. R. Evid. 408(a) is baseless. *See* Reply Br. at 1, n.1. Tower cites no case law for its position. Rather, Tower conclusorily contends that because the declaration "raise[s] settlement discussions" concerning the parties' efforts to resolve Tower's various motions for sanctions, Rule 408(a) somehow automatically requires that the Court ignore the *entire* declaration. Rule 408(a) is not so inflexible.

Rule 408 is limited in application, providing only that evidence of a settlement is not admissible "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a).[1] "Rule 408 is not an absolute ban on all evidence regarding settlement negotiations. The rule permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability." *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir. 2000), *cert. denied*, 531 U.S. 877 (2000).

Here, the Dalton Declaration was not offered to establish liability and as such should not be

[1] The Rule does "not require exclusion if the evidence is offered for [another] purpose[, such as] proving a witness's bias or prejudice; negating a contention of undue delay; [or] proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

excluded. As an initial matter, the declaration contains a number of strictly factual statements having nothing to do with the back and forth of negotiation.[2] Such statements of fact are expressly *permitted* under Rule 408(a) and may be considered by the Court. Further, statements actually concerning the parties' settlement discussions are likewise permissible under Rule 408 because they were offered only to show ELE's good faith attempts to resolve such matters and not to establish the validity or invalidity of the underlying claim.[3] "[T]he prevailing view appears to be that Rule 408 does not bar an *offeror* from introducing evidence of his own offers," and therefore ELE should be permitted to present such evidence to the Court. *Innovative Engineering & Consulting Corp. v. Hurley & Associates, Inc.*, 2006 WL 2806387, *9 (N.D. Ohio, Sept. 28, 2006). Accordingly, the Dalton Declaration may be considered by the Court.

## II. ELE CANNOT BE SANCTIONED FOR PROPERLY CITING FIRST CIRCUIT LAW REGARDING THE STREAM OF COMMERCE THEORY

Despite ELE's explanation both at the hearing on the Motion to Dismiss and again in its opposition brief to the present motion for why ELE cited First Circuit law in connection with its stream of commerce arguments on the Motion to Dismiss, Tower continues to assert that ELE should somehow be sanctioned for citing First Circuit cases and for not citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). The assertion is meritless.

To start, ELE's moving brief cited several Federal Circuit cases --***post*** *Beverly Hills Fan* -- including several cases citing *Beverly Hills Fan* for the proposition (expressly acknowledged in ELE's moving brief) that Federal Circuit law applies on the Motion to Dismiss. *See* ELE Brief in Support of Motion to Dismiss at 5-6 (acknowledging that "[e]xercise of personal jurisdiction in

---

[2] For example, Mr. Dalton's statements of fact, including (1) that Tower did not confer with ELE before filing its Motion for Sanctions (Dalton Decl. ¶ 2), (2) that during the Rule 26(f) conference ELE raised the issue of Tower's Motion for Sanctions (*Id.* at ¶ 3), (3) that Tower indicated that it was seeking $315,000 on the Motion for Sanctions and that the $315,000 amount did not include Tower's costs and fees associated with researching and drafting its opposition to ELE's Motion to Dismiss (*Id.* at ¶ 4), (4) that ELE has not spent over $300,000 on its entire case (compared to Tower's claim that it has spent over $300,000 on jurisdictional discovery alone) (*Id.* at ¶ 5), and (5) that Tower never provided a breakdown of its fees as requested by ELE (*Id.* at ¶¶ 9-10), were all plainly submitted for purposes other than "to prove liability for, invalidity of, or amount of a claim."

[3] The only statements concerning settlement discussions in the declaration are (1) ELE offered to settle the motion for $30,000 (Dalton Decl. ¶ 7), (2) Tower's statement that it would not discuss settlement unless ELE started negotiations at "six figures" (*Id*. at ¶ 8), and (3) Tower's statement that it was willing to settle for the low "$200,000s" (*Id*. at ¶ 11).

patent infringement cases is governed by Federal Circuit law" and citing, *inter alia*, post-*Beverly Hills Fan* cases *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000), *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995)). The suggestion that one particular case had to be cited rather than a number of more recent Federal Circuit cases citing *Beverly Hills Fan* and the underlying U.S. Supreme Court precedent on personal jurisdiction is ludicrous. *Beverly Hills Fan* was not "controlling authority:" it simply stands for the proposition that the Federal Circuit recognizes the Supreme Court's stream of commerce analysis established in *Asahi Metal Industries Co. v. Superior Court of California*, 480 U.S. 102 (1987). Setting forth the proper standards for the Court to apply is not sanctionable conduct, and it is frankly inappropriate for Tower to continue to assert that it is.

Far more troubling, however, is Tower's demand for sanctions for ELE's citation to First Circuit precedent when -- as the court in one of the cases specifically mentioned in Tower's reply brief confirmed -- that was *precisely the right thing to do* given the outcome in *Beverly Hills Fan*. Since the Federal Circuit has refused to take a position as to which view from *Asahi* (Justice O'Connor or Justice Brennan) it considered controlling, it was entirely proper for ELE to cite First Circuit law in connection with its stream of commerce arguments. Incredibly, Tower cites to the *docket* from *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co. Ltd.*, C.A. No. 05-185 (E.D. Tex.) in its reply brief. Had Tower pulled the pleadings from the docket, it would have learned that the *Jacobs* Court's decision on defendant's motion to dismiss *directly contradicts* Tower's arguments that ELE should be sanctioned for citing First Circuit law.

In *Jacobs*, the defendant moved to dismiss for lack of personal jurisdiction. As in this case, the defendant set forth the proper Supreme Court jurisdictional standards (as adopted by the Federal Circuit) and then applied Fifth Circuit cases on the stream of commerce question.[4] In its order denying the motion, the Court succinctly explained why Fifth Circuit law was directly applicable and effectively explained why *Beverly Hills Fan* was *not* controlling:

---

[4] Notably, the defendant did not cite *Beverly Hills Fan* in its moving brief. The plaintiff then opposed, citing *Beverly Hills Fan*. Ultimately, the Court issued its Order denying the motion to dismiss. Nowhere was it suggested that the defendant should have been sanctioned for failing to cite *Beverly Hills Fan* or for citing Fifth Circuit cases.

> The Federal Circuit adopted and applied the stream of commerce theory in *Beverly Hills Fan Co.*, 21 F.3d at 1566. However, with respect to deciding whether to apply the O'Conner [sic] or Brennan version of the stream of commerce theory, the Federal Circuit declined to choose and stated: "We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing." *Id.* The Fifth Circuit, on the other hand, follows the pre-Asahi cases which apply the standard stream of commerce theory. … ***In the absence of Federal Circuit guidance, this Court must follow Fifth Circuit precedent***. *Panduit Corp.*, 744 F.2d at 1574-75.

*Jacobs Chuck Mfg.*, 2005 WL 3299718 at *3 (citation omitted) (emphasis added).

As explained in the *Jacobs* decision -- a decision that Tower was plainly aware of -- the local Circuit's law must be applied given the Federal Circuit's lack of guidance on the *Asahi* stream of commerce question. Accordingly, ELE cannot be sanctioned for citing First Circuit law regarding stream of commerce.

## III. TOWER'S EFFORTS TO TWIST AND MISSTATE THE FACTS SHOULD NO LONGER BE TOLERATED

Continuing an ironic trend from its Motion for Sanctions, Tower's reply brief *again* repeatedly misstates and exaggerates facts at the same time Tower is asking this Court to exercise its inherent power to level a (possibly record-setting) sanction for *hundreds of thousands of dollars* against ELE for supposedly misstating and exaggerating facts. For example:

**Claim**: "[T]he statement that ELE never directly sold any products in the United States was the central fact supporting ELE's motion to dismiss." Reply Br. at 3.

**THE TRUTH**: The central fact supporting ELE's Motion to Dismiss was that ELE had no direct contact with *Rhode Island*. The minimal direct sales to two or three states -- none of them being Rhode Island -- that were learned during discovery was not a central fact relied upon in the Court's Order denying the Motion to Dismiss.

**Claim**: "Mr. Zhang's [second declaration] is not credible given that before he gave his first declaration, Shanghai ELE had designed its LCDI for U.S. Standards, and had very publicly marketed LCDIs to the U.S. via its website." Reply Br. at 4.

**THE TRUTH**: Mr. Zhang's second affidavit merely confirms that he was not aware of any sales *directly to the United States* when he signed his first affidavit. ELE never denied that it designed its LCDIs to comply with U.S. Standards, that it had an English language website, or that its LCDIs were sold indirectly in the United States.

**Claim**: "Contrary to ELE's claim that these issues and the other raised in this Motion have already been considered in Tower's prior sanctions motion, the prior motion concerned ELE's failure to comply with discovery orders … "Reply Br. at 5.

**<u>THE TRUTH</u>**: ELE never made this claim. Rather, ELE stated that "the vast majority" of issues in the second motion were addressed in Tower's first motion for sanctions and that "***<u>all</u>***" of the issues in Tower's second motion for sanctions were "raised by Tower in ***<u>previous filings</u>***" (*i.e.*, filings other than the first motion for sanctions). ELE Opp. Br. at 1 (emphasis added).

**<u>Claim</u>**: "Public information showed the key facts that ELE's LCDI was UL registered, that ELE's LCDIs were located in Rhode Island and across the Country, that ELE marketed to the U.S. market via its website, that ELE sought U.S. patent protection for its LCDIs, and that ELE produced LCDIs with English language warning and identifiers, all independent of discovery from ELE or third parties. … Discovery from third parties was needed specifically because ELE's Motion to Dismiss challenged Tower's jurisdictional allegation by misleading Tower and the Court about the existence of Shanghai ELE sales directed to the U.S. and Rhode Island." Reply Br. at 8-9.

**<u>THE TRUTH</u>**: ELE never denied any of this "public information." However, Tower understood that it likely had to establish the "something more" prong from Justice O'Connor's "purposeful availment" test in *Asahi*. Jurisdictional discovery was therefore "needed specifically" for Tower to establish that "something more." As noted in ELE's opposition, had the first Zhang declaration mentioned a handful of direct sales to two non-Rhode Island states from the beginning, Tower would still have needed discovery to try and show "an action of the defendant purposefully directed toward the *forum State*." *Asahi* at 112 (emphasis added). The first Zhang affidavit, then, did not cause Tower to conduct any more discovery than it needed to conduct.

While some of Tower's exaggerations or misstatements of law and fact might normally be dismissed as inadvertent, when taken in the context of Tower seeking hundreds of thousands of dollars in sanctions for innocent mistakes by ELE, Tower's conduct may not merit such leniency. One must ask, at what point do Tower's own misstatements and exaggerations under the same level of scrutiny Tower wishes to apply to ELE rise to the level of Tower itself being sanctioned?

## <u>CONCLUSION</u>

Ultimately, as stated in ELE's opposition to this motion, every statement made by ELE to this Court was believed to be true at the time it was made, and ELE's representatives regret that a handful of them turned out in hindsight to be anything less than 100% accurate. ELE has taken this situation to heart, and intends to be even more careful, precise, and diligent going forward. ELE respectfully suggests that this Court's stern admonishment to ELE is a sufficient sanction, that Tower's Motion for Sanctions should be denied, and that the parties should now move on to the merits of this case.

Dated: May 30, 2008

Respectfully submitted

SHANGHAI ELE MANUFACTURING CORPORATION,

By its attorneys

/s/ Lawrence T. Stanley, Jr.
Jeffrey S. Brenner (#4369)
Email: jbrenner@nixonpeabody.com
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Phone: 401-454-1042
Fax: 401-454-1030

Of Counsel:
Tony D. Chen (*Pro Hac Vice*)
Email: tony.chen@bingham.com
Bingham McCutchen LLP
1620 26th Street, Suite 4000N
Santa Monica, CA 90404-4060
Phone: 310-225-9025
Fax: 310-907-2025

Joshua M. Dalton (*Pro Hac Vice*)
Email: josh.dalton@bingham.com
Lawrence T. Stanley, Jr. (*Pro Hac Vice*)
Email: lawrence.stanley@bingham.com
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110
Phone: 617-951-8721
Fax: 617-951-8736

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the registered participants as identified on the Notice of Electronic Filing (NEF) and I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the non-CM/ECF participants identified in the court's record.

/s/ Lawrence T. Stanley, Jr.
Lawrence T. Stanley, Jr.